IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Clifford A. Lowe<br>1505 Basley Street<br>Wake Forest, North Carolina 27587<br><br>    Plaintiff<br><br>  v.<br><br>ShieldMark, Inc.,<br>19147 Eastlook Road<br>Rocky River, Ohio 44116<br>c/o Susan Gragel<br>3984 Idlewild<br>Rocky River, Ohio 44116<br><br>and<br><br>Advanced Plastics, Inc.<br>307 Water Street<br>Wadsworth, Ohio 44282<br>c/o John D. Davis<br>7205 Pearl Road<br>Middleburg Heights, Ohio 44130<br><br>and<br><br>Crown Equipment Corporation<br>44 S. Washington Street<br>New Bremen, Ohio 45869<br>c/o Bradley L. Smith<br>40-44 S. Washington Street<br>New Bremen, Ohio 45869<br><br>    Defendants | CASE NO.: _____<br><br><br>JUDGE: _____<br><br><br><br><br>COMPLAINT FOR PATENT INFRINGEMENT<br>WITH JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, Clifford A. Lowe ("Lowe"), brings this action against defendants, ShieldMark, Inc. ("ShieldMark"), Advanced Plastics, Inc. ("Advanced"), and Crown Equipment Corporation ("Crown"), (collectively, "Defendants"), and hereby alleges as follows:

1

## NATURE OF THE ACTION

1. This action for patent infringement is brought pursuant to the patent laws of the United States, 35 U.S.C. § 1 *et seq.* Lowe seeks judgment that Defendants are inducing others to infringe and are contributorily infringing U.S. Patent No. 10,214,664 (the "'664 patent") entitled "Floor Marking Tape," a true and accurate copy of which is attached as Exhibit 1.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States.

3. This Court has general personal jurisdiction over Advanced and ShieldMark because each is incorporated in Ohio, and over Crown because it transacts business in Ohio, and on information and belief, Defendants have engaged in infringing conduct in Ohio.

4. Venue is proper in this Court as to ShieldMark and Advanced pursuant to 28 U.S.C. §1400(b) because each resides within the district. Each is s incorporated within the state of Ohio.

5. Venue is proper in this Court as to Crown because, upon information and belief, it has a regular and established place of business within the district and has committed acts of infringement within the district.

## PARTIES

6. Plaintiff Lowe is an individual residing at 1505 Basley Street, Wake Forest, North Carolina 27587. Lowe is an inventor of floor marking tape, including that claimed in the '664 patent.

7. Lowe is the owner of all rights, title, and interest in and to the '664 patent and has the right to sue for infringement.

8. Advanced is an Ohio corporation having a principal place of business at 307 Water Street, Wadsworth, Ohio 44282, and whose agent for service of process is John D. Davis, 7205 Pearl Road, Middleburg Heights, Ohio 44130. Advanced is an extruder of floor marking tape, including a floor marking tape for ShieldMark, sold under the product mark "MIGHTY LINE," in this district and elsewhere across the United States.

9. ShieldMark is an Ohio corporation having its principal place of business at 19147 Eastlook Road, Rocky River, Ohio, and whose agent for service of process is Susan Gragel, 3984 Idlewild, Rocky River, Ohio 44116. ShieldMark is a developer, marketer, and distributor of floor marking tape, including that sold under the product mark "MIGHTY LINE," in this district and elsewhere across the United States.

10. Crown is an Ohio corporation having a principal place of business at 44 S. Washington Street, New Bremen, Ohio 45869, and whose agent for service of process is Bradley L. Smith, 40-44 S. Washington Street, New Bremen, Ohio 45869. Crown is a distributor/seller of floor marking tape, including that sold under the product mark "MIGHTY LINE," in this district and elsewhere across the United States.

## LOWE'S '664 PATENT

11. On February 26, 2019, the United States Patent and Trademark Office duly and lawfully issued the '664 patent, entitled "Floor Marking Tape." (Exhibit 1)

12. Independent claims 1 and 11 are generally to a "floor marking tape adhered to a floor wherein the floor marking tape establishes a boundary on the floor."

## INFRINGEMENT OF LOWE'S '664 PATENT

13. As apparent from Exhibit 2, Internet advertising of the Mighty Line® floor tape product, when considered in combination with a floor to which it is applied (the "accused combination"), contains each of the elements of claim 1 of the '664 patent.

14. Claim 1 requires "a floor having an uppermost surface; the uppermost surface of the floor configured to support personnel and equipment thereupon." As do all floors, the floor of the accused combination has an uppermost surface that is configured to support things such as personnel and equipment thereupon.

15. Claim 1 requires "a floor marking tape having a body that has an upper surface and a lower surface." The general nature of all tapes is to have an upper surface and a lower surface, as does the floor marking tape of the accused combination. The lower surface is that surface covered with an adhesive, and the upper surface is that which is visible when adhered to a floor.

