UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CLIFFORD A. LOWE** ) | |
| 1505 Basley Street ) | |
| Wake Forest, North Carolina 27587 ) | |
| ) | CASE NO.: 1:19-CV-748-JG |
| and ) | |
| ) | |
| **INSITE SOLUTIONS, LLC** ) | JUDGE:  JAMES S. GWIN |
| 5100 Unicon Drive ) | |
| Suite 110 ) | |
| Wake Forest, North Carolina 275587 ) | **THIRD AMENDED COMPLAINT** |
| ) | **FOR PATENT INFRINGEMENT OF** |
| Plaintiffs ) | **U.S. PATENT NO. 10,214,664,** |
| ) | **FALSE ADVERTISING, AND** |
| v. ) | **DECLARATORY JUDGMENT OF NON-** |
| ) | **INFRINGEMENT, INVALIDITY AND** |
| **SHIELDMARK, INC**., ) | **UNENFORCEABILITY OF** |
| 19147 Eastlook Road ) | **U.S. PATENT NO. 10,738,220** |
| Rocky River, Ohio 44116 ) | |
| c/o Susan Gragel ) | **JURY TRIAL DEMANDED** |
| 3984 Idlewild ) | |
| Rocky River, Ohio 44116 ) | |
| ) | |
| and ) | |
| ) | |
| **ADVANCED PLASTICS, INC**., ) | |
| 307 Water Street ) | |
| Wadsworth, Ohio  44282 ) | |
| c/o John D. Davis ) | |
| 7205 Pearl Road ) | |
| Middleburg Heights, Ohio 44130 ) | |
| ) | |
| and ) | |
| ) | |
| **CROWN EQUIPMENT** ) | |
| **CORPORATION**, ) | |
| 44 S. Washington Street ) | |
| New Bremen, Ohio 45869 ) | |
| c/o Bradley L. Smith ) | |
| 40-44 S. Washington Street ) | |
| New Bremen, Ohio 45869 ) | |
| ) | |
| ) | |
| Defendants ) | |

1

Plaintiffs, Clifford A. Lowe ("Lowe") and InSite Solutions, LLC ("InSite") (collectively, "Plaintiffs"), bring this action against defendants, ShieldMark, Inc. ("ShieldMark"), Advanced Plastics, Inc. ("Advanced"), and Crown Equipment Corporation ("Crown"), (collectively, "Defendants"), and hereby allege as follows:

## NATURE OF THE ACTION

1.	This is an action for patent infringement brought pursuant to the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* Plaintiffs seek judgment that Defendants are inducing others to infringe and are contributorily infringing U.S. Patent No. 10,214,664 (the "'664 patent") entitled "Floor Marking Tape," a true and accurate copy of which is attached as **EXHIBIT 1.** This is also an action for declaratory judgment of non-infringement and invalidity and unenforceability of U.S. Patent No. 10,738,220 pursuant to 28 U.S.C. §§ 2201 and 2202 of the Federal Declaratory Judgment Act and the Patent Laws.

2.	This is also an action for false advertising brought pursuant to the Lanham Act 42(a)(1)(B). Plaintiff InSite seeks judgement that Defendant ShieldMark is falsely advertising its Mighty Line floor marking tape product on the Internet.

## JURISDICTION AND VENUE

3.	This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises in part under the patent laws of the United States. Jurisdiction in this Court is also proper pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 because the action arises in part under the Lanham Act.

4.	This Court has general personal jurisdiction over Advanced and ShieldMark because each is incorporated in Ohio, and over Crown because it transacts business in Ohio, and

on information and belief, Defendants have engaged in infringing conduct in Ohio.

5.     Venue is proper in this Court as to ShieldMark and Advanced pursuant to 28 U.S.C. §1400(b) because each resides within the district.  Each is incorporated within the state of Ohio.  Venue is proper under 28 U.S.C. § 1391 (b)(2).

6.     Venue is proper in this Court as to Crown because, upon information and belief, it has a regular and established place of business within the district and has committed acts of infringement within the district.

