UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Clifford A. Lowe, et al. | ) |
|           Plaintiffs | ) CASE NO.: 1:19-CV-748-JG |
| v. | ) JUDGE: JAMES S. GWIN |
| ShieldMark, Inc., et al. | ) |
|           Defendants | ) |

**PLAINTIFFS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**

**I.      Introduction.**

Throughout their claim construction brief, Defendants argue that "findings in connection with ShieldMark's *petition* for a post grant review ('PGR') of the Lowe Patent, show that Plaintiffs' constructions are improper," (emphasis added) and that "Mr. Lowe acted as his own lexicographer," and "accordingly" those definitions "control." (Doc. #53, PageID #1242, 1251 and 1253-54).  Defendants also argue that the doctrine of prosecution disclaimer applies because of the *petition* proceedings (*Id.*)—which it does not.

First, there was no PGR proceeding.  Rather, there was only a *petition* for a post-grant review. ***That petition was denied*** (Doc. #54-5), *as was ShieldMark's Request for Rehearing of Institution Decision* (Exhibit 7 hereto).  A Post-Grant Review proceeding was *never* instituted.

Second, the sole issue before the U.S. Patent and Trademark Office, Patent Trial and Appeals Board ("PTAB") in determining to *deny* Defendant's petition was whether there was support for the claims of the '664 patent in its specification.

1

> To establish that the '664 patent is eligible for post-grant review, Petitioner has the burden of demonstrating that it is more likely than not that the '664 patent has at least one claim with an effective filing date on or after March 16, 2013….To determine whether the '664 patent is eligible for post-grant review, then, we must first decide whether Petitioner has shown that one or more of the challenged claims lack written description and/or enablement support in at least one of the pre-AIA applications. (Doc. #54-5, Page ID#1536)

Third, the definitions argued by Lowe were consistent with the drawings of the '664 patent—as recognized by the PTAB in determining there was no lack of written description and/or enablement support for any challenged claim.

Fourth, and most importantly, the principle of an applicant acting as his/her own lexicographer applies to the application for a patent—the presentation of the specification, drawings and claims, and the file history or dialogue between the examiner and the applicant—the intrinsic evidence. *Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 889 (1984) ("It is the inventor applying for a patent who is permitted to be his own lexicographer…. Nevertheless, the place to do so is in the specification of the inventor's application, and the time to do so is prior to that application acquiring its own independent life as a technical disclosure through its issuance as a United States patent."). Indeed, as acknowledged by Defendants, "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history….," citing, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir 1996). (Doc. #53, PageID #1251). Here, [in the '664 specification or file history] there is no such "special definition clearly stated."

Statements made in a post grant proceeding, and more so a petition to institute such a proceeding, are extrinsic evidence. *GREE, Inc. v. Supercell Oy,* 2020 WL 6559435 at *7, 10, 14 & 17 (E.D. Texas). This is also true of testimony by the inventor. *Lear, supra*; see also, *Oakley,*

2

*Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1342 n.2 (Fed. Cir. 2003) ("We consider [deposition testimony of the inventor] to be of little value in the definiteness analysis or claim construction.") and *Trustees of Columbia University in the City of New York v. NortonLifeLock, Inc.*, 2019 WL 7040931, *4 n.7 (E.D. Va. 2019) ("Such extrinsic evidence 'may not be used to contract or expand the claim language or the meanings established in the specification.'"). As extrinsic evidence, they are both given less weight than intrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303,1317-18 (Fed. Cir. 2005). Indeed, "[l]egal error arises when a court relies on extrinsic evidence that contradicts the intrinsic record." *Ruckus Wireless, Inc. v. Innovative Wireless Solutions,* 824 F.3d 999, 1003 (Fed Cir. 2016) *citing Lighting Ballast Control LLC* v. *Philips Elecs. N. Am. Corp.*, 790 F.3d 1329, 1338 (Fed Cir. 2015) and *On-Line Tech., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138-39 (Fed. Cir. 2014). Cardinally, "'[t]he only meaning that matters in claim construction is the meaning in the context of the patent.'" *Id., citing TRS of Columbia Univ. v. Symantec Corp.,* 11 F.3d 1359, 1363 (Fed. Cir. 2016).

Fifth, as to the doctrine of prosecution disclaimer, it applies as the name suggests, in the first instance to pre-issuance prosecution. The cases cited by Defendants for the principle that the doctrine of prosecution disclaimer has been extended to post-grant proceedings do not support its application in the event of a **petition requesting the institution of a post grant review proceeding**. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017) involved an **inter partes proceeding,** and discussed the application of the doctrine of prosecution disclaimer in **reexamination proceedings and reissue proceedings**.

**II.     Contrary To Defendants, The Proposed Claim Constructions Of Plaintiffs Are Consistent With Lowe's Arguments Before The PTAB, With Which The PTAB Agreed In Denying ShieldMark's Petition For Post Grant Review, And Should Be Adopted As Defendants Promoted The Expertise Of The PTAB Before This Court In Obtaining The Stay Pending Post-Grant Review**

Four months into this case, ShieldMark moved this Court to stay proceedings pending Post-Grant Review before the U.S. Patent and Trademark Office, Patent Trial and Appeal Board (PTAB). (Doc. #28). In its accompanying brief (Doc. #28-1), ShieldMark advised the Court that "Plaintiffs will not oppose this Motion." (PageID #371). In support of its Motion, ShieldMark advised the Court "[t]he Petition filed by ShieldMark before the PTAB addresses some of the same…claim construction issues that this Court and jury will be asked to address." (PageID #374). ShieldMark went on to say "[a] stay in this case is even more compelling because the PTAB is being asked to decide some of the same claim construction issues that will arise if this case proceeds." (PageID #375). Again, ShieldMark informed this Court that "Plaintiffs advised ShieldMark that they would not oppose this Motion." Plaintiffs did so for at least the reason that Plaintiffs also desired the expertise of the PTAB to shed light on claim construction issues. ShieldMark advanced that a Post-Grant Review "will reduce the number of…claim construction issues that need to be decided in this case," indicating a preference to defer to the expertise of the PTAB. (PageID #377).

ShieldMark advised this Court that "the PTAB's expertise in considering…claim terms will benefit the parties and the Court. The PTAB has technical expertise and…judicial economy will be promoted through the elimination of some of the same issues related to…claim construction. In this way…claim construction…will be streamlined and it may promote the possibility of settlement." (PageID #378). ShieldMark went to great lengths to convince this

4

Court how beneficial the decisions of the PTAB would be on claim construction issues to justify the delay of more than a year in these proceedings.

The Post-Grant Review process before the PTAB did not fare well for ShieldMark.  The PTAB gave the matter thorough consideration, addressed multiple claim construction issues, routinely ruled against ShieldMark, and denied both ShieldMark's Petition for Post-Grant Review and its Request for Rehearing.  Now, despite its representations to this Court in obtaining the stay, ShieldMark selectively distances itself from the "expertise" of the PTAB and its adverse rulings on claim construction.

As presented in Plaintiffs' Opening Brief on Claim Construction (Doc. #54) and as will be apparent herein, Plaintiffs defer to the well-reasoned Decisions of the PTAB (Doc. #54-5 and Exhibit 7 hereto) in the Post-Grant Review engaged by ShieldMark.

**III.     While Defendants Seek To Rewrite the Claims of the '664 Patent, The Proposed Claim Constructions of Plaintiffs Are Based On Intrinsic Evidence**

As discussed individually below, Defendants' proposed claim term constructions are not based on intrinsic evidence, but rather on extrinsic evidence.  Yet, the intrinsic evidence—the specification, drawings and the claims themselves—should be the first and primary source for determining the meaning of claim terms.  *Vitronics Corp.*, 90 F.3d 1582.  Unlike ShieldMark, Plaintiffs consistently argued the specification, drawings and the claims, before the PTAB, a fact which the PTAB recognized in denying ShieldMark's Petition to Institute a Post Grant Review. Further, Defendants' proposed constructions here include language that does not appear anywhere in the patent, and thereby constitute an impermissible rewriting of the claims rather than an interpretation.  *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 129, 1301 (Fed. Cir. 2014).

5

### FOR THE '664 PATENT

1. **"tapered" (claims 1 and 11)**

| Lowe/InSite Proposed Construction | ShieldMark Proposed Construction |
|---|---|
| to become smaller or thinner toward one end with no areas of substantially uniform thickness | to become smaller or thinner toward one end |

ShieldMark distances itself from the express ruling of the PTAB. Indeed, in construing the term "tapered" in the context of the claims, the PTAB expressly rejected ShieldMark's proffer here, in favor of considering that term in the context of the claims as a whole, the patent specification, and the drawing of Fig. 2. Such was noted in its Decision where the PTAB found "it is clear that the 'entire body' of each lateral edge portion is tapered; for it becomes smaller and thinner toward one end with no areas of substantially uniform thickness." (See Doc. #54-5, PageID #1548-1549.) The PTAB found that it is not enough that each lateral edge portion becomes smaller or thinner toward one end, but that the claim is further limited by the fact that this taper contains "no areas of substantially uniform thickness." Such is apparent from the claim as a whole, the patent specification, and the drawing of Fig. 2 of the '664 patent.

2. **"lateral edge portion" (claims 1 and 11)**

| Lowe/InSite Proposed Construction | ShieldMark Proposed Construction |
|---|---|
| a portion of the tapered edges of the tape body | the portion of the floor marking tape from the shoulder to the edge of the tape when viewed in cross section |

ShieldMark's proposal fails as a matter of law. Its proposed definition improperly reads an extraneous limitation from the specification and drawings into the claim. *E.I. du Pont de*

*Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433 (Fed. Cir. 1988). ShieldMark's construction that the lateral edge portion is "the portion of the floor marking tape from the shoulder to the edge of the tape…" reads the extraneous limitation of "shoulder" into claims 1 and 11. Nowhere is there any suggestion in those claims of the existence of a "shoulder." It is fundamental that claims are to be construed, not rewritten. *Id.;* See also *K-2 Corp. v. Solomon S.A.,* 191 F.3d 1356, 1364 (Fed. Cir. 1999). ShieldMark simply attempts to add a limitation to the claims that is neither contemplated nor accommodated by the claims.

ShieldMark also ignores the fact that claim 1, for example, distinguishes between the lower surface of each lateral edge portion and the lower surface of the body; the two being separate and distinct from each other. Yet, they are claimed as being coplanar—which means they extend or lie in the same plane. The lateral edge portions are coplanar extensions of the lower surface of the body (claim 1, ll. 25-26). Accordingly, the lower surface of the body and the lower surface of each lateral edge portion are distinct from each other and lie in the same plane. As a consequence, the lateral edge portion simply cannot extend from the shoulder 32 to the outer edge of the tape when viewed in cross-section as proposed by ShieldMark.

**3.    "coplanar/lower surface of each lateral edge portion being a flat coplanar extension of the lower surface of the body" (claim 1)**

| Lowe/InSite Proposed Construction | ShieldMark Proposed Construction |
|---|---|
| the bottom surface of the lateral edge portions are flat, lie in the same plane, and define an extension of the lower surface of the body | a planar relationship between two or more things that does not allow the entire lower surface of the tape body to be one flat or planar surface |

ShieldMark's contortion with regard to the term "coplanar" and its use in the phrase "lower surface of each lateral edge portion being a flat coplanar extension of the lower surface of

7

the body" defy credulity. It ignores the express language of the claim, which is supported by the fundamentals of geometry. What ShieldMark calls the Lateral Edge Lower Surface and the Body Lower Surface are not, in any sense of the word, coplanar. While they may lie in parallel planes, they do not lie in the same plane. (See Doc. #53 Defendants' Opening Brief, PageID #1257.) Moreover, they certainly do not have a "planar relationship with the Vertical Plane." *Id.* In fact, in its illustration, ShieldMark acknowledges that the Body Lower Surface and the Lateral Edge Lower Surface are "Two different surfaces." And, as illustrated, they certainly do not have a coplanar relationship. Nor do they have a planar relationship with the vertical plane shown in that illustration. Rather, they are perpendicular to the vertical plane—which is the antithesis of the relationship claimed.

  Again, the PTAB said it best. It found: "Each lateral edge portion is 'flat' because it is 'applied to a floor surface,' i.e., 'a *level* supporting surface.'" (emphasis added) "Because the tape's lateral edge portions are each applied to the floor, the lateral edge portions appear also to be coplanar with each other and not with recess 30 that holds adhesive 34." Furthermore, Figure 1 **depicts each lateral edge portion as an extension of the lower surface of tape body 10**." (emphasis added) (Doc. #54-5, PageID #1545-1546) Clearly, ShieldMark has misidentified the Body Lower Surface in its illustration on page 17 (PageID #1257) of its brief. What ShieldMark has shown as the lateral edge lower surface is actually only a portion of that surface, the remainder of which is the lower surface of the tape body 10, as aptly noted by the PTAB. It must be appreciated that the claim calls out two elements that are coplanar in the limitation under consideration. It is the lower surface of each lateral edge portion and the lower surface of the body. Moreover, the lower surface of each lateral edge portion is, in fact, a flat coplanar

8

*extension* of the lower surface of the body. That is exactly what is shown in the patent figures and what the PTAB treated at length.

> 4. **"the first and second junctions disposed on the uppermost surface of the floor such that the floor marking tape limits unintentional lifting of the floor marking tape from the floor" (claim 11)**

| Lowe/InSite Proposed Construction | ShieldMark Proposed Construction |
|---|---|
| the first and second junctions are positioned on top of the floor such that the floor marking tape limits unintentional lifting of the floor marking tape from the floor | the first and second junctions are located where they are supported by the uppermost surface of the floor such that the floor marking tape does not lift up from the floor unless intended to by a human |

Here again, ShieldMark seeks to rewrite the claim with regard to the words "disposed" and "limits."

The word "dispose" means "to put in a particular or suitable place." www.TheFreeDictionary.com (Exhibit 8 hereto). In other words, "disposed" means "positioned" as advanced by Plaintiffs. It deals with a location or place, while the term "supported," advanced by ShieldMark, refers to a physical act of "bearing or holding up" or to serve as a foundation. That is not the intent of the word "disposed" as used in claim 11.

While Plaintiffs believe that the term "limits" does not require further construction—it certainly does not mean "does not" as posited by ShieldMark. The word "limits" accommodates some unintentional lifting of the floor marking tape from the floor. The absolute restriction of "does not lift up from the floor unless intended to by a human," as ShieldMark advances, is not at all what was intended by the patent claim. The patent claim speaks to limiting—not precluding—unintentional lifting.

9

5.     "smoothly curved" (claims 3 and 13)

| Lowe/InSite Proposed Construction | ShieldMark Proposed Construction |
|---|---|
| curved and free from protrusions or unevenness | to continuously bend or deviate from a straight line without any angles or roughness |

Here, ShieldMark improperly mixes geometric configuration and surface texture in defining the phrase "smoothly curved." In that phrase, "smoothly" is an adverb, and "curved" is an adjective. The word "smoothly" modifies the word "curved." The word "curved" pertains to the geometric configuration of the surface of the tape, not its texture. The term "roughness" deals with texture or surface finish, not configuration. This surface finish is addressed in claims 4 and 14. Here, ShieldMark improperly seeks to read limitations from claims 4 and 14 into claims 3 and 13. See *SRI Intern. v. Mashushita Elec. Corp. of America,* 775 F.2d 1107, 1122 (Fed. Cir. 1985).

Resort to the specification of the '664 patent at column 1, lines 49-52, defines the geometric configuration of the marking tape presented therein as a tape in which the "upper surface of the tape may be curved from edge-to-edge to limit dirt retention on the tape as well as allowing objects to slide over the tape." This statement in the specification supports the context of the claim where the surface is curved and free from protrusions or unevenness. One need go no further than the specification to appreciate the construction that should be given the claim. The concept of surface texture does not enter the equation.

### 6. "ASTM D523 gloss test" (claims 4 and 14)

| Lowe/InSite Proposed Construction | ShieldMark Proposed Construction |
|---|---|
| a test for gloss or reflectance against a standard, measuring light reflected by a surface | test to determine the relative luminous reflectance factor of a specimen in the mirror direction using the equipment and procedure set forth in ASTM D523 |

Here, stripped of its verbosity, ShieldMark's proposed construction says that "ASTM D523 gloss test" should be construed "test [as] set forth in ASTM D523." The enhancement of "to determine the relative luminous reflectance factor of a specimen in the mirror direction using particular equipment and procedure" does little but confuse the issue. A fact-finder would not have a clue as to how that term should be applied to the facts adduced at trial. The construction offered by ShieldMark, which directs the reader to further resort to ASTM D523 (i.e., "set forth in ASTM D523") is of little help in understanding the claims. Plaintiffs' construction is straightforward, understandable, and could readily be appreciated by a fact-finder. Plaintiffs' construction should be adopted.

### 7. "smoothly tapered" (claims 5 and 15)

| Lowe/InSite Proposed Construction | ShieldMark Proposed Construction |
|---|---|
| tapered without projections or unevenness | to become smaller or thinner toward one end without roughness |

The term "tapered" has been addressed as term #1, above. As also presented above, "smoothly" simply means "free from projections or unevenness of surface" as precisely shown in the figures of the '664 patent with regard to the upper surfaces of the lateral edge portions as addressed in claims 5 and 15. There are no projections and there is no unevenness. The surface texture is not at issue and, accordingly, the gratuitous inclusion of "without roughness" is an

11

improper introduction of a limitation into the claim amounting to a rewriting of the claim rather than a construction of it.

### 8. "central body portion" (claims 10 and 20)

| Lowe/InSite Proposed Construction | ShieldMark Proposed Construction |
|---|---|
| the portion of the tape body that extends along and on each side of the body's centerline | portion of the tape body between the shoulders of the two lateral edge portions |

Here, ShieldMark commits the fatal error of introducing a limitation into the claims. Neither claim 10 nor 20 makes reference to "shoulders of the two lateral edge portions" or any "shoulders" whatsoever. Yet, the definition of the "central body portion" of claims 10 and 20 advanced by ShieldMark includes the limitation of "the shoulders of the two lateral edge portions." Simply put, ShieldMark's definition reads an extraneous limitation from the specification into the claims, which is wrong as a matter of law. *E.I. du Pont de Nemours, supra.* ShieldMark improperly seeks to define the central body portion as being "between the shoulders of the two lateral edge portions." But neither claim 10 nor claim 20, nor claims 1 and 11 from which they respectively depend, make any reference whatsoever to "shoulders."

Simply put, claims are to be construed, not rewritten. *K-2 Corp., supra.* The term "shoulders," in the context of claims 10 and 20, is born of fantasy. This is the same type of claim rewrite, with reference to exactly the same term "shoulders" that ShieldMark improperly advanced with regard to term #2 above.

The term "central body portion" means exactly what it literally says. It is that portion of the tape that extends along and on each side of the body centerline. It is in the central portion of the body and, hence, aptly termed "central body portion." Claims 10 and 20 do not suggest anything else.

12

**FOR THE '220 PATENT**

**The only term in dispute: "modified PSTC-101 test method" (claims 3, 9)**

| Lowe/InSite Proposed Construction | ShieldMark Proposed Construction |
|---|---|
| modified PSTC-101D test method | peeling a sample of the floor marking tape according to a PSTC-101 test method with a dwell time of one hour |

The only test method presented in the '220 patent specification is "a modified PSTC-101D method." That test is identified specifically in the specification. That is what is required by the law—broadly written claims must be supported by the patent specification. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1333 (Fed. Cir. 2003). There are, indeed, six specifically different test methods under PSTC-101. The only one described in the patent specification is PSTC-101D. Accordingly, that is the only test method supported by the specification and, to the extent a test method is claimed, it must be the PSTC-101D method. Simply put, there is not an enabling disclosure under 35 U.S.C. § 112, ¶¶ 1 and 2, for a PSTC-101 test method as broadly claimed.

## CONCLUSION

Throughout, in support of its proposed claim constructions, ShieldMark argues principles, namely that Mr. Lowe acted as his own lexicographer and prosecution disclaimer, that simply do not apply. No proceedings were ever instituted by the PTAB.

Throughout, ShieldMark ignores that the PTAB expressly agreed with Mr. Lowe in his claim interpretations based on the intrinsic evidence. Yet, ShieldMark sought the post grant review, promoting the expertise of the PTAB to this Court, and then pursued it for over a year. It also has sought to rewrite claims by introducing extraneous limitations into the claims or by

ignoring the express language of the claims themselves. Such activities are proscribed by law and should not be countenanced by this Court.

    Plaintiffs have offered constructions consistent with the proceedings before the PTAB, consistent with the express language of the claims themselves, and with due regard to the disclosure of the patent specification and drawings. Plaintiffs' proffers should be adopted.

Dated: March 9, 2021            Respectfully submitted,

                                     /s/ Ray L. Weber
                                     Ray L. Weber      (0006497)
                                     Laura J. Gentilcore    (0034702)
                                     RENNER, KENNER, GREIVE, BOBAK,
                                     TAYLOR & WEBER
                                     106 South Main Street, Suite 400
                                     Akron, OH 44308
                                     Telephone: (330) 376-1242
                                     Fax: (330) 376-9646
                                     E-mail: rlweber@rennerkenner.com
                                     E-mail: ljgentilcore@rennerkenner.com

                                     *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing **PLAINTIFFS' RESPONSIVE CLAIM CONSTRUCTION BRIEF** has been filed electronically on March 9, 2021, with the United States District Court for the Northern District of Ohio. Notice of the filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                     /s/ Ray L. Weber
                                     Ray L. Weber