UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Clifford A. Lowe, et al. | ) | |
| | ) | CASE NO.:  1:19-CV-748-JG |
| Plaintiffs | ) | |
| v. | ) | JUDGE:  JAMES S. GWIN |
| | ) | |
| ShieldMark, Inc., et al. | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFFS' MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT ON THE CLAIM OF
INFRINGEMENT OF THE '664 PATENT, AND DEFENSES OF INVALIDITY AND
UNENFORCEABILITY TO THE CLAIM OF INFRINGEMENT OF THE '220 PATENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. ................................................................................................ ii

TABLE OF EXHIBITS ..................................................................................................... iv

I.    SUMMARY JUDGMENT ..................................................................................... 1

II.   INFRINGEMENT OF U.S. PATENT NO. 10,214,664 ("THE '664 PATENT") ................. 1

   A.  BACKGROUND FACTS ................................................................................ 1

   B.  SUMMARY JUDGMENT—INFRINGEMENT ANALYSIS ........................................ 5

   C.  APPLICATION OF THE LAW TO THE FACTS RELEVANT TO INFRINGEMENT—
       CLAIM BY CLAIM ANALYSIS OF THE ELEMENTS FOUND IN THE ACCUSED
       MIGHTY LINE® FLOOR MARKING TAPE PRODUCT ................................................ 5

III.  SUMMARY JUDGMENT ON DEFENSES OF INVALIDITY AND
      UNENFORCEABILITY TO THE CLAIM OF INFRINGEMENT OF U.S. PATENT NO.
      10,738,220 (THE '220 PATENT) (DOC. 42-1) ..................................................... 7

   A.  INVALIDITY—FAILURE OF WRITTEN DESCRIPTION REQUIREMENT AND
       INTRODUCTION OF NEW MATTER ............................................................... 8

      1.  PROSECUTION HISTORY ..................................................................... 10

      2.  ARGUMENT ...................................................................................... 11

   B.  INVALIDITY—OBVIOUSNESS UNDER 35 U.S.C. §103 ........................................ 13

   C.  UNENFORCEABLILITY—INEQUITABLE CONDUCT—VIOLATING
       37 C.F.R. §1.56(a) ................................................................................ 14

      1.  RELEVANT FACTS ............................................................................. 14

CONCLUSION.................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) 1

*Apotex, Inc. v. UCB, Inc.,* 763 F.3d 1354, 1362 (Fed. Cir. 2014) .................................................. 14

*ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 540 (Fed.Cir.1998)........................................................ 5

*Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006)................ 8

*E.G., Intellect Wireless, Inc. v. HTC Corp.,* 732 F.3d 1339, 1345 (Fed. Cir. 2013) ................... 14

*Eli Lilly and Co. v. Barr Laboratories, Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001)......................... 7

*Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1479–80 (Fed.Cir.1998).................. 7, 12

*Gilead Sciences, Inc. v. Merck & Co. Inc.,* 888 F.3d 1231 (Fed. Cir. 2018)............................... 14

*In re Barker,* 559 F.2d 588 (C.C.P.A. 1977) .............................................................................. 12

*In re Kaslow*, 707 F.2d 1366, 1375 (Fed. Cir. 1983)............................................................. 11, 13

*Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), aff'd, 517
    U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)................................................................. 5

*Phillips v. AWH Corp*., 415 F.3d 1303, 1316 (Fed. Cir. 2005) ..................................................... 7

*Ralston Purina Co. v. Far-Mar-Co., Inc.,* 772 F.2d 1570, 1574 (Fed. Cir. 1985) ................ 11, 13

*SRI Int'l v. Matsushita Elec. Corp. of Am*., 775 F.2d 1107, 1116 (Fed. Cir. 1985)....................... 1

*Therasense, Inc. v. Becton, Dickinson and Co.,* 649 F.3d 1276, 1288-1289 (Fed. Cir. 2011) ..... 19

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co*., 264 F.3d
    1111,1119-20 (Fed. Cir. 2001) ................................................................................................ 7

*Vas-Cath Inc. v. Mahurkar,* 935 F.2d 1555 (Fed. Cir. 1991) ..................................................... 11

ii

**Statutes**

35 U.S.C. §102 ................................................................................................................ 15

35 U.S.C. §103 ................................................................................................................ 13

35 U.S.C. §112 ........................................................................................................... passim

35 U.S.C. §132 ........................................................................................................... passim

37 C.F.R. §1.56 ....................................................................................................... 8, 14, 16

**Rules**

Federal Rules of Civil Procedure Rule 56 ........................................................................ 1

## TABLE OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | SJR Research Report |
| Exhibit 2 | Ergomat damage disclaimer |
| Exhibit 3 | U.S. Patent No. 8,088,480 |
| Exhibit 4 | Bullnose edge ISL000095 |
| Exhibit 5 | Duck-billed edge ISL000077, 13,16,78,79 |
| Exhibit 6 | Plaintiffs' Infringement Contentions |
| Exhibit 7 | Two photographs,  Trade show booth and table |
| Exhibit 8 | Decision 03/09/2020 Denying Institution of Post-Grant Review |
| Exhibit 9 | Decision 09/04/2020 Denying Request for Rehearing, Granting Request for Late Filing |
| Exhibit 10 | Serra Deposition TR. 08/30-2013 |
| Exhibit 11 | U.S. Patent No. 8,343,292 |
| Exhibit 12 | Goecke Deposition TR. 04/25/2013 |
| Exhibit 13 | Plaintiffs' Invalidity Contentions |
| Exhibit 14 | Nye Deposition TR. 05/31/2013 |
| Exhibit 15 | Goecke Patent Office Action 02/12/2015 |
| Exhibit 16 | 3M Technical Data Sheet |
| Exhibit 17 | Mueller Patent 6,180,228 |
| Exhibit 18 | PCT WO9718947 |
| Exhibit 19 | EPO 0488526B1 |
| Exhibit 20 | Goecke Patent Office Action 11/02/2015 |
| Exhibit 21 | Goecke Deposition TR. 06/27/2013 |
| Exhibit 22 | PVC_Affidavit of Creative Safety |

In support of their motion for summary judgment, Plaintiffs offer the following:

## I.     SUMMARY JUDGMENT

Summary judgment under Rule 56 is appropriate in a patent case, as it is in any other case, where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. 2505.

## II.    INFRINGEMENT OF U.S. PATENT NO. 10,214,664 ("THE '664 PATENT")

Plaintiffs seek summary judgment for infringement of the '664 patent (1) by offers for sale and sales of Mighty Line® floor marking tape by Defendant ShieldMark Inc. ("ShieldMark"); (2) manufacture, offers for sale and sales of the Mighty Line® floor marking tape by Defendant Advanced Plastics, Inc. ("Advanced"); and (3) offers for sale and sales of the Mighty Line® floor marking tape by Defendant Crown Equipment, Inc., ("Crown") (collectively, "Defendants"), and state as follows.

### A.     BACKGROUND FACTS

Lowe is the inventor and the owner of the '664 Patent, which he licenses solely to InSite. (Declaration of Clifford A. Lowe ("Lowe Dec."), ¶9). The '664 patent, entitled "Floor Marking Tape," duly issued on February 26, 2019. (Doc. 44-1).

ShieldMark and InSite are competitors in the floor marking tape product industry. (Doc. 44, Page ID#832 and Doc. 46, Page ID#1039; Lowe Dec. ¶¶11-12). Lowe is the Managing Director of InSite. (Lowe Dec. ¶10).

While the application that issued as the '664 patent was pending, Lowe observed changes in ShieldMark's marketing of its Mighty Line® floor marking tape product. (Lowe Dec. ¶13). While Lowe had not previously seen advertising by ShieldMark promoting its Mighty Line® floor marking tape product as having beveled edges that limited its lifting from the floor, he began to see such advertising in or about late 2015-2016. (Lowe Dec. ¶14). Lowe had a study done by SJR Research, LLC, an independent marketing firm, to confirm his observation. (Lowe Dec. ¶15 and Exhibit ("Ex.") 1, ISL000157-165). The report (Ex. 1) confirmed initial print advertising of beveled edges that "inhibited chipping from forklifts" (ISL000159) in or about 2007 (two years after Lowe filed the application to which the '664 patent claims priority); and multiple print and internet ads and a YouTube® video ad appearing in 2015-2016 specifically referencing beveled edges and forklift traffic (ISL000164).

InSite had sold the ShieldMark floor marking tape product beginning in about January of 2004 through about 2011. (Lowe Dec. ¶ 16). From 2004 to about 2009, it was manufactured by Advanced for Ergomat (ShieldMark's exclusive Licensee) under the commercial name DuraStripe. (Doc. 46, Page ID#1051) (Lowe Dec. ¶ 17). Not only at that time did Ergomat ***not*** advertise DuraStripe as having beveled edges that resisted its lifting from the floor by forklift traffic and pallets, Ergomat expressly ***disclaimed any warranty for damage from forklift traffic and pallets***. (See Ex. 2, ISL000145-154, "Warranty does not cover damage caused by items pushed or dragged across the product, such as skids or pallets," and Lowe Dec. ¶20).

This adverting disclaimer is consistent with the patent under which the tape was and is made—U.S. Patent No. 8,088,480 ("the '480 patent") (Ex. 3). The '480 patent is the grandparent of U.S. Patent No. 10,738,220 ("the '220 patent") (Doc. 42-1) that is the subject of ShieldMark's Counterclaim Count 4 for patent infringement against Lowe and InSite in this litigation (Doc. 42, PageID##682-685). Neither the '480 patent nor the '220 patent makes mention of beveled edges and, in fact, the drawings of both patents depict a flat or square edge. (Ex. 3 and Doc. 42-1; Lowe Dec. ¶¶21 & 22).

Such a flat or square edge is also consistent with the die which ShieldMark touts as proving its tape product has always had beveled edges (Doc. 42, PageID #665)—a die only capable of producing an extrudate having either a bull-nosed or duck-billed shape. (Ex. 4 and 5; see Lowe Dec.¶ ¶18 & 19). While either format is "beveled" by definition (i.e., "a surface that does not form a right angle with adjacent surfaces"), neither is a tapered edge (i.e., an edge which becomes smaller or thinner toward one end with no areas of substantially uniform thickness) capable of lying flat on the floor and resisting lifting from the floor. In neither configuration is the bottom surface of the lateral edge portions flat.  In neither configuration do the lateral edge portions lie in the same plane and define an extension of the lower surface of the body, nor are there first and second junctions positioned on top of the floor such that the floor marking tape limits unintentional lifting of the floor marking tape from the floor.  (Exs. 4 and 5).

The angle of ShieldMark's touted die cannot produce an extruded tape with a beveled and tapered edge capable of lying flat on the floor and resisting lifting from the floor. It can only produce the bull-nosed or the duck-billed edges exhibited by the DuraStripe floor marking tape—the tape which InSite sold and for which samples remain in the possession of Lowe and InSite. (Lowe Dec. ¶¶ 23). As it cools, the hot polyvinyl chloride extrudate necessarily shrinks.

Because of this fact, and the fact that the touted die is abruptly angled, the die cannot produce a tapered edge capable of lying flat on the floor and resisting lifting from the floor. (Lowe Dec. ¶¶24).

Lowe was aware that while the DuraStripe floor marking tape he had sold had "beveled edges," those edges did not lie flat on the floor and did not limit the removal of the tape from the floor. (Lowe Dec. ¶18). So confident was Lowe of these facts, that during the pendency of his application which issued as the '664 patent, he submitted to the Patent Office a sample of the DuraStripe floor marking tape he had earlier sold so that the Patent Examiner could appreciate the nature of the problem with this earlier tape. (Lowe Dec. ¶25).

After the '664 patent issued, Lowe went about obtaining samples of the Mighty Line® floor marking tape now being advertised as having "beveled edges" and resisting removal from the floor. (Lowe Dec. ¶26). He discovered that the previous bull-nosed or duck-billed edged ShieldMark tape product sold first under the DuraStripe commercial name and later under the Mighty Line® commercial name now had a tapered edge that laid flat on the floor so that it limited lifting of the tape from the floor. (Lowe Dec. ¶26).

One of the samples Lowe obtained at trade shows was used to make the infringement charts which are exhibits in support of this motion. (Lowe Dec. ¶27)  The blue tape of Ex. 6 can be seen on a table in Booth No. 34412 occupied by ShieldMark at a trade show in a photograph (Ex.7) taken by Lowe at that trade show on April 25, 2019. (Lowe Dec. ¶28).  The yellow tape of Ex. 6 is from a roll of Mighty Line® floor marking tape purchased on August 13, 2019. (Lowe Dec. ¶29).  A photograph of that roll bearing the brand name was also taken by Lowe and is also part of Exhibit 6.  (Lowe Dec. ¶29). The photographs in each instance prove that the tape used in the infringement charts is the Mighty Line® floor marking tape product of ShieldMark.

4

Both the blue tape and yellow tape of Ex. 6 have each and every element of independent claims 1 and 11 of the '664 patent.

In answering the Third Amended Complaint, ShieldMark admits offering for sale and selling the Mighty Line® floor marking tape product. (Doc. 46, ¶39); Advanced admits manufacturing it (Doc. 45, ¶ 40); and Crown admits offering it for sale and selling it. (Doc. 47, ¶39). These activities of Defendants are without the authority of Lowe. (Lowe Dec. ¶30).

**B.      SUMMARY JUDGMENT--INFRINGEMENT ANALYSIS**

A patent infringement analysis involves (1) claim construction and (2) application of the properly construed claim to the accused product. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995) (*en banc*), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Thus, "[A] court may grant summary judgment when, upon construction of the claims and with all reasonable factual inferences drawn in favor of the non-movant, it is apparent that only one conclusion as to infringement could be reached by a reasonable jury." *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 540 (Fed.Cir.1998).

**C.      APPLICATION OF THE LAW TO THE FACTS RELEVANT TO INFRINGEMENT—CLAIM BY CLAIM ANALYSIS OF THE ELEMENTS FOUND IN THE ACCUSED MIGHTY LINE® FLOOR MARKING TAPE PRODUCT**

The Court has yet to issue its claim construction order. Notwithstanding, on August 17, 2019, ShieldMark moved the Court to stay this matter because it filed a petition for post grant review before the U.S. Patent Trial and Appeal Board ("PTAB")) touting the PTAB's expertise. (Doc. 28). In its brief in support (Doc. 28-1, PageID#378), ShieldMark argued:

> [T]he PTAB's expertise in considering the prior art and ***claim terms*** will benefit the parties and the Court. The PTAB has technical expertise and will be able to resolve the invalidity issues raised by the PGR petition. Thus, judicial economy will be promoted through the elimination of some of the same issues related to

5

invalidity and **claim construction**. In this way, fact discovery, claim construction, expert discovery and trial will be streamlined and it may promote the possibility of settlement. (emphasis added)

Despite having previously touted the expertise of the PTAB in the *Markman* proceedings herein, ShieldMark now rejects it. By way of example, ShieldMark remarkably argued before this Court that the structure of "shoulders" must be considered in the interpretation of "lateral edge portions." Noting that ShieldMark did not address the "coplanar extension" language at issue but proposed a claim construction as it pertained to the tape body as whole (FN 6), the PTAB rejected that argument in denying the post grant review:

> Petitioner's argument regarding the written description requirement is premised on requiring the lower surface of the lateral edge portions to be coplanar with the lower surface of the tape body defined by recess 30—a construction that Petitioner has not persuaded us is the correct one. (Footnote omitted.) (Ex. 8)

Plaintiffs' proposed claim constructions are consistent with those of the PTAB which denied ShieldMark's request for post grant review, not once but twice. (Ex. 8 and Ex. 9). ShieldMark should not now be able to walk away from the expertise of the PTAB that it touted and argued before this Court.

Most importantly, Plaintiffs' claim constructions are consistent with (1) the ordinary and plain language of the claims themselves; and (2) the specification and drawings of the '664 patent as they describe the claimed invention of the '664 patent. That invention is separate and distinct from the invention of U.S. Patent No. 8,883,290 ("the '290 patent") (Doc. 75-2), the claims of which require "shoulders." Notably, the '290 patent is the parent of the '664 patent and, while they share the same specification and drawings, their claims are to different inventions. Similarly, the claims of the '480 patent (grandparent of the '220 patent) also require shoulders while claiming yet a different invention. This is significant, for the reason that it is "[t]he construction that stays **true to the claim language** and most naturally aligns with the

patent's *description of the invention* [that] will be, in the end, the correct construction." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005).

Applying Plaintiffs' claim construction, as seen in Ex. 6, each of the elements of independent claims 1 and 11, and dependent claims 2-6, 10, 12-16, 20 and 21, will be found in the Mighty Line® floor marking tape as shown in Ex. 6. As such, in view of the admissions of Defendants as to manufacturing, offering for sale, and selling the Mighty Line® floor marking tape, and the Declaration of Lowe authenticating the source of the samples employed in the infringement analysis and denying any authority given to Defendants to make a product under the '664 patent, Plaintiffs are entitled to summary judgment of infringement.

## III.  SUMMARY JUDGMENT ON DEFENSES OF INVALIDITY AND UNENFORCEABILITY TO THE CLAIM OF INFRINGEMENT OF THE U.S. PATENT NO. 10,738,220 (THE '220 PATENT) (DOC. 42-1)

A district court can properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the movant presents clear and convincing evidence such that no reasonable juror could find otherwise. *Eli Lilly and Co. v. Barr Laboratories, Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

Absent support in an original specification for an added claim, summary judgment is appropriate. *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 264 F.3d 1111,1119-20 (Fed. Cir. 2001). When the applicant adds a claim or otherwise amends his specification after the original filing date, the new claims or other added material must find support in the original specification.  *Id.* at 1118.  See also, 35 U.S.C. §132(a).

A claim without support is invalid for an inadequate written description. Amended claims not supported by the original application are appropriately invalidated. *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1479–80 (Fed.Cir.1998) ("[B]ecause the court clearly erred in

finding that the written description portion of the specification supported certain of the broader claims asserted by Gentry, we reverse the decision that those claims are not invalid under 35 U.S.C. §112, ¶ 1 (1994).") See also 35 U.S.C. §132 that proscribes claim amendments that add new matter.

Summary judgment of unenforceability is also appropriate where there is clear and convincing evidence. *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). Here, product sold by ShieldMark before the critical date serves as prior art to its '220 patent, and concealment of that prior art from the Patent Office was material.  Moreover, the written description requirements of 35 U.S.C. §112(a) and the "new matter" prohibition of 35 U.S.C. §132, discussed above, further support a finding here of inequitable conduct under 37 C.F.R. §1.56(a).

### A.   INVALIDITY—FAILURE OF WRITTEN DESCRIPTION REQUIREMENT AND INTRODUCTION OF NEW MATTER

The '220 patent is invalid regardless of the nature and scope of the prior art or of the construction of claim terms at issue in this litigation. Claims 1 and 17 of the '220 patent are the only independent claims in that patent. The remaining claims are dependent claims. Claims 2-16 all depend directly from claim 1, while claims 18-20 depend directly from claim 17. The law requires that "[a] claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." (35 U.S.C. §112(d), formerly 35 U.S.C. §112(4)). Accordingly, in the '220 patent, dependent claims 2-16 necessarily include the limitation of claim 1 that "the adhesive tape aisle marking system comprises a peel adhesion greater than 2.0 pounds per inch width," as required by claim 1. Similarly, dependent claims 18-20 include the limitation of "where the aisle marking system comprises a peel adhesion greater than 2.0 pounds per inch width," as expressly recited by claim 17.

8

For all intents and purposes, the limitations regarding "a peel adhesion greater than 2.0 pounds per inch width" appears in all of the claims of the '220 patent. However, this common limitation was not contained in the patent application which ultimately led to the '220 patent as would be required by 35 U.S.C. §112(a):

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

Rather, this limitation found its way into the claims by way of amendment in violation of the proscription on new matter under 35 U.S.C. §132(a) requiring that: "[N]o amendment shall introduce new matter into the disclosure of the invention."  That is precisely what happened here.

It is fundamental that a patent application must fully describe the invention at the time the application is filed. The time for inventing is then over. New matter cannot be introduced. (*Id.*)

In prior litigation (the same being U.S. District Court, Northern District of Ohio, Case No. 1:12-cv-223 and Case No. 1:12-cv-572)  involving the principals herein, ShieldMark's expert, Jerry M. Serra, PhD, was deposed. The undersigned and Dr. Serra engaged as follows:

Q.    Is there any basis in that, in the ['292] patent or in the chart [of the '292 patent] for the 2 pounds per inch width?

A.   No.

(Ex. 10; 08/30/2013 Serra Dep. TR. 52:9-55:16).

Since the '220 patent is a continuation of Patent 8,343,292 ("the '292 patent") (Ex.11) and the '480 patent, they necessarily have the same specification and drawings. The testimony of Serra would also necessarily be the same for the '220 patent.  In sum, that is the end of the '220

9

patent. As will be apparent below, the '292 and '480 patents should also be determined invalid, *sua sponte*, for exactly the same reasons.

### 1.    PROSECUTION HISTORY

As apparent from the face of the '220 patent, three patents ultimately issued from the same patent application:  the '480 patent, the '292 patent and the '220 patent. The application for the '480 patent was filed on September 29, 2003, with claims that made no reference whatsoever to "peel adhesion greater than 2.0 pounds per inch width."  In fact, neither the specification nor the drawings for that patent contained such a reference.

Rather, test results bridging columns 3 and 4 of both the '480 and the '220 patent specifications show "Adhesion to stainless lb/in width" being at an average of 5.2 lb/in width with a standard deviation of 0.5. During the prosecution of the application that ultimately issued as the '480 patent, on July 25, 2005, the claims were amended by adding claim 12 which, *for the first time* in the patent application, disclosed and claimed "a peel adhesion greater than 2.0 lb/in width."  Goecke, the patent applicant, assured the Patent Office that new claim 12 would not require an additional search of the prior art. (Ex. 12, 04/25/2013 Goecke TR. pp. 134-35).

The '480 patent issued with independent claims 2 and 5 containing the limitation of "a peel adhesion greater than 2.0 lb/in width"—a claim limitation introduced well after the patent application was filed.

The application that led to the '220 patent was filed on December 31, 2012, as a continuation from the application family that began with the application for the '480 patent. As such, it necessarily has the same specification and drawings, but different claims. Upon its filing, the claims that were originally filed with the application for the '480 patent were canceled and substituted with new application claims 11-26, which included the limitation of "a peel adhesion

greater than 2.0 lb/in width."  As mentioned above, that limitation is found in *all* of the claims in the '220 patent.

It is well to note that the application for the '220 patent filed on December 31, 2012, continued for nearly eight years until issuing on August 11, 2020. Despite knowing from its own expert, Dr. Jerry M. Serra, that there was no basis in the patent specification for the limitation of "a peel adhesion greater than 2.0 lb/in width," that limitation was allowed to remain in the claims to this date.

## 2.    ARGUMENT

As presented above, 35 U.S.C. §132 expressly provides "[n]o amendment shall introduce new matter into the disclosure of the invention." All of the '480, '292 and '220 patents issued in violation of this statute. Moreover, every claim of the '220 patent contains the violative limitation since both of its independent claims (claims 1 and 17) expressly contain that limitation and, according to 35 U.S.C. §112(d) the dependent claims necessarily contain that limitation as well. Accordingly, all of the claims of the '220 patent are invalid.

The '220 patent claims are also invalid for violating 35 U.S.C. §112(a).

It is important that the specification and drawings of the patent make it clear to the reader that the claimed subject matter was within the possession of the inventor and part of his/her invention at the time the application was filed. The Federal Circuit and its predecessors have long required that the disclosure of the patent application "reasonably conveys to the artisan that the inventor had possession at the time of filing of the later claimed subject matter." *In re Kaslow*, 707 F.2d 1366, 1375 (Fed. Cir. 1983); *Ralston Purina Co. v. Far-Mar-Co., Inc.,* 772 F.2d 1570, 1574 (Fed. Cir. 1985). See also, *Vas-Cath Inc. v. Mahurkar,* 935 F.2d 1555 (Fed. Cir. 1991).

In *In re Barker,* 559 F.2d 588 (C.C.P.A. 1977), the Court of Customs and Patent Appeals, a predecessor to the Federal Circuit, found that where a patent specification described panels having a repetitive series of eight or sixteen shingles, but the patent claim was directed to panels having a width of "at least six shingles," the Court found there was no disclosure suggesting that the patent applicant had invented that particular subject matter even though the disclosure unquestionably would have enabled the manufacture of such panels.

In like manner, in *Gentry Gallery, supra.,* the court found that a written description in a patent application that presented a sectional reclining sofa with a console containing controls would not support claims directed to sofas where the controls were not in the console and that such claims were invalid for failing to comply with the written description requirement of 35 U.S.C. §112 (a). Simply put, it is improper for a patentee to assert exclusive rights in subject matter that he/she did not possess at the time of filing the patent application. That is, the patentee cannot fail to comply with his/her part of the patent bargain, which is fundamental to the proper operation of the patent system. Exclusive rights are only given for full and complete disclosures that reveal to the public possession of the subject matter later said to be the invention. The picture of the invention is the specification and drawings originally submitted. While the chart of test results bridging columns 3 and 4 of the specification of both the '480 patent and the '220 patent presents an average adhesion of 5.2 lb/in width, with a standard deviation of 0.5, and while that is "a peel adhesion greater than 2.0 lb/in width," there is nothing in the patent specification or drawings that would suggest that Goecke envisioned a peel adhesion greater than 2.0 lb/in width at the time he filed his original patent application on September 29, 2003, for the peel adhesion at that time was referenced at 5.2  lb/in width with a standard deviation of 0.5. Indeed, it is necessary that the application as filed "reasonably conveys to the artisan that the

inventor had possession at the time [of filing the application] of the later claimed subject matter." *In re Kaslow,* 707 F.2d at 1375; *Ralston Purina Co.,* 772 F.2d at 1575. Nothing in the specification or drawings of the '480 patent or its progeny, the '220 patent, suggest that as of September 29, 2003, the inventor was in possession of a peel adhesion having a lower threshold of 2.0 lb/in width rather than that presented in the original patent application itself.

In light of the foregoing, and particularly on the basis of the specification and drawings of the '480 and '220 patents, and the deposition testimony of ShieldMark's expert witness, Dr. Jerry M. Serra, the claim limitation of "a peel adhesion greater than 2.0 lb/in width" does not satisfy the written description requirements of 35 U.S.C. §112(a). Moreover, the introduction of that claim limitation by way of amendment violated the proscription against new matter of 35 U.S.C. §132. All of the claims of the '220 patent are invalid.

## B.    INVALIDITY—OBVIOUSNESS UNDER 35 U.S.C. §103

It is fundamental that:

> [A] patent for a claimed invention may not be obtained…if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art…

Attached as Ex. 13 is a claims chart based on Plaintiffs' invalidity contentions served herein. It is supplemented by reference to the accompanying Declaration of Clifford A. Lowe, showing that the claims of the '220 patent are obvious modifications of marking tape manufactured and sold by Defendants well prior to the critical date of the '220 patent of September 29, 2002.

This renders all of the asserted claims of the '220 patent invalid as being obvious in view of the prior art under 35 U.S.C. §103.

## C. UNENFORCEABLILITY—INEQUITABLE CONDUCT—VIOLATING 37 C.F.R. §1.56(a)

The '220 patent is unenforceable for violations of the duty of candor imposed by 37 C.F.R. §1.56(a) during the prosecution of that patent before the United States Patent Office and continuing into the marketplace, PTAB, and the courts. Such patterns of misconduct form the bases for finding a breach of the duty of candor. See *E.G., Intellect Wireless, Inc. v. HTC Corp.,* 732 F.3d 1339, 1345 (Fed. Cir. 2013) (finding the inventor "engaged in a pattern of deceit"); *Apotex, Inc. v. UCB, Inc.,* 763 F.3d 1354, 1362 (Fed. Cir. 2014) (holding that "[i]n the aggregate [the inventor's] conduct evidences a pattern of lack of candor"); see also *Gilead Sciences, Inc. v. Merck & Co. Inc.,* 888 F.3d 1231 (Fed. Cir. 2018) (affirming the conclusion that "[a]ny one of these acts…would be sufficient to invoke the doctrine of unclean hands; but together, these acts unmistakably constitute egregious misconduct.")

### 1. RELEVANT FACTS

As presented more fully below, the original patent application was filed September 29, 2003 with the majority of the patent application claims reading upon products sold by ShieldMark well prior to the critical date of September 29, 2002.

As soon as that application published, it was disseminated by ShieldMark throughout the industry, followed by numerous lawsuits upon the grant of the '480 patent (the grandparent of the '220 patent). InSite alone fought back and prevailed, both at the district court level and on appeal to the Federal Circuit.

Impenitent, ShieldMark pursued a continuation patent application to seek yet another patent with which to sue InSite. During the prosecution of that latter patent application, ShieldMark amended the application claims in such a manner as to violate the written description requirement of 35 U.S.C. §112(a), as well as violating the proscription against the introduction of

14

new matter imposed by 35 U.S.C. §132 – as tacitly admitted by ShieldMark's own expert when deposed at a time during the prosecution of the application that led to the '220 patent. Notwithstanding the testimony of its own expert, ShieldMark allowed the '220 patent to issue with its defects, and now uses that defective patent to sue InSite yet again.

As if the foregoing were not enough, ShieldMark is, at this very moment, continuing to prosecute yet an additional patent application from the same, original patent application filed nearly 18 years ago. (Application No. 16/989,037, filed August 10, 2020.)

The pattern of misconduct by ShieldMark and its principal and the named inventor, Thomas R. Goecke, began with the filing of the original patent application on September 29, 2003, the grandparent of the '220 patent, and continued through the filing of continuation applications having the same specification and drawings.

The law requires that a patent application be filed within a year of the invention being made publicly known, offered for sale, or sold. (35 U.S.C. §102(b)). This "critical date" for the '220 patent was September 29, 2002. But, well before that "critical date," Advanced manufactured and sold to ShieldMark floor marking tapes, which ShieldMark ultimately advertised, promoted, and sold to multiple customers, which floor marking tapes corresponded to the claims of the original patent application filed September 9, 2003.

On May 31, 2013, Phillip M. Nye, testified on behalf of himself personally and on behalf of his company, Advanced. In about 2001, Goecke, as principal of ShieldMark, contacted Nye requesting assistance to develop a product of a strip of polycarbonate with double-sided adhesive on the back. It was to be an extruded product with a double-sided adhesive. (Ex. 14, Nye TR. pp. 10-12).  In late 2001 or early 2002, Nye worked on development of the product and found that polycarbonate and thermoplastic olefin (TPO) did "hold size" and he made product accordingly

15

and delivered it to Goecke. (Ex. 14, Nye TR. pp. 18-19). Prior to October 15, 2001, Nye

manufactured and shipped to ShieldMark polycarbonate or TPO with double-backed adhesive

(Ex. 14, Nye TR. pp. 102-104).  Indeed, on April 24, 2001, Advanced invoiced ShieldMark for

more than *one mile* of that tape (Ex. 14, Nye TR. pp. 106-107). That followed a prior order on

January 17, 2001 for 16,000 feet *(over three miles)* of the product. Goecke accepted the

polycarbonate and TPO product and Nye filled all of the orders that were placed. The products

were made according to what Goecke requested (Ex. 14, Nye TR. p. 126). Nye was never

advised of any deficiency in the products he was manufacturing and delivering to Goecke (Ex.

14, Nye TR. p.129).

Notably, Goecke was satisfied with the polycarbonate and thermoplastic olefin products.

He had a mailing list promoting them and also made "cold calls" advertising, promoting and

selling the product. (Ex. 12, Goecke TR. pp. 78-79) Goecke unequivocally testified that he was

satisfied with both the polycarbonate and thermoplastic products when he sold them. (Ex. 12,

Goecke TR. pp. 90-91)

Of particular interest, claim 1 of the patent application filed September 29, 2003, along

with the vast majority of the claims dependent therefrom, were acknowledged by Goecke to

cover the polycarbonate floor marking tape sold several years earlier. (Ex. 12, Goecke TR. pp.

116-121.) Goecke unabashedly requested that the Patent Office grant him a patent on products

that *he knew had been manufactured, offered for sale, and sold long prior to the critical date*,

and he did so without ever advising the Patent Office of these prior commercial activities as

required by 37 C.F.R. §1.56(a).

Goecke understood the importance of patent claims and, indeed, thought that the

publication of his patent application (with claims reading on his polycarbonate embodiments)

was so important that he sent the public application to ShieldMark's competitors, threatening them with this fraudulently filed patent application. (Ex 12, Goecke TR. pp. 117-118).

As soon as the '480 patent issued, ShieldMark accelerated its threats against the industry, ultimately engaging multiple litigations asserting infringement of the '480 patent. Only InSite fought Goecke's lawsuit—and won—not only at the trial court level, but also on appeal to the Federal Circuit.

Relentlessly, ShieldMark continued prosecution of its original patent application through continuation applications in the hope of obtaining patent claims that would cover InSite's product. (See cover page of '220 patent, Doc. #46-1, PageID #1083.) In its zeal to obtain another patent to assert against InSite, ShieldMark entered amendments to the claims, amendments which were unsupported by the specification and which constituted "new matter," in violation of both 35 U.S.C. §112(a) and 35 U.S.C. §132. The violative amendments introduced "a peel adhesion greater 2.0 lb/in width" into the claims of the subject patent application, which limitation is contained in both the independent claims (1 and 17) of the '220 patent and therefore *all* of the patent claims.

ShieldMark's expert witness in prior litigation admitted that this claim limitation is not supported by the specification or drawings of the patent application that led to the '220 patent and, accordingly, did not satisfy the requirements of 35 U.S.C. §112(a) or 35 U.S.C. §132. Disregarding the advice of its own expert, ShieldMark allowed the '220 patent to issue with all of the claims containing a limitation that violated two separate and distinct patent statutes. And, as soon as the '220 patent issued, ShieldMark again sued InSite, in this case, on the very same product as it had in the prior litigation.

17

ShieldMark has filed yet another continuation application off of the '220 patent, claiming priority back to September 29, 2003, to further continue the inequitable conduct that commenced at least as early as September 29, 2003 when the original application was first filed.

The information concealed from the Patent Office and the overt acts taken during the prosecution were all highly material to the prosecution of the '220 patent family. A reasonable Patent Examiner would certainly have wanted to know about the commercial activities of ShieldMark in offering for sale and selling the polycarbonate and thermoplastic olefin (TPO) products with which ShieldMark was satisfied, well prior to the critical date of September 29, 2002. Yet, those activities were concealed from the Patent Office throughout.

The Patent Examiner would also have wanted to know that Goecke was making amendments to the claims that were unsupported by the underlying patent application that never made mention of a threshold for "a peel adhesion greater 2.0 lb/in width." This was in clear violation of the written description requirement of 35 U.S.C. §112(a), and the proscription against the introduction of new matter of 35 U.S.C. §132.

The difference in the floor marking tape that triggered the filing of the original patent application on September 29, 2003 appears to have been the selection of polyvinyl chloride (PVC) as the plastic, rather than polycarbonate or thermoplastic olefin (TPO). But, the original claims never distinguished as to what plastic material was being used, and the Patent Examiner was never given the opportunity to determine whether the mere change from polycarbonate and TPO to polyvinyl chloride would have been an obvious change to a person of ordinary skill in the art. Recall that Goecke was satisfied with both the polycarbonate and thermoplastic olefin products when he sold them – over *four miles* of them. The Patent Examiner should certainly

18

have been given the opportunity to determine whether the change to polyvinyl chloride would have been obvious from the prior art of polycarbonate and TPO.

In sum, ShieldMark has engaged in a continuum of inequitable conduct in soliciting, obtaining, and enforcing its family of related invalid and unenforceable patents in the field of floor marking tapes. These actions were not by happenstance or error, but were clearly intentional, continuing even when its own expert provided sworn testimony that the claims had been amended during prosecution in a manner that violated both 35 U.S.C. §112(a) and 35 U.S.C. §132. ShieldMark has inequitably persisted in its quest to dominate the market by filing lawsuit after lawsuit, threatening its competitors, and refusing to relent despite its defeat in the district court, before the Federal Circuit, and before the PTAB. The '220 patent should be held unenforceable as should its predecessors and continuing patent application, all of which are tainted by the same inequitable conduct. *Therasense, Inc. v. Becton, Dickinson and Co.,* 649 F.3d 1276, 1288-1289 (Fed. Cir. 2011).

## CONCLUSION

Summary judgment should be granted to Lowe and InSite on their claims of infringement of the '664 patent against ShieldMark for offering for sale and selling its Mighty Line® floor marking tape product; against Advanced for manufacturing, offering for sale and selling the Mighty Line® floor marking tape product; and against Crown for offering for sale and selling the Mighty Line® floor marking tape product. Their activities in this regard have been admitted. Their activities are without the authority of Lowe.  Literal infringement is clear from the exhibits provided when the claims are construed consistent with their ordinary and customary meanings, and the meanings attributed to those terms by the PTAB.

Summary judgment should also be granted to InSite and Lowe as to the invalidity of the '220 patent for failing to adhere to the written description requirements of 35 U.S.C. §112(a) and to honor the proscription against new matter as required by 35 U.S.C. §132. These violations impact all claims of the '220 patent and are independent of the claim construction issues before the Court. By themselves, they are fully dispositive of the '220 patent.

Summary judgment should also be granted to InSite and Lowe as to the invalidity of the '220 patent in view of sales made by ShieldMark prior to the critical date of that patent and because it would have been obvious to a person of ordinary skill in the art to have modified the product of the prior sales to achieve the product of the patent claims. The primary difference, if a difference at all, was changing the plastic from polycarbonate to polyvinyl chloride.

Summary judgment should also be granted to InSite and Lowe on the issue of inequitable conduct requiring that at least the '220 patent be adjudged unenforceable. For the reasons that (a) ShieldMark never informed the Patent Office of its commercial sales of its floor marking tape product before the critical date of the '220 patent and made claim amendmens that it was advised by its own expert were not supported by the specification and hence violated 35 U.S.C. §112(a) and 35 U.S.C. §132; (b) filed the original application knowing that the application claims covered or "read on" product that ShieldMark had sold more than a year prior to the critical date; and (c) has used its patents in the marketplace and courtrooms to thwart fair competition as evidenced at least by its earlier unsuccessful litigation against InSite and Lowe, followed by another continuation application to support this litigation, including proceedings before the PTAB that continued for over a year, while yet another continuing application lingers in the Patent Office.

InSite and Lowe should prevail on each aspect of their motion for summary judgment.

20

Dated:  April 16, 2021          Respectfully submitted,


                                <u>/s/ Ray L. Weber</u>
                                Ray L. Weber          (0006497)
                                Laura J. Gentilcore     (0034702)
                                RENNER, KENNER, GREIVE, BOBAK,
                                TAYLOR & WEBER
                                106 South Main Street, Suite 400
                                Akron, OH 44308
                                Telephone:  (330) 376-1242
                                Fax:  (330) 376-9646
                                E-mail: <u>rlweber@rennerkenner.com</u>
                                E-mail: <u>ljgentilcore@rennerkenner.com</u>

                                *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THE CLAIM OF INFRINGEMENT OF THE '664 PATENT, AND DEFENSES OF INVALIDITY AND UNENFORCEABILITY TO THE CLAIM OF INFRINGEMENT OF THE '220 PATENT** has been filed electronically on April 16, 2021, with the United States District Court for the Northern District of Ohio. Notice of the filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Ray L. Weber
Ray L. Weber

22