16. Claim 1 requires "the lower surface facing the uppermost surface of the floor to which the floor marking tape is adhered such that the body of the floor marking tape is disposed above the uppermost surface of the floor." The lower surface of the floor marking tape of the accused combination faces and adheres to the uppermost surface of the floor of the accused combination, and the floor marking tape is necessarily disposed above that uppermost surface of the floor to which it adheres.

17. Claim 1 requires "the body of the floor marking tape having a longitudinal direction." The floor marking tape of the accused combination has a longitudinal direction, which is that oriented with the length of the floor marking tape.

18. Claim 1 requires "the body of the floor marking tape having first and second lateral edge portions disposed in the longitudinal direction; each of the first and second lateral edge portions having an upper surface and a lower surface." The body of the floor marking tape of the accused combination has a lateral portion along each of its lateral edges, such portions being disposed in a longitudinal direction, and each of these first and second lateral edge portions has an upper surface and a lower surface.

19. Claim 1 requires "each of the first and second lateral edge portions having a width defined in a direction perpendicular to the longitudinal direction." Each of the first and second lateral edge portions of the floor marking tape of the accused combination has a width defined in a direction perpendicular to the longitudinal direction.

20. Claim 1 requires "the upper surface of each lateral edge portion comprising an extension of the upper surface of the body." In the accused combination, the upper surface of each lateral edge portion is a continuous extension of the upper surface of the body.

21. Claim 1 requires "the lower surface of each lateral edge portion being a flat coplanar extension of the lower surface of the body." In the accused combination, the lower surface of each of the lateral edge portions is flat and a coplanar extension of the lower surface of the body.

22. Claim 1 requires "the entire body of each lateral edge portion being tapered with the upper surface of the first lateral edge portion extending to the lower surface of the first lateral edge portion and the upper surface of the second lateral edge portion extending to the lower surface of the second lateral edge portion." The lateral edge portions of the marking tape of the accused combination are tapered with the upper surface of each lateral edge portion extending to the lower surface of the associated lateral edge portion.

23. Claim 1 requires "each of the first and second lateral edge portions having a maximum height that is less than its width." In the accused combination, the maximum height of each of the lateral edge portions is less than its width.

24. Claim 1 finally requires "an adhesive securing the lower surface of the body to the uppermost surface of the floor to establish a boundary." The floor marking tape of the accused combination has an adhesive on its lower surface, which is applied to the uppermost surface of the floor to secure the marking tape thereto and to establish a boundary.

25. With continued reference to Exhibit 2, it is apparent that the Mighty Line® floor tape product, in combination with a floor to which it is applied (the "accused combination"), contains each of the elements of claim 11 of the '664 patent.

26. Claim 11 requires "a floor having an uppermost surface; the uppermost surface of the floor configured to support personnel and equipment thereupon." As do all floors, the floor of the accused combination has an uppermost surface that is configured to support things such as personnel and equipment thereupon.

27. Claim 11 requires "a floor marking tape having a body that has an upper surface and a lower surface." The general nature of all tapes is to have an upper surface and a lower surface, as does the floor marking tape of the accused combination. The lower surface is that surface covered with an adhesive, and the upper surface is that which is visible when adhered to a floor.

28. Claim 11 requires "the lower surface facing the uppermost surface of the floor to which the floor marking tape is adhered such that the body of the floor marking tape is disposed above the uppermost surface of the floor." The lower surface of the floor marking tape of the accused combination faces and adheres to the uppermost surface of the floor of the accused

combination. The floor marking tape is necessarily disposed above that uppermost surface of the floor to which it adheres.

29. Claim 11 requires "the body of the floor marking tape having a longitudinal direction." The floor marking tape of the accused combination has a longitudinal direction, which is that oriented with the length of the floor marking tape.

30. Claim 11 requires "the body of the floor marking tape having first and second lateral edge portions disposed in the longitudinal direction; each of the first and second lateral edge portions having an upper surface and a lower surface." The body of the floor marking tape of the accused combination has a lateral portion along each of its lateral edges, such portions being disposed in a longitudinal direction, and each of these first and second lateral edge portions has an upper surface and a lower surface.

31. Claim 11 requires "each of the first and second lateral edge portions having a width defined in a direction perpendicular to the longitudinal direction." Each of the first and second lateral edge portions of the floor marking tape of the accused combination has a width defined in a direction perpendicular to the longitudinal direction.

32. Claim 11 requires "the entire body of each lateral edge portion being tapered with the upper surface of the first lateral edge portion extending to the lower surface of the first lateral edge portion to meet at a first junction and the upper surface of the second lateral edge portion extending to the lower surface of the second lateral edge portion to meet at a second junction." In the floor marking tape of the accused combination, the entire body of each lateral edge portion is tapered such that the upper surface of the first lateral edge portion extends to the lower surface of the first lateral edge portion to meet at a first junction and similarly the upper surface of the

second lateral edge portion extends to the lower surface of the second lateral edge portion to meet at a second junction.

33. Claim 11 requires "the first and second junctions disposed on the uppermost surface of the floor such that the floor marking tape limits unintentional lifting of the floor marking tape from the floor." In the accused combination, the first and second junctions are disposed at the uppermost surface of the floor and the purpose of those junctions at the floor surface is to inhibit unintentional lifting of the floor marking tape from the floor to which it is adhered.

34. Claim 11 requires "each of the first and second lateral edge portions having a maximum height that is less than its width." In the floor marking tape of the accused combination, the width of each lateral edge portion is greater than its height.

35. Claim 11 requires "an adhesive securing the lower surface of the body to the uppermost surface of the floor to establish a boundary." The floor marking tape of the accused combination has an adhesive on its lower surface, which is applied to the uppermost surface of the floor and the accused combination thereby establishes boundaries on the floor.

36. Each of the additional features and limitations of at least dependent claims 2-6, 10, 12-16, 20 and 21 are found in the accused combination.

37. For the reasons set forth directly above, the accused combination infringes at least claims 1-6, 10-16, 20 and 21 of the '664 patent.

38. Defendants manufacture, offer to sell, and sell Mighty Line® floor marking tape in the United States, inducing members of the public to infringe, and/or are contributorily infringing, directly and indirectly, or under the doctrine of equivalents, one or more claims of Lowe's 664 patent, including at least independent claims 1 and 11.

39. Advanced extrudes the Mighty Line® floor marking tape product for ShieldMark with the knowledge that ShieldMark resells it to the public, directly, and indirectly as through Crown, for use in a way that results in a combination that infringes the '664 patent.

40. ShieldMark's advertising specifically intends that, and actively encourages, members of the public to buy and use the Mighty Line® floor marking tape product in a manner which ShieldMark knows will result in a combination that infringes the '664 patent. Exhibit 2.

41. Crown's advertising specifically intends that, and actively encourages, members of the public to buy and use the Mighty Line® floor marking tape in a manner which Crown knows will result in a combination that infringes the '664 patent. Exhibit 3.

42. ShieldMark and Crown are offering to sell and selling a component of a patented combination constituting a material part of the invention, the same being the Mighty Line® floor marking tape.

43. The advertising of ShieldMark and Crown recommends and promotes members of the public to purchase and instructs them to use Mighty Line® floor marking tape in a manner that infringes the '664 patent. Exhibits 2 and 3.

44. As seen from the advertising of ShieldMark, the Mighty Line® product is a single-use product. Exhibit 2.

45. As seen from the advertising of ShieldMark, the Mighty Line® product is not a staple article or commodity of commerce suitable for substantial non-infringing use. Exhibit 2.

46. As seen from the advertising of ShieldMark, the Mighty Line® product is especially made or especially adapted for use in the infringement of the '664 patent. Exhibit 2.

47. Upon information and belief, Defendants have been monitoring and have been aware of the patent application that issued as the '664 patent, and have knowledge of the acts of infringement that are occurring by the application of Mighty Line® floor marking tape to a floor.

48. Defendants have infringed and will continue to infringe one or more of the claims of the '664 patent by actively inducing others to infringe the patent, and/ or by contributory infringement, pursuant to 35 U.S.C. §271 (b) and (c).

## PRAYER FOR RELIEF

WHEREFORE, Lowe respectfully requests that:

(a) The Court determine that Defendants are infringing, inducing others to infringe, and/or are contributorily infringing one or more claims of the '664 patent;

(b) The Court enter a permanent injunction precluding Defendants, and all persons in active concert or participation with them, from making, importing, using, selling, or offering to sell in the United States a product intended to be applied to a floor in a way that results in infringement of one or more claims of the '664 patent;

(c) The Court determine the amount of damage suffered by Lowe as a result of Defendants' unlawful conduct and enter judgment for Lowe in the amount of its damages, plus interest and the costs of this action;

(d) The Court award Lowe provisional remedies under 35 U.S.C. § 154(d) because the application that issued as the '664 patent claimed an invention substantially identical to that claimed in the '664 patent and was published with such claims on or about October 15, 2015; and

(e) The Court grant such other and further relief as it deems appropriate.

## JURY DEMAND

Lowe hereby demands a jury trial pursuant to Fed. R. Civ. P. 38(b) of all issues so triable.

Respectfully submitted,

*/s/Ray L. Weber*
Ray L. Weber        (0006497)
Laura J. Gentilcore    (0034702)
RENNER, KENNER, GREIVE, BOBAK,
    TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, Ohio 44308
Telephone: (330) 376-1242
Facsimile: (330) 376-9646
Email: rlweber@rennerkenner.com
Email: ljgentilcore@rennerkenner.com

*Attorneys for Plaintiff, Clifford A. Lowe*