## PARTIES

7.     Plaintiff Lowe is an individual residing at 1505 Basley Street, Wake Forest, North Carolina 27587.  Lowe is an inventor of floor marking tape, including that claimed in the '664 patent.  Plaintiff InSite is a North Carolina limited liability company having its principal place of business at 5100 Unicon Drive, Suite 110, Wake Forest, North Carolina 27587.

8.     Lowe is the owner of all rights, title, and interest in and to the '664 patent.  InSite is an exclusive licensee under the '664 patent engaged in the manufacture, distribution and sales of floor marking tape pursuant to its license and under the name "Superior Mark."  Lowe and InSite share rights of enforcement and recovery under the '664 patent.

9.     Advanced is an Ohio corporation having a principal place of business at 307 Water Street, Wadsworth, Ohio 44282, and whose agent for service of process is John D. Davis, 7205 Pearl Road, Middleburg Heights, Ohio 44130.  Advanced is an extruder of floor marking tape, including a floor marking tape for ShieldMark, sold under the product mark "MIGHTY LINE," in this district and elsewhere across the United States.

10.     ShieldMark is an Ohio corporation having its principal place of business at 19147 Eastlook Road, Rocky River, Ohio, and whose agent for service of process is Susan Gragel, 3984

3

Idlewild, Rocky River, Ohio 44116.  ShieldMark is a developer, marketer, and distributor of floor marking tape, including that sold under the product mark "MIGHTY LINE," in this district and elsewhere across the United States.

11.     Crown is an Ohio corporation having a principal place of business at 44 S. Washington Street, New Bremen, Ohio 45869, and whose agent for service of process is Bradley L. Smith, 40-44 S. Washington Street, New Bremen, Ohio 45869. Crown is a distributor/seller of floor marking tape, including that sold under the product mark "MIGHTY LINE," in this district and elsewhere across the United States.

**LOWE'S '664 PATENT**

12.     On February 26, 2019, the United States Patent and Trademark Office duly and lawfully issued the '664 patent, entitled "Floor Marking Tape." (**EXHIBIT 1**)

13.     Independent claims 1 and 11 are generally to a "floor marking tape adhered to a floor wherein the floor marking tape establishes a boundary on the floor."

**COUNT I—INFRINGEMENT OF LOWE'S '664 PATENT**

14.     As apparent from **EXHIBIT 2**, Internet advertising of the Mighty Line® floor tape product, when considered in combination with a floor to which it is applied (the "accused combination"), contains each of the elements of claim 1 of the '664 patent.

15.     Claim 1 requires "a floor having an uppermost surface; the uppermost surface of the floor configured to support personnel and equipment thereupon."  As do all floors, the floor of the accused combination has an uppermost surface that is configured to support things such as personnel and equipment thereupon.

16.    Claim 1 requires "a floor marking tape having a body that has an upper surface and a lower surface."  The general nature of all tapes is to have an upper surface and a lower surface, as does the floor marking tape of the accused combination.  The lower surface is that surface covered with an adhesive, and the upper surface is that which is visible when adhered to a floor.

17.    Claim 1 requires "the lower surface facing the uppermost surface of the floor to which the floor marking tape is adhered such that the body of the floor marking tape is disposed above the uppermost surface of the floor."  The lower surface of the floor marking tape of the accused combination faces and adheres to the uppermost surface of the floor of the accused combination, and the floor marking tape is necessarily disposed above that uppermost surface of the floor to which it adheres.

18.    Claim 1 requires "the body of the floor marking tape having a longitudinal direction." The floor marking tape of the accused combination has a longitudinal direction, which is that oriented with the length of the floor marking tape.

19.    Claim 1 requires "the body of the floor marking tape having first and second lateral edge portions disposed in the longitudinal direction; each of the first and second lateral edge portions having an upper surface and a lower surface."  The body of the floor marking tape of the accused combination has a lateral portion along each of its lateral edges, such portions being disposed in a longitudinal direction, and each of these first and second lateral edge portions has an upper surface and a lower surface.

20.    Claim 1 requires "each of the first and second lateral edge portions having a width defined in a direction perpendicular to the longitudinal direction." Each of the first and second

lateral edge portions of the floor marking tape of the accused combination has a width defined in a direction perpendicular to the longitudinal direction.

21.     Claim 1 requires "the upper surface of each lateral edge portion comprising an extension of the upper surface of the body." In the accused combination, the upper surface of each lateral edge portion is a continuous extension of the upper surface of the body.

22.     Claim 1 requires "the lower surface of each lateral edge portion being a flat coplanar extension of the lower surface of the body." In the accused combination, the lower surface of each of the lateral edge portions is flat and a coplanar extension of the lower surface of the body.

23.     Claim 1 requires "the entire body of each lateral edge portion being tapered with the upper surface of the first lateral edge portion extending to the lower surface of the first lateral edge portion and the upper surface of the second lateral edge portion extending to the lower surface of the second lateral edge portion." The lateral edge portions of the marking tape of the accused combination are tapered with the upper surface of each lateral edge portion extending to the lower surface of the associated lateral edge portion.

24.     Claim 1 requires "each of the first and second lateral edge portions having a maximum height that is less than its width." In the accused combination, the maximum height of each of the lateral edge portions is less than its width.

25.     Claim 1 finally requires "an adhesive securing the lower surface of the body to the uppermost surface of the floor to establish a boundary." The floor marking tape of the accused combination has an adhesive on its lower surface, which is applied to the uppermost surface of the floor to secure the marking tape thereto and to establish a boundary.

26.     With continued reference to **EXHIBIT 2**, it is apparent that the Mighty Line®

floor tape product, in combination with a floor to which it is applied (the "accused combination"), contains each of the elements of claim 11 of the '664 patent.

27.     Claim 11 requires "a floor having an uppermost surface; the uppermost surface of the floor configured to support personnel and equipment thereupon."  As do all floors, the floor of the accused combination has an uppermost surface that is configured to support things such as personnel and equipment thereupon.

28.     Claim 11 requires "a floor marking tape having a body that has an upper surface and a lower surface."  The general nature of all tapes is to have an upper surface and a lower surface, as does the floor marking tape of the accused combination.  The lower surface is that surface covered with an adhesive, and the upper surface is that which is visible when adhered to a floor.

29.     Claim 11 requires "the lower surface facing the uppermost surface of the floor to which the floor marking tape is adhered such that the body of the floor marking tape is disposed above the uppermost surface of the floor."  The lower surface of the floor marking tape of the accused combination faces and adheres to the uppermost surface of the floor of the accused combination. The floor marking tape is necessarily disposed above that uppermost surface of the floor to which it adheres.

30.     Claim 11 requires "the body of the floor marking tape having a longitudinal direction." The floor marking tape of the accused combination has a longitudinal direction, which is that oriented with the length of the floor marking tape.

31.     Claim 11 requires "the body of the floor marking tape having first and second lateral edge portions disposed in the longitudinal direction; each of the first and second lateral edge portions having an upper surface and a lower surface." The body of the floor marking tape

of the accused combination has a lateral portion along each of its lateral edges, such portions being disposed in a longitudinal direction, and each of these first and second lateral edge portions has an upper surface and a lower surface.

32.     Claim 11 requires "each of the first and second lateral edge portions having a width defined in a direction perpendicular to the longitudinal direction." Each of the first and second lateral edge portions of the floor marking tape of the accused combination has a width defined in a direction perpendicular to the longitudinal direction.

33.     Claim 11 requires "the entire body of each lateral edge portion being tapered with the upper surface of the first lateral edge portion extending to the lower surface of the first lateral edge portion to meet at a first junction and the upper surface of the second lateral edge portion extending to the lower surface of the second lateral edge portion to meet at a second junction." In the floor marking tape of the accused combination, the entire body of each lateral edge portion is tapered such that the upper surface of the first lateral edge portion extends to the lower surface of the first lateral edge portion to meet at a first junction and similarly the upper surface of the second lateral edge portion extends to the lower surface of the second lateral edge portion to meet at a second junction.

34.     Claim 11 requires "the first and second junctions disposed on the uppermost surface of the floor such that the floor marking tape limits unintentional lifting of the floor marking tape from the floor." In the accused combination, the first and second junctions are disposed at the uppermost surface of the floor and the purpose of those junctions at the floor surface is to inhibit unintentional lifting of the floor marking tape from the floor to which it is adhered.

8

35.     Claim 11 requires "each of the first and second lateral edge portions having a maximum height that is less than its width." In the floor marking tape of the accused combination, the width of each lateral edge portion is greater than its height.

36.     Claim 11 requires "an adhesive securing the lower surface of the body to the uppermost surface of the floor to establish a boundary." The floor marking tape of the accused combination has an adhesive on its lower surface, which is applied to the uppermost surface of the floor and the accused combination thereby establishes boundaries on the floor.

37.     Each of the additional features and limitations of at least dependent claims 2-6, 10, 12-16, 20 and 21 are found in the accused combination.

38.     For the reasons set forth directly above, the accused combination infringes at least claims 1-6, 10-16, 20 and 21 of the '664 patent.

39.     Defendants manufacture, offer to sell, and sell Mighty Line® floor marking tape in the United States, inducing members of the public to infringe, and/or are contributorily infringing, directly and indirectly, or under the doctrine of equivalents, one or more claims of Lowe's '664 patent, including at least independent claims 1 and 11.

40.     Advanced extrudes the Mighty Line® floor marking tape product for ShieldMark with the knowledge that ShieldMark resells it to the public, directly, and indirectly as through Crown, for use in a way that results in a combination that infringes the '664 patent.

41.     ShieldMark's advertising specifically intends that, and actively encourages, members of the public to buy and use the Mighty Line® floor marking tape product in a manner which ShieldMark knows will result in a combination that infringes the '664 patent. **EXHIBIT 2**.

42.     Crown's advertising specifically intends and actively encourages members of the public to buy and use the Mighty Line® floor marking tape in a manner which Crown knows will result in a combination that infringes the '664 patent.  **EXHIBIT 3**.

43.     ShieldMark and Crown are offering to sell and selling a component of a patented combination constituting a material part of the invention, the same being the Mighty Line® floor marking tape.

44.     The advertising of ShieldMark and Crown recommends and promotes members of the public to purchase and instructs them to use Mighty Line® floor marking tape in a manner that infringes the '664 patent.  Exhibits 2 and 3.

45.     As seen from the advertising of ShieldMark, the Mighty Line® product is a single-use product.  **EXHIBIT 2**.

46.     As seen from the advertising of ShieldMark, the Mighty Line® product is not a staple article or commodity of commerce suitable for substantial non-infringing use.  **EXHIBIT 2**.

47.     As seen from the advertising of ShieldMark, the Mighty Line® product is especially made or especially adapted for use in the infringement of the '664 patent.  **EXHIBIT 2**.

48.     Upon information and belief, Defendants have been monitoring and have been aware of the patent application that issued as the '664 patent, and have knowledge of the acts of infringement that are occurring by the application of Mighty Line® floor marking tape to a floor.

49.     Defendants have infringed and will continue to infringe one or more of the claims of the '664 patent, directly or indirectly, by actively inducing others to infringe the patent, and/ or by contributory infringement, pursuant to 35 U.S.C. §271 (b) and (c), all to the great and

continuing damage to Plaintiffs.

## COUNT II—FALSE ADVERTISING
## IN VIOLATION OF THE LANHAM ACT § 42(a)(1)(B)

50.    Plaintiffs repeat the allegations in paragraphs 1-49 as if fully rewritten.

51.    Count II arises under the Lanham Act 42(a)(1)(B).  Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331.  Venue is proper under 28 U.S.C. § 1391 (b)(2).

52.    This is a civil action arising out of ShieldMark's false advertising on the Internet and otherwise in interstate commerce of its MightyLine floor marking tape product.

53.    InSite is a limited liability company existing under the laws of the State of North Carolina, having its principal place of business at 5100 Unicon Drive, Suite 110, North Carolina 27587.

54.    InSite makes a floor marking tape product which it offers for sale and sells to the floor marking tape market under the trademark Superior Mark.  InSite's Superior Mark floor marking tape is made under the claims of U.S. Patent No. 10,214,664 (the "664 patent"), having a priority date of April 22, 2005.

55.    The specification of the '664 patent discusses the benefits of a floor marking tape having a tapered edge, stating that "[T]he invention provides a floor marking tape having a beveled edge to limit the unintentional lifting and delamination of the tape from the floor." (**EXHIBIT 1**, Col. 1, lines 47-49).

56.    ShieldMark admits that it is a corporation organized and existing under the laws of the state of Ohio and having a principal place of business at 19147 Eastlook Road, Rocky River, Ohio 44116 .

57.     ShieldMark admits that it offers to sell and sells a floor marking tape product under the trademark "MightyLine."

58.     InSite and ShieldMark are competitors in the floor marking tape market.

59.     ShieldMark is the owner and operator of the website www.mightylinetape.com and uses and/or has authorized others to use that website to advertise and promote its Mighty Line floor marking tape product.

60.     ShieldMark currently advertises and promotes its Mighty Line floor marking tape product as having "beveled edges" and that such "beveled edges increase durability for forklift traffic;" that "beveled edge tape can take a beating from industrial wheel traffic;" and that "Mighty Line floor tape withstands…, forklifts…." (Plaintiffs' **EXHIBIT 2** and **EXHIBIT 4**).

61.     If ShieldMark's Mighty Line floor marking tape product, when applied to a floor, comports with the pictorial illustration of its advertising, that product infringes the '664 patent as alleged in Count I.

62.     Pleading in the alternative, if ShieldMark's Mighty Line floor marking tape product does not comport with the pictorial illustration of its advertising in a manner so as to avoid infringement of the '664 patent, then such advertising is false as to both the pictorial illustration and the representations that the beveled edges "increase durability for fork lift traffic;" "beveled edge tape can take a beating from industrial wheel traffic;" and "Mighty Line floor tape withstands…, forklifts…."

63.     Pleading in the alternative, if ShieldMark's Mighty Line floor marking tape product does not comport with the pictorial illustration of its advertising in a manner so as to avoid infringement of the '664 patent, then ShieldMark has knowingly and purposefully made

12

false and misleading descriptions of fact concerning the nature and characteristics of its Mighty Line floor marking tape product.

64.     The use of such false statements of fact have the tendency to deceive a substantial segment of the public and consumers, including those in this district, into believing that they are purchasing a product with different characteristics than the product actually has.

65.     The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is concerned with the nature of the product as increasing durability for forklift traffic, and/or who finds it desirable to purchase a product that increases durability for forklift traffic..

66.     Pleading in the alternative, if ShieldMark's Mighty Line floor marking tape product does not comport with the pictorial illustration of its advertising in a manner so as to avoid infringement of the '664 patent, then InSite has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from InSite to ShieldMark.

67.     Pleading in the alternative, if ShieldMark's Mighty Line floor marking tape product does not comport with the pictorial illustration of its advertising in a manner so as to avoid infringement of the '664 patent, then ShieldMark's representations constitute false and misleading descriptions and misrepresentations of fact in commerce that in commercial advertising and promotion misrepresent the nature, characteristics and quality of ShieldMark's floor marking tape product in violation of Section 43(a)(1) entitling InSite to preliminary and permanent injunctive relief enjoining ShieldMark from any further such advertising.

68.     Pleading in the alternative, if ShieldMark's Mighty Line floor marking tape product does not comport with the pictorial illustration of its advertising in a manner so as to avoid infringement of the '664 patent, then ShieldMark's continuing false, misleading and

deceptive practices have violated the Lanham Act, caused InSite irreparable harm, and unjustly enriched ShieldMark at the expense of InSite.

## COUNT III—DECLARATORY JUDGMENT OF NON-INFRINGEMENT, INVALIDITY AND UNENFORCEABILITY OF U.S. PATENT NO. 10,738,220

69.     Plaintiffs repeat the allegations in paragraphs 1-68 as if fully rewritten.

70.     ShieldMark alleges in its Fourth Counterclaim against Plaintiffs (Doc. #42) that it is the owner of all right, title and interest in U.S. Patent No. 10,738,220 ("the '220 patent"), and that Plaintiffs are infringing the '220 patent.

71.     ShieldMark's Fourth Counterclaim against Plaintiff is a permissive counterclaim.

72.     Plaintiffs have replied to ShieldMark's Fourth Counterclaim (Doc. #42), denying infringement of the '220 patent and affirmatively defending that Plaintiffs do not infringe the '220 patent and that the '220 patent is invalid and unenforceable.

73.     Plaintiffs herein seek declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the Patent Laws of the United States, 35 U.S.C. § 100, *et seq*., that Plaintiffs do not infringe the '220 patent and that the '220 patent is invalid and unenforceable, the claims being mandatory counterclaims to ShieldMark's permissive Fourth Counterclaim.

74.     This Court has subject matter jurisdiction over these claims of Plaintiffs pursuant to 28 U.S.C. §§ 1331 and 1338(a) and the Federal Declaratory Judgment Act.

75.     This Court has personal jurisdiction over ShieldMark by virtue of ShieldMark having brought its Fourth Counterclaim (Doc. #42), and ShieldMark's residing and doing business within the district.

76.     Venue is proper in this district over ShieldMark as it resides within the district.

14

77.     An actual controversy has arisen and now exists as to whether Plaintiffs are infringing any valid claim of the '220 patent.

78.     Plaintiffs are not directly or indirectly infringing any valid claim of the '220 Patent, either literally or under the doctrine of equivalents.

79.     The manufacture, use, offer for sale and sale of any InSite products do not directly or indirectly infringe either literally, or under the doctrine of equivalents, any valid and enforceable claim of the '220 Patent.

80.     In the absence of direct infringement, any sales by InSite do not give rise to liability for active inducement of infringement under § 271(b).

81.     In the absence of direct infringement, any sales by InSite do not give rise to liability for contributory infringement under § 271 (c).

82.     Accordingly, Counterclaimant is entitled to a declaration that the manufacture, use, sale, offer for sale, importation into the United States, or sales to third parties outside the United States of the products accused of infringing the '220 Patent do not directly or indirectly infringe any valid or enforceable claim of the '220 Patent

83.     An actual controversy has arisen and now exists between the parties as to the validity of the '220 patent.

84.     The claims of the '220 Patent are invalid and void for failure to comply with one or more of the conditions for patentability in the Patent Act, United States Code, Title 35, including, without limitations, 35 U.S.C. §§ 102, 103 and/or 112.

85.     The asserted claims of the '220 Patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and/or 103 in light of prior art products on the market before the earliest priority date the '220 Patent is entitled to including, but not limited to, the specific prior art

products described below.

86.    Pursuant to 35 U.S.C. § 102, applicable to this patent, a person is not entitled to a patent when "the invention … was … on sale in this country, more than one year prior to the date of application for patent in the United States."

87.    The application for the '220 Patent claims an earliest priority of September 29, 2003.

88.    Before September 29, 2002, ShieldMark and/or Goecke, the inventor of the '220 patent, offered for sale and sold two types of floor marking tape having features and characteristics corresponding to the claims of the '220 patent.

89.    Claims 1-3, 9, 10 and 17-19 are invalid under 35 U.S.C. §102.  Prior to the critical date, ShieldMark manufactured and sold a highly material precursor polycarbonate floor aisle marking tape that differed from claim 1 of the '480 Patent in thickness by only *1 mil* (a mil equates to 1/1,000 of an inch) ("Precursor Polycarbonate Tape"), namely the tape demonstrated a thickness of 70-85 mil. In an effective attempt to deceive the PTO, the Precursor Polycarbonate Tape and sales thereof were not disclosed by ShieldMark or its representatives to the PTO during the prosecution of either the '480 patent or the '292 patent, from which the '220 patent claims priority.  Similarly, prior to the critical date, ShieldMark also manufactured and sold a second type of highly material precursor floor aisle marking tape, called a thermoplastic tape, which was also concealed from the PTO in the prosecution of the '480 and '292 patents to gain allowance of those patents.

90.    The sale, offer for sale, and use of ShieldMark's and/or Goecke's precursor/prior art floor marking tapes render the asserted claims of the '220  patent invalid under 35 U.S.C. §

16

102 (b) and/or § 103 because the sale and use of these products anticipate and/or render obvious every asserted claim of the '220 Patent, and particularly claims 1-3, 9, 10, and 17-19.

91.     The prior art products identified above, alone or in combination, anticipate or render obvious, in view of other prior art pleaded herein claims 1-3, 9, 10, and 17-19 of the '220 Patent.

92.     On the basis of various prior art, claims 1-3, 9, 10 and 17-19 are invalid under 35 U.S.C. §102 and unenforceable. By way of example, the inventor did not disclose to the Patent Office the existence of the prior art Jeka products that anticipate or, at the very least, render obvious the claims of the '220 patent. The Jeka products are shown by way of example in **EXHIBIT 5**. Jeka is a leading competitor in this field, and has been such for decades, and was certainly known to the applicant from trade shows ShieldMark attended and general market awareness.

Jeka teaches a roll of adhesive aisle marking tape with a layer of polyvinyl chloride with a Shore A Hardness between 92 and 100 and a thickness between 20 mil and 65 mil; an adhesive layer on the bottom of the polyvinyl chloride with a thickness less than the polymer layer; a laminating substrate or release liner contacting the layer of adhesive; and in which the adhesive tape has a peel adhesion greater than 2.0 pounds per inch width.

Had the Examiner been made aware of Jeka, the patent would not have issued. The nondisclosure and/or concealment of Jeka was done with the intent of deceiving the Examiner, and the Examiner was so deceived, and the patent issued as a consequence.

93.     On the basis of various prior art, claims 1-3, 9, 10 and 17-19 are invalid under 35 U.S.C. §103 and unenforceable.  By way of example and upon information and belief, applicant and/or his attorney were aware of at least Jeka and certain of the following prior art:

17

*(i)* 3M pavement marking tape (**EXHIBIT 6**);

*(ii)* 3M High Performance Adhesive Transfer Tape (**EXHIBIT 7**);

*(iii)* U.S. Patent No. 6,180,228 to Mueller (**EXHIBIT 8**) entitled "Outdoor Advertising System;"

*(iv)*  WO 9718947 **(EXHIBIT 9)** for "Durable Pavement Marking Tape With Screencoated Polyurethane Topcoat;" and

*(v)*  European Patent Specification 0488526B1 **(EXHIBIT 10)**, and/or products of 3M and others with whom applicant's company competed during the protracted prosecution of the '480 patent, but no mention of such prior art or products was made to the Patent Office during the prosecution of the application from which it issued. This failure to disclose, or concealment, was done with the intent to prevent the Examiner from fully and completely examining the patent application such that the Examiner would rely on the duty of disclosure imposed by 37 C.F.R. 1.56(a) and believe that he had available to him all material prior art during the prosecution of the application. But he did not. The actions of applicant and/or his attorney were with the intent of deceiving the Examiner; the Examiner was so deceived and, as a consequence, granted the application.

94.    One or more of the claims of the '220 patent is invalid under 35 U.S.C. § 112 for indefiniteness and the specification fails to provide a written description and enablement of the alleged invention and of the manner and process of making and using it in such full, clear, concise and exact terms as to enable a person skilled in the pertinent art to make and use the same.  For example:

(i)    The conditions for testing Shore A hardness recited in Claims 1-3, 9, 10, and 17-19 are not supported by the written description and do not enable one of ordinary skill in the

art to replicate the test procedures. The conditions are not described. No time limitation for the test method is given. And, it is commonly recognized by persons of ordinary skill in the art that readings above 90 are unreliable and should not be used; and

(ii)     There is no support in the original specification for the "Peel Adhesion Limitation." The peel adhesion test referred to in the specification is "a modified PSTC-101D method." This test method has not been identified and appears to be different than the test method "D" of PSTC-101, which may be referred to as the PSTC-101D test method.

95.     The asserted claims of the '220 patent are unenforceable for failure to abide by the requirements of candor set down by 37 C.F.R. § 1.56(a) during the prosecution of the application for at least the reasons of concealing prior art, misrepresenting the nature and extent of the prior art, or by actions of omission or commission with regard to matters material to the prosecution of the application. Such actions were taken with the intent of causing the Examiner to rely thereon.

96.     The "2.0 pounds per inch width" limitation of claim 1 and, hence, all of the claims, was added to the claims during prosecution and without a specific citation to support for this claim limitation in the patent specification as originally filed. In an amendment filed July 21, 2005, the Applicant added new claims and the critical "2.0 pounds per inch width" limitation, citing support in the originally filed claims, Fig. 1, and a chart in the specification—none of which provide a basis for the claim limitation. Applicant's citations were false and made with the intent to cause the Examiner to accept them as true, which the Examiner did. In fact, the referenced limitation constitutes new matter. All of the patent claims are, accordingly, invalid and unenforceable.

97.     An actual controversy has arisen and now exists between the parties as to the enforceability of the '220 patent.

98.     ShieldMark has been aware of these matters but nonetheless has chosen to assert infringement of the '220 patent.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that:

A.      The Court determine that Defendants are infringing, inducing others to infringe, and/or are contributorily infringing one or more claims of the '664 patent;

B.      The Court enter a permanent injunction precluding Defendants and all persons in active concert or participation with them from making, importing, using, selling, or offering to sell in the United States a product intended to be applied to a floor in a way that results in infringement of one or more claims of the '664 patent;

C.      The Court determine the amount of damage suffered by Plaintiffs as a result of Defendants' unlawful conduct and enter judgment for Plaintiffs in the amount of its damages, plus interest and the costs of this action;

D.      The Court award Plaintiffs provisional remedies under 35 U.S.C. § 154(d) because the application that issued as the '664 patent claimed an invention substantially identical to that claimed in the '664 patent and was published with such claims on or about October 15, 2015;

E.      The Court enter an order permanently enjoining ShieldMark from advertising that its Mighty Line floor marking tape has a beveled edge that increases durability for forklift traffic and withstands the beatings of industrial wheel traffic and from any similar advertising activities;

F.      The Court enter an order awarding InSite compensatory damages for ShieldMark's false advertising to be proven at trial in accordance with 15 U.S.C. § 1117;

20

G.      The Court enter an order awarding InSite any and all of ShieldMark's profits arising from the foregoing false advertising in accordance with 15 U.S.C. § 1117;

H.      The Court enter an order awarding InSite treble damages in accordance with 15 U.S.C. § 1117;

I.      Entry of judgment that Plaintiffs are not directly or indirectly infringing any valid claims of the '220 patent because of the making, using, offering for sale, or selling, of Superior Mark tape;

J.      Entry of judgment that the claims of the '220 patent are invalid;

K.      Entry of judgment that the '220 patent is unenforceable;

L.      The Court enter an order awarding InSite its costs and attorneys' fees; and

M.      The Court grant such other and further relief as it deems appropriate.

## JURY DEMAND

Plaintiffs hereby demand a jury trial pursuant to Fed. R. Civ. P. 38(b) of all issues so triable.

Dated: October 27, 2020          Respectfully submitted,

*/s/Ray L. Weber*
Ray L. Weber       (0006497)
Laura J. Gentilcore   (0034702)
RENNER, KENNER, GREIVE, BOBAK,
    TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, Ohio 44308
Telephone:  (330) 376-1242
Facsimile:  (330) 376-9646
Email: rlweber@rennerkenner.com
Email: ljgentilcore@rennerkenner.com

*Attorneys for Plaintiffs, Clifford A. Lowe*
*and InSite Solutions, LLC*

21

**CERTIFICATE OF SERVICE**

This is to confirm that a copy of the foregoing **THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT OF U.S. PATENT NO. 10,214,664, FALSE ADVERTISING, AND  DECLARATORY JUDGMENT OF NON-INFRINGEMENT, INVALIDITY AND UNENFORCEABILITY OF U.S. PATENT NO. 10,738,220 WITH JURY TRIAL DEMANDED** was electronically filed on October 27, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and the filing may be accessed through that system.

*/s/Ray L. Weber*
Ray L. Weber