IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CLIFFORD A. LOWE, et al., | |
| Plaintiff-Counterclaim Defendants, | Case No. 1:19CV00748 |
| v. | Judge James S. Gwin |
| SHIELDMARK, INC., et al. | |
| Defendants-Counterclaim Plaintiffs. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT OF
<u>NON-INFRINGEMENT AND INVALIDITY OF THE LOWE PATENT</u>**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................ 1

II.    RELEVANT BACKGROUND ......................................................................... 3

    A.    The Lowe Patent And Its Prosecution History ....................................... 3

    B.    ShieldMark's Durastripe Tape (Now Called MightyLine®) ................... 5

    C.    Dorenbusch ............................................................................................. 6

III.    LEGAL STANDARD ..................................................................................... 7

    A.    Summary Judgment Is Appropriate When There Are No Disputed Issues Of Material Fact ................................................................................................. 7

    B.    There Can Be No Infringement Unless All Claim Limitations Are Present In The Mighty Line® Tape ................................................................................. 7

    C.    The Written Description And Enablement Requirements Of 35 U.S.C. §112 ........ 8

    D.    Invalidity Based On The On-Sale Bar ..................................................... 9

IV.    ARGUMENT ................................................................................................ 10

    A.    No Asserted Claim Of The Lowe Patent Is Infringed Because The Mighty Line® Product Does Not Have The Required "Lateral Edge Portion" ............................ 10

    B.    If Plaintiffs' Construction Of "Lateral Edge Portion" Is Adopted And Applied, Then All Claims Are Invalid For Failing To Satisfy The Written Description And Enablement Requirements .................................................................... 11

    C.    Claims 1-6 And 10 Are Not Infringed Because The Flat Bottom Surface On Durastripe/MightyLine® Does Not Meet The "Coplanar Extension" Requirement ..................................................................................................... 12

    D.    If Plaintiffs' Construction Of "Coplanar" Is Adopted And Applied, Then Claims 1-6 And 10 Are Invalid For Failing To Satisfy The Written Description And Enablement Requirements .................................................................... 13

    E.    Claims 11-16 And 20-21 Are Not Infringed Because Plaintiffs' Own Video Shows DuraStripe/MightyLine® Does Not Meet The "Unintentional Lifting" Requirement ......................................................................................... 14

i

F.      Claims 3 And 13 Are Also Not Infringed Because The Upper Surface Of Mighty Line® Between The Edges Is Not Curved ........................................................... 15

G.      Claims 4 And 14 Are Also Not Infringed Because Might Line® Does Not Have A Surface Finish That Reads Over 45 On An ASTM Gloss Test Taken At A 60 Degree Angle ...................................................................................................... 16

H.      Claims 1-3, 5-6, 10-13, 15-16 And 20-21 Are Invalid Based On Prior Art Sales of DuraStripe/MightyLine®......................................................................................... 16

I.       Claims 1-3, 5-6, 10-13, 15-16 And 20-21 Are Invalid As Anticipated By Dorenbusch If Mighty Line® Is Found To Fall Within The Scope Of Those Claims ..................................................................................................................... 20

V.      CONCLUSION................................................................................................................ 20

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180 (Fed. Cir. 2014)....................................... 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................... 7, 8

*Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010)........................................ 8

*Asyst Technologies, Inc. v. Emtrak, Inc.*, 402 F3d 1188 (Fed. Cir. 2005) ................................... 10

*Avia Group Int'l v. L.A. Gear Cal., Inc.*, 853 F.2d 1557 (Fed. Cir. 1988) .................................. 7

*Bai v. L&L Wings, Inc.*, 160 F.3d 1350 (Fed. Cir. 1998)............................................................. 8

*Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792 (Fed. Cir. 1990) .............................. 13

*Brown v. 3M*, 265 F.3d 1349 (Fed. Cir. 2001)............................................................................... 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 7

*Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.3d 1317 (Fed. Cir. 2002).... 10

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005 (Fed. Cir. 2006) ............. 10

*Evans Cooling Sys. Inc. v. General Motors Corp.*, 125 F.3d 1448 (Fed. Cir. 1997)..................... 9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 535 U.S. 722 (2002)................... 13

*Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998)................................. 9, 11

*ICU Med., Inc. v. Alaris, Med. Sys., Inc.*, 558 F.3d 1368 (Fed. Cir. 2009) .................................. 9

*Lockwood v. American Airlines, Inc.*, 107 F.3d 1565 (Fed. Cir. 1997) ...................................... 11

*Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279 (Fed. Cir. 1986) .... 8

*Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376 (Fed. Cir. 2007) ........................... 8

*Novartis Pharm. Corp. v. Eon Labs Mfg.*, 363 F.3d 1306 (Fed. Cir. 2004) ........................... 8, 13

*SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306 (Fed. Cir. 2004).............................. 9

*Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004) ..................................... 9

*Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319 (Fed. Cir. 2005) ............................ 17

*Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363 (Fed. Cir. 2000) ................................ 9

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997) ............................ 8, 13

*Welker Bearing Co. v. PHD Inc.*, 550 F.3d 1090 (Fed. Cir. 2008)................................ 7

**<u>Statutes</u>**

35 U.S.C. §102(b) ................................................................................................ passim

35 U.S.C. §112................................................................................................ 2, 8, 12, 13

**<u>Rules</u>**

Fed. R. Civ. P. 56(c) ................................................................................................ 7

## I.    INTRODUCTION

Plaintiffs have asserted that the Mighty Line® floor tape literally infringes claims 1-6, 10-16, and 20-21 of U.S. Patent No. 10,214,664 (the "Lowe Patent"). Summary judgment of non-infringement should be granted for at least the following reasons:

*First*, all the asserted claims expressly require "lateral edge portions" that, when properly construed, require a shoulder on the lower surface of the tape that marks the beginning point of the lateral edge portions. Defendants concede that the accused Mighty Line® product does not have a shoulder or any other structure that is the equivalent of a shoulder. Accordingly, summary judgment of non-infringement should be granted based on the complete absence of "lateral edge portions" in the accused Mighty Line® product.

*Second*, asserted claims 1-6 and 10 expressly require "the lower surface of each lateral edge portion being a flat coplanar extension of the lower surface of the body" (the "coplanar extension requirement"). When properly construed, the coplanar extension requirement cannot read on the Mighty Line® product because the Mighty Line® product indisputably has a single, flat bottom. The coplanar extension requirement was added during prosecution for patentability reasons and, thus, the doctrine of prosecution history estoppel precludes any assertion of infringement under the doctrine of equivalents. Accordingly, claims 1-6 and 10 are not infringed, either literally or by equivalents, for the additional reason that it does not meet the coplanar extension requirement.

*Third*, the Mighty Line® product does not meet the "unintentional lifting" requirement of claims 11-16 and 20-21 because Plaintiffs' own video of the Mighty Line® product shows that it unintentionally lifts from the floor.

*Fourth*, the Mighty Line® product does not infringe claims 3 and 13 for the additional, independent reason that its upper surface between the edges is flat, whereas claims 3 and 13

1

expressly require the upper surface to be "curved." Since curved is the opposite of flat, the Mighty Line® product cannot infringe, either literally or under the doctrine of equivalents.

*Fifth*, the Mighty Line® product does not infringe claims 4 and 14 for the additional, independent reason that its surface finish does not "read[] over 45 on an ASTM D523 gloss test taken at a 60 degree angle" as those claims expressly require. Independent testing shows that the surface finish of the Mighty Line® product reads approximately half of 45 and, thus, the Mighty Line® product cannot infringe these claims literally or by an equivalent.

*Alternatively*, if Plaintiffs' proposed constructions of the "lateral edge portion" and the coplanar extension requirement are adopted, then summary judgment should still be granted in favor of Defendants because all the asserted claims of the Lowe patent are invalid for failing to satisfy the written description and enablement requirements of 35 U.S.C. §112.

*Finally*, even assuming the Mighty Line® product infringed a claim of the Lowe Patent and the Lowe Patent claims satisfied the written description and enablement requirements, the Lowe Patent is invalid under 35 U.S.C. §102(b). Section 102(b) prohibits a patent where the claimed invention was sold or offered for sale more than a year before the priority date of the patent. The priority date of the Lowe Patent is April 22, 2005. The undisputed evidentiary record establishes that the Mighty Line® product that Plaintiffs have accused of infringement was offered for sale and sold under the name "Durastripe" more than a year before April 22, 2005. Independently, U.S. Patent No. 6,120,395 to Dorenbusch ("Dorenbusch") issued on September 19, 2000 and, thus, is prior art under 35 U.S.C. §102(b). Dorenbusch teaches a marking system to mark areas of a hard surface or ground floor that has the same beveled edge configuration as the Mighty Line® product. Ex. 1, Fig. 4;1:50-52; 2:60-64. If Mighty Line® is found to fall within the scope of claims 1-3, 5-6, 10-13, 15-16 and 20-21 of the Lowe Patent, then so too does Dorenbusch

2

because it has the same configuration as Mighty Line®.

## II.     RELEVANT BACKGROUND

### A.      The Lowe Patent And Its Prosecution History

The application that produced the Lowe Patent was filed on June 23, 2015. Plaintiffs contend that claims 1-3, 5-6, 10-13, 15, 16, 20 and 21 of the Lowe Patent are entitled to a priority date of April 22, 2005. Ex. 2, p.2. Plaintiffs contend that claims 4 and 14 are entitled to a priority date of April 21, 2006. *Id*. For purposes of this motion only, Defendants do not contest these priority dates.

The Lowe Patent is directed to the combination of a floor marking tape and a floor, wherein the floor marking tape has a recessed lower surface defined by shoulders to prevent adhesive from oozing out of the tape and beveled edges to enable skids and pallets to slide over the tape. Ex. 3, Abstract; 1:30-35 & 40-45. The invention has a recessed lower surface surrounded by two shoulders to prevent the adhesive from oozing out the sides. *Id.*, 1:38-59 & Figs. 1-3. The specification repeatedly defines "the invention" as being the specific tape configuration shown in the figures, all of which show a recess/shoulder configuration to prevent adhesive from oozing out the sides. *Id*., 2:8, 17-21 & Figs. 1-3. In every embodiment of the invention shown in the Lowe Patent specification, the "lateral edge portions" of the tape are measured from the shoulders to the edges of the tape. This stands to reason because, without the shoulders, there is no way to determine the beginning point of the lateral edge portions. Ex. 4, ¶18. The Lowe Patent does not include any embodiment that has a completely flat lower surface.

The Lowe Patent has two independent claims, 1 and 11, and 20 dependent claims. Plaintiffs assert infringement of claims 1-6, 10, 11-16 and 20-21. Ex. 2, p. 1. Plaintiffs' infringement claims are limited to literal infringement; they have not asserted infringement under the doctrine of equivalents. *Id*., p. 1. The Lowe Patent claims expressly require "lateral edge portions" that are

3

"tapered." Ex. 3, 5:27 & 6:22. Claim 1 further requires "the lower surface of each lateral edge portion being a flat ***coplanar extension*** of the lower surface of the body." *Id.*, at 5:25-26 (emphasis added). Although, claim 11 does not require the "coplanar extension," it does require the upper and lower surfaces of the lateral edge portions meet at a junction disposed on the uppermost surface of the floor such that unintentional lifting of the tape is limited. *Id.*, at 6:22-23. Claim 3 (which depends from claim 1) and claim 13 (which depends from claim 11) require that the upper surface of the tape body between the lateral edge portions is "curved." *Id.*, at 5:40 & 6:40. Claims 4 (which depends from claims 1) and claim 14 (which depends from claim 11) require that the tape body surface finish read over 45 on an ASTM D523 gloss test taken at a 60° angle. *Id.*, at 5:42-44 & 6:42-44.

All claims that were originally filed in the Lowe Patent application were canceled during prosecution due to prior art rejections. There were six amendments submitted during prosecution, i.e., Amendments A-F. See, generally, Ex.5, DEF009919-9928; 010005-12; 010087-94; 010119-126; 010142-150; and 010168-174. Through those amendments, Mr. Lowe introduced (and subsequently abandoned) numerous claims and claim limitations. The net result of Plaintiffs' pervasive amendment/abandonment practice was a set of issued claims that contain numerous limitations that find no support in the Lowe Patent specification. For example, the claim terms "tapered" and "co-planar extension" do not appear anywhere in the specification. Mr. Lowe introduced the co-planar extension requirement in Amendment D to overcome an obviousness rejection based on two prior art patents (US Patent No. 2,231,780 to Swenson and US Patent No. 5,730,446 to Taylor). Ex.5, 1/10/18 OA, pp. 9-10, DEF010111-112; Ex.5, Amendment D, p. 4, DEF010122. Mr. Lowe also repeatedly represented to the US Patent and Trademark Office ("USPTO") that the claimed invention prevented unintentional lifting of the tape from the floor.

4

Ex.5, DEF009927 (distinguishing Taylor and Swenson references because they address the "completely different goal" of limiting unintentional lifting); DEF010093-94 (same); DEF010125 (distinguishing Taylor because it does not limit unintentional lifting); and DEF010149 (distinguishing Taylor because it would not function to limit unintentional lifting).

Shortly after Plaintiffs filed this lawsuit, ShieldMark petitioned the USPTO for a post grant review of the Lowe Patent. In denying the petition, the USPTO concluded that reading claim 1 of the Lowe Patent on a floor marking tape with a flat lower surface would effectively read out the coplanar extension requirement of claim 1. Ex.6, p. 18. In other words, the USPTO, in its institution decision, effectively ruled that claims 1-10 of the Lowe Patent cannot encompass a floor marking tape like MightyLine® that has a flat lower surface.

### B. ShieldMark's Durastripe Tape (Now Called MightyLine®)

Plaintiffs have accused ShieldMark's MightyLine® floor tape of infringing the Lowe Patent. Dkt. 44, ¶38. ShieldMark has sold the MightyLine® floor tape, either under the name MightyLine® or Durastripe, continuously since 2003. Ex.7, Goecke Dec. ¶¶4-11. From 2003 to 2006, ShieldMark, through Advanced Plastics, sold its floor marking tape that was extruded using the die exclusively through its distributor, Ergomat, under the name Durastripe. *Id*., ¶10. Ergomat branded the tape "Durastripe" because it owned the trademark rights to the name. *Id.* When ShieldMark's relationship with Ergomat ended in 2006, ShieldMark changed the name of the product from Durastripe to MightyLine®. Importantly, however, the die design and extrusion process used to make the tape remained the same. *Id*., ¶11. In other words, only the name of the product changed–from Durastripe to MightyLine®–but the tape itself remained the same.

Plaintiffs admit that Insite Solutions sold and offered for sale Durastripe tape, including offers on its website, www.stop-painting.com, prior to April 2004. Ex.8, ¶¶6-10. Accordingly, Durastripe tape is prior art to the Lowe Patent. Plaintiffs also admit that the prior art Durastripe

tape had "unique beveled edges." *Id*. Plaintiffs further admit that these unique beveled edges become smaller or thinner toward one end. Ex.9, ¶8. In discovery, Plaintiffs identify: (a). the shape of the edges; (b). whether the central body portion is curved; and (c). the texture of the top surface as the only alleged differences between the Durastripe and Mighty Line® products. Ex.10, pp. 5-6.

Plaintiffs admit that the lower surface of the Mighty Line® tape is flat and without a recess or shoulders. Ex.11, ¶¶48-49. Reproduced below are profile pictures showing a tape produced using a die from 2003 (i.e., used to make the Durastripe branded tape) and a tape produced using a current die (i.e., used to make MightyLine®). The two tapes have the same design and profile:

| Durastripe | Mighty Line® |
|---|---|



Further, independent testing conclusively demonstrates that the surface finish of Mighty Line® does not read over 45—or even close to it—on an ASTM D523 gloss test. Ex.12. Plaintiffs admit that they have never conducted an ASTM D523 gloss test on Mighty Line®. Ex.11, ¶25. Plaintiffs admit that Insite Solutions created the following YouTube video and posted it on Insite Solutions' website: https://www.youtube.com/watch?v=apAb6DRlO2o. Ex.11, ¶¶32 & 34-36.

### C.    Dorenbusch

Dorenbusch is prior art under 35 U.S.C. §102(b) because it issued on September 19, 2000, which is more than one year before the earliest priority date of the Lowe Patent. Ex.1. Dorenbusch teaches "[a] marking system…intended for use on hard floor or ground surfaces that have a substantially smooth top surface." *Id*., 2:11-13. The marking system consists of individual spot

markers that are preferably made from polyvinylchlorides. *Id.*, 2:41-51. The markers have peripheral edges that are beveled downwardly to present a gently rising edge area. *Id.*, 2:60-62. "Preferably, the peripheral edges are angled downwardly towards the floor to create an about 30 degree to about 60 degree angle to the horizontal." *Id.*, 2:63-65. "While not shown, a thin layer of adhesive can be applied to the underside of each spot marker." *Id.*, 3:15-16. Figure 4 is a side elevation view of the patented marker that shows the same configuration as the Mighty Line® product. *Id.*, Fig. 4.

## III.     LEGAL STANDARD

### A.     Summary Judgment Is Appropriate When There Are No Disputed Issues Of Material Fact

Summary judgment in a patent case–like any other case–is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see, also, *Avia Group Int'l v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B.     There Can Be No Infringement Unless All Claim Limitations Are Present In The Mighty Line® Tape

Although infringement is an issue of fact, courts frequently grant summary judgment of non-infringement in patent cases. *See, e.g., Welker Bearing Co. v. PHD Inc.*, 550 F.3d 1090, 1094-1100 (Fed. Cir. 2008); *L.B. Plastics, Inc. v. Amerimax Home Prods., Inc.*, 499 F.3d 1303, 1308-09

(Fed. Cir. 2007). Granting summary judgment on non-infringement grounds is consonant with the purpose of summary judgment, which is "not to deprive a litigant of a trial, but to avoid an unnecessary trial when there is only one reasonably possible outcome." *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The burden of proving infringement by a preponderance of the evidence is on the party asserting infringement. *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282 (Fed. Cir. 1986). A court should find no infringement and grant summary judgment "when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998); *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1383 (Fed. Cir. 2007). If a claim element is not in an accused device exactly as recited in the claim, there cannot be literal infringement. While there may still be infringement under the doctrine of equivalents, the doctrine of equivalents cannot be used to "entirely vitiate a particular claim element." *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39, n. 8 (1997). Summary judgment of no infringement is appropriate where a theory of equivalents would entirely vitiate a claim element. *See, e.g., Novartis Pharm. Corp. v. Eon Labs Mfg.*, 363 F.3d 1306, 1312 (Fed. Cir. 2004) (affirming summary judgment of noninfringement that a dispersion *inside* the body cannot infringe under the doctrine of equivalents because it would vitiate the claimed requirement that the dispersion be prepared *outside* the body).

## C.     The Written Description And Enablement Requirements Of 35 U.S.C. §112

A patent specification must contain a "written description [i] of the invention, *and* [ii] of the manner and process of making and using [the invention]". *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1344 (Fed. Cir. 2010) (emphasis in original). Whether a patent is invalid due to lack of written description is a question of fact. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d

1473, 1479 (Fed. Cir. 1998). However, summary judgment remains appropriate when there are no genuine disputed issues of fact about the patent's lack of written description supporting the disputed claim element. *ICU Med., Inc. v. Alaris, Med. Sys., Inc.*, 558 F.3d 1368, 1379 (Fed. Cir. 2009) (affirming summary judgment of invalidity due to lack of written description); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 929 (Fed. Cir. 2004) (same). While lack of written description must be proven by clear and convincing evidence, "a patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification." *Univ. of Rochester*, 358 F.3d at 927. Whether a claim satisfies the enablement requirement is a question of law that is reviewed without deference. *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1188 (Fed. Cir. 2014).

### D.      Invalidity Based On The On-Sale Bar

A patent is invalid if the invention claimed was on sale in the United States more than one year prior to the date of application for that patent. 35 U.S.C. §102(b). The one year prior to the date of application is commonly referred to as the patent's "critical date." A patent's invalidity due to a prior sale under Section 102(b) is a question of law based on underlying fact. *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1316 (Fed. Cir. 2004). "Thus, without genuine factual disputes underlying the public use inquiry, the issue is ripe for judgment as a matter of law." *Id*. When the prior art sale is made by the device accused of infringement, a defendant has satisfied its burden of showing correspondence between the pre-critical date sales and the claimed invention based on the allegation of infringement against the accused device. *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000), citing *Evans Cooling Sys. Inc. v. General Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997) (holding patent invalid under on-sale bar where accused product was offered for sale prior to the critical date of the patented invention).

## IV.    ARGUMENT

### A.    No Asserted Claim Of The Lowe Patent Is Infringed Because The Mighty Line® Product Does Not Have The Required "Lateral Edge Portion"

All asserted claims of the Lowe Patent expressly require a "lateral edge portion" that, when properly construed, requires a shoulder on the lower surface of the tape that marks the beginning point of the lateral edge portion. This is to distinguish the "lateral edge portion" from the separately recited "lower surface of the [tape] body." There is no dispute that the Mighty Line® product lacks a shoulder on its lower surface. Indeed, Plaintiffs admit that Mighty Line® is a flat bottom tape that has no recess or shoulder. Ex.11, ¶¶48-49. Accordingly, Plaintiffs cannot establish literal infringement of any claim of the Lowe Patent.

LPR 3.1(e) requires that a party asserting infringement specify whether it is asserting literal infringement or infringement under the doctrine of equivalents. Plaintiffs have not asserted a claim for infringement under the doctrine of equivalents. Ex.2, p.1. This stands to reason because Plaintiffs are legally barred by the "all elements rule" from asserting that the Mighty Line® tape has a feature that is equivalent to the "lateral edge portion." The flat lower surface of the Mighty Line® tape cannot be characterized as insubstantially different from a shoulder. In other words, having no shoulder cannot be the equivalent of having a shoulder without vitiating the lateral edge portion claim element. *See, e.g., Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.3d 1317, 1319 (Fed. Cir. 2002) (no reasonable jury could conclude that a patent describing a port as lying "between" two plugs was infringed when the accused port was located elsewhere); *Asyst Technologies, Inc. v. Emtrak, Inc.*, 402 F3d 1188, 1195 (Fed. Cir. 2005) ("To hold that 'unmounted' is equivalent to 'mounted' would effectively read the 'mounted on' limitation out of the patent"); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006) (a patentee's theory of equivalence is legally insufficient if the theory effectively eliminates

10

a limitation in its entirety).

Any argument that Mighty Line's® flat bottom tape is an equivalent would be legally insufficient because it eliminates the claimed lateral edge portions that require a shoulder. Summary judgment of non-infringement on all asserted claims is warranted because the Mighty Line® product does not include the "lateral edge portion" required by all the asserted claims of the Lowe Patent.

### B. If Plaintiffs' Construction Of "Lateral Edge Portion" Is Adopted And Applied, Then All Claims Are Invalid For Failing To Satisfy The Written Description And Enablement Requirements

Plaintiffs assert that "lateral edge portion" means some unspecified "portion" of the tapered edges of the tape body. Dkt. 61, p. 2. If this construction is adopted and applied, then all the asserted claims of the Lowe Patent are invalid because the Lowe Patent specification lacks a sufficient written description of the invention because the specification fails to describe the unspecified portion that makes up the lateral edge portion. *Ariad Pharms., Inc.*, 598 F.3d at 1353-54 ("[T]he purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'"). Inventors must describe their invention in sufficient detail in the specification to show that they were in possession, at the time of filing, of what is later claimed. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998). An applicant shows that they are in possession of the invention "by describing the invention, with all of its claim limitations." *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). An applicant must use descriptive means in the specification, such as words, figures, diagrams, and formulas that fully set forth the claimed invention. *Id.*, at 1572.

All the figures in the Lowe Patent show the that the "lateral edge portion" is measured from shoulder 32 to the edge of the tape when viewed in cross section. Ex.3, Figs. 1-3. There is no

other description of the lateral edge portion in the Lowe Patent specification. Ex.4, ¶¶18-19. Adopting and applying Plaintiffs' construction renders all claims invalid for failure to satisfy the written description requirement because, under Plaintiffs' construction, the scope and content of the claims are inconsistent with the scope and content of the specification. There is no description in the Lowe Patent specification of a lateral edge portion as only including some unspecified portion of the tapered edges. *Id.*, ¶¶18-19.

Independently, if Plaintiffs' construction is adopted and applied, then all claims are also invalid for failure to satisfy the enablement requirement of §112. There is no disclosure in the Lowe Patent specification of a tape with a lateral edge portion that is not measured from the shoulder to the edge of the tape. Ex.4, ¶¶18-19. If the shoulder is not part of the lateral edge portion, then there is no way to determine how to design the claimed floor tape because there is no disclosure of where the lateral edge portion begins and other parts of the tape ends. *Id.*, ¶¶18-19. No amount of experimentation could yield the claimed invention because there is nothing in the specification to teach how big or small to make the lateral edge portion. *Id.*, ¶¶22-23.

### C.    Claims 1-6 And 10 Are Not Infringed Because The Flat Bottom Surface On Durastripe/MightyLine® Does Not Meet The "Coplanar Extension" Requirement

When properly construed, the term "coplanar extension" in asserted claims 1-6 and 10 does not include, within its scope, a floor marking tape having a single, flat lower surface. See Dkt.# 53, pp. 17-19; Dkt.# 60, pp. 13-15. The accused Mighty Line® floor marking tape admittedly has a flat lower surface with no recess. Ex.11, ¶¶48-49. Accordingly, Plaintiffs cannot establish literal infringement of claims 1-6 and 10 for the additional reason that the Mighty Line® product does not meet the coplanar extension requirement.

Plaintiffs only assert literal infringement of claims 1-6 and 10. Ex.2, p. 1. Plaintiffs are precluded by "the all elements" rule and prosecution history estoppel from asserting that the Mighty Line® product has an equivalent to the coplanar extension. Specifically, any equivalents argument would vitiate the coplanar extension requirement of the Lowe Patent claims because such an argument would implausibly require a flat surface to be the equivalent of a surface that cannot be flat. *Warner-Jenkinson Co.*, 520 U.S. 30, n. 8; *Novartis Pharm. Corp.*, 363 F.3d 1312.

Any equivalents argument with respect to the coplanar extension requirement is also barred by prosecution history estoppel because the coplanar requirement was added by amendment during prosecution in response to a USPTO rejection of the claims based on prior art. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 535 U.S. 722, 737 (2002) ("A patentee who narrows a claim as a condition for obtaining a patent disavows his claim to a broader subject matter, whether the amendment was made to avoid the prior art or to comply with §112."). As noted above, during prosecution, Mr. Lowe added the coplanar extension requirement to the claims in Amendment D to avoid the prior art Swenson and Taylor patents. Ex.5, DEF010122 & 010125-126. This estops Plaintiffs from now asserting any scope of the coplanar extension requirement that would encompass the flat lower surface of the Mighty Line® tape.

**D.    If Plaintiffs' Construction Of "Coplanar" Is Adopted And Applied, Then Claims 1-6 And 10 Are Invalid For Failing To Satisfy The Written Description And Enablement Requirements**

Plaintiffs have accused the Mighty Line® tape of infringing claims 1-6 and 10 that include the "coplanar extension" requirement. The Mighty Line® tape admittedly has a single, flat bottom. Thus, by asserting infringement, Plaintiffs necessarily contend that the coplanar extension requirement is met by a floor marking tape that has a single, flat bottom surface. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990) (to establish infringement, every

limitation set forth in the claim must be found in the accused device). This renders the claims invalid for failing to satisfy the written description and enablement requirements because the scope and content of claims 1-6 and 10 do not comport with the scope and content of the specification.

The term "coplanar" does not appear in the Lowe Patent specification. And all the figures of the Lowe Patent show a non-flat, recessed lower surface of the tape body. Ex.3, Figs. 1-3. Nowhere in the Lowe Patent specification is there a description of a floor tape that has a flat lower surface that accomplishes the objective of the invention to prevent adhesive from oozing out the sides of the beveled edge tape. Ex.4, ¶31. Rather, the Lowe Patent specification clearly describes the invention as having a recess and shoulders on the lower surface to prevent adhesive from oozing out. Ex.4, ¶31. If "coplanar" reads on a flat bottom surface, then claims 1-6 and 10 lack a sufficient written description and, thus, are invalid because there is no description in the Lowe Patent specification of a flat bottom tape that meets the coplanar requirement. Ex.4, ¶¶26-32.

Similarly, if the coplanar requirement reads on a flat bottom tape, then the Lowe Patent is invalid for failure to provide an enabling disclosure. Because the Lowe Patent only discloses a tape with a lower surface having shoulders and a recess to accomplish the object of the invention of preventing oozing of the adhesive, there is no enabling disclosure of how to accomplish the object of the invention with a flat bottom tape. Ex.4, ¶¶33-36. The disclosure of the Lowe Patent specification does not teach how a flat bottom tape could prevent oozing out of the adhesive. Ex.4, ¶31.

### E. Claims 11-16 And 20-21 Are Not Infringed Because Plaintiffs' Own Video Shows DuraStripe/MightyLine® Does Not Meet The "Unintentional Lifting" Requirement

Claims 11-16 and 20-21 expressly require "first and second junctions disposed on the uppermost surface of the floor such that the floor marking tape limits unintentional lifting of the floor marking tape from the floor." Ex.3, 6:29-32. Avoiding unintentional lifting is intended to

solve the known drawback of prior art tapes that were prone to being caught on floor cleaning devices or skids. *Id.*, 1:28-30. Defendants propose that "unintentional lifting" means either (a) the floor marking tape does not lift up from the floor unless intended to by a human or, alternatively, (b) the floor marking tape is not prone to lift up from the floor unless intended to by a human. Dkt. 61, p. 4. Plaintiffs failed to define unintentional lifting. Their proposal was that "unintentional lifting" means "unintentional lifting." Dkt. 61, p. 2.

Regardless of the construction ultimately adopted, Plaintiffs' video confirms that the Mighty Line® tape does not meet the unintentional lifting requirement and, thus, does not infringe claims 11-16 and 20-21. Plaintiffs admit that Insite Solutions prepared the video and posted it on its website and YouTube. Ex.11, ¶¶32, 34-36. Plaintiffs also admit that Competitor B, shown in the video, is the Mighty Line® tape. *Id.*, ¶39. The video clearly shows the Mighty Line® tape adhered to a surface that simulates a floor and depicts the tape being unintentionally lifted when a 2-by-4 block of wood is swept across the tape. *See* https://www.youtube.com/watch?v=apAb6DRlO2o at 0:06-0:11. If a 2-by-4 lifts up the tape, then a cleaning device, forklift or skid would also do so. Because the video shows that Mighty Line® does not limit unintentional lifting, Plaintiffs cannot prove infringement of claims 11-16 or 20-21, and summary judgment in favor of Defendants is warranted for this additional reason. As noted above, Plaintiffs' infringement claims are limited to literal infringement. Plaintiffs cannot successfully assert an equivalents theory with violating the "all elements rule" because the video shows that Mighty Line® does not limit unintentional lifting, which cannot be the equivalent of limiting unintentional lifting without vitiating the claim limitation.

### F. Claims 3 And 13 Are Also Not Infringed Because The Upper Surface Of Mighty Line® Between The Edges Is Not Curved

Claims 3 and 13 expressly require the upper surface of the body between the lateral edge

portions to be "smoothly curved." As explained above, the Mighty Line® tape does not have lateral edge portions and, thus, does not infringe claims 3 and 13 for that reason. The Mighty Line® tape also does not infringe these claims because, aside from its beveled edges, the upper surface of the tape is flat and, thus, fails to meet the curved requirement. Ex.4, ¶37. Summary judgment of non-infringement should be granted on claims 3 and 13 for this additional reason.

G. **Claims 4 And 14 Are Also Not Infringed Because Might Line® Does Not Have A Surface Finish That Reads Over 45 On An ASTM Gloss Test Taken At A 60 Degree Angle**

Claims 4 and 14 require the tape body have "a surface finish that reads over 45 on an ASTM D523 gloss test taken at a 60 degree angle." Ex.3, 5:42-44 & 6:42-44. Plaintiffs cannot possibly prove infringement of these two claims because the surface finish of the Mighty Line® tape is indisputably well below a 45 reading on an ASTM D523 gloss test. Plaintiffs admit that they never conducted an ASTM D523 test on the Mighty Line® tape. Ex.11, ¶¶25-26. As such, Plaintiffs' allegations of infringement lacked any good faith basis in fact. Defendants commenced ASTM D523 testing on the Mighty Line® tape. This testing confirms that the surface finish on the Mighty Line® tape does not meet, or even come close to meeting, a reading of over 45. Ex.12, p.1-2; Ex.4., ¶39. Instead, ASTM D523 gloss testing at a 60º angle for different colors of Mighty Line® ranges from 20.8 to 28.5, with an average reading of 24.19. This is roughly half the claimed "over 45" reading required by the claims. *Id*. The gloss testing, which Plaintiffs have never performed, confirms that Plaintiffs cannot prove infringement. Summary judgment should be granted in Defendants' favor.

H. **Claims 1-3, 5-6, 10-13, 15-16 And 20-21 Are Invalid Based On Prior Art Sales of DuraStripe/MightyLine®**

The Mighty Line® product has the same configuration as the prior art Durastripe tape. As explained above, ShieldMark began selling the Durastripe product in October 2002 and has been

continuously selling that tape to the present day. Ex.7, ¶¶4-11. When ShieldMark ended its relationship with Ergomat, ShieldMark changed the brand name of the product from Durastripe to Mighty Line® but the configuration of the product remained the same. *Id*.

There is no dispute that the Durastripe product is prior art to the Lowe Patent under 35 U.S.C. § 102(b) because Plaintiffs admit that Durastripe was offered for sale and sold by Plaintiffs prior to April 2004. Ex.8, ¶¶6-10. Because the designs are the same with respect to the claims of the Lowe Patent, the Lowe patent is invalid. *Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) ("a product 'which would literally infringe if later in time anticipates if earlier.'").

Plaintiffs admit that the Durastripe product that was offered for sale and sold prior to April 2004 contained all the limitations of claims 1 and 11 except for the following:

> (i). "the upper surface of each lateral edge portion comprising an extension of the body" (claim 1); (ii). "the lower surface of each lateral edge portion being a flat coplanar extension of the lower surface of the body" (claim 1); (iii). "the entire body of each lateral edge portion being tapered with the upper surface of the first lateral edge portion extending to the lower surface of the first lateral edge portion [to meet at a first junction] and the upper surface of the second lateral edge portion extending to the lower surface of the second lateral edge portion [to meet at a second junction]" (claims 1 & 11); (iv). "each of the first and second lateral edge portions having a maximum height that is less than its width" (claims 1 & 11); and (v). "the first and second junctions disposed on the uppermost surface of the floor such that the floor marking tape limits unintentional lifting of the floor marking tape from the floor" (claim 11).

Ex.11, ¶¶1-8, 10-11, 20-22 & 28-29. With respect to the above-listed remaining claim elements, the Durastripe product that was offered for sale and sold prior to April 2004 also had those elements because: (1). the tape configuration meets the definition of those elements; or (2). Durastripe has the same configuration as the accused Mighty Line® tape and, thus, if the Mighty Line® tape meets the claim element so too does Durastripe.

(i).    **"the entire body of each lateral edge portion being tapered"**

The Durastripe product that was offered for sale and sold prior to April 2004 meets the claim requirement of the entire body of each lateral edge portion is tapered. When properly construed, "tapered" means to become smaller or thinner toward one end. See Dkt.# 53, pp. 12-15; Dkt.#60, pp. 5-8. Plaintiffs admit that the beveled edges on Durastripe become smaller or thinner toward one end and, thus, are tapered. Ex.9, ¶8. Plaintiffs' proposed construction improperly adds unnecessary and vague language of "with no areas of substantially uniform thickness." Dkt.# 61, p. 2. Even with that additional language, Durastripe still meets the "tapered" limitation because the edges on Durastripe become smaller or thinner toward one end and have no areas of substantially uniform thickness. Ex.4, ¶¶41-42.

(ii).    **"the upper surface of each lateral edge portion
comprising an extension of the upper surface of the body"**

The upper surface of each lateral edge portion of the Durastripe product that was offered for sale and sold prior to April 2004 has the same configuration as the upper surface of the accused Mighty Line® product. Ex.7, ¶¶9 &19; Ex.4, ¶43. Because the configuration of the edges on Durastripe and the Mighty Line® product are the same, if the Mighty Line® product is found to meet this claim requirement, then Durastripe also meets it.

(iii).    **"the lower surface of each lateral edge portion being
a flat coplanar extension of the lower surface of the body"**

As explained in Section IV(C) above, when properly construed, the Mighty Line® tape does not satisfy this claim limitation. Assuming arguendo that the Mighty Line® tape had this claim limitation, then the Durastripe product that was offered for sale and sold prior to April 2004 also has it because the edge design was the same. Ex.7, ¶¶10 & 16-19; Ex.4, ¶¶40 & 44-45. The photos of the two tapes in Section IV(H)(ii) above, shows Mighty Line® and Durastripe have the

same edge configuration and, thus, if one meets this claim limitation, then both do.

      **(iv).**    **"each of the first and second lateral edge portions having a maximum height that is less than its width"**

Because the Durastripe product that was offered for sale and sold before April 2004 and the accused Mighty Line® tape have the same edge configuration, Durastripe meets this claim limitation if the Mighty Line® tape does. Further, Plaintiffs have effectively admitted that Durastripe meets this limitation in their validity contentions. On page 6 of the Durastripe chart submitted with Plaintiffs' validity contentions, Plaintiffs included the picture below of the edge of Durastripe which shows it had a 21° bevel:



Ex.13, p. 6. Any beveled edge that is less than 45° will have a width greater than its maximum height. Durastripe's 21° bevel necessarily means its width is greater than its maximum height and meets this claim requirement. Ex.4, ¶46.

      **(v).**    **"the first and second junctions disposed on the uppermost surface of the floor such that the floor marking tape limits unintentional lifting of the floor marking tape from the floor"**

As explained in Section IV(E) above, Plaintiffs' video shows that the Mighty Line® tape does not meet the "unintentional lifting" claim requirement. Assuming arguendo, that the Mighty Line® tape did meet the requirement, then so too would the Durastripe product that was offered for sale and sold before April 2004 because it has the same configuration as the Mighty Line® tape. Ex.4, ¶40.

Finally, with respect to dependent claims 2, 6, 10, 12, 16 and 20, Plaintiffs have admitted

that the Durastripe product that was offered for sale and sold prior to April 2004 contained the additional requirements called out in each of those claims. Ex.11, ¶¶21-22 & 28-29. Because Durastripe and the accused Mighty Line® tape have the same configuration, if the Mighty Line® tape is found to meet the additional requirements of dependent claims 3, 5, 13, 15 & 20-21, then so too does Durastripe.

**I.      Claims 1-3, 5-6, 10-13, 15-16 And 20-21 Are Invalid As Anticipated By Dorenbusch If Mighty Line® Is Found To Fall Within The Scope Of Those Claims**

Figure 4 of Dorenbusch discloses the same configuration as the Mighty Line® product:



Ex.1, Fig. 4. Both have a flat lower surface with no shoulders, and beveled peripheral edges.

Dorenbusch teaches that the beveled peripheral edges can be angled at lower than 45°, which means the maximum height of the bevel is less than its width. *Id.*, 2:63-65. Dorenbusch teaches that the marker can be made of polyvinyl chloride and an adhesive can be applied to the lower surface. *Id.*, 2:48-49 & 3:15-16. Because the configurations are the same, if Mighty Line® is found to fall within the scope of claims 1-3, 5-6, 10-13, 15-16 and 20-21, then so too does the prior art Dorenbusch configuration and, thus, claims 1-3, 5-6, 10-13, 15-16 and 20-21 are invalid based on Dorenbusch under 35 U.S.C. §102(b) as being patented or described in a printed publication. Ex.4, ¶¶47-82.

**V.      CONCLUSION**

For the foregoing reasons, summary judgment of non-infringement or, alternatively, invalidity, should be granted in Defendants' favor with respect to all asserted claims of the Lowe Patent.

Dated: April 19, 2021

Respectfully submitted,

*/s/Howard L. Wernow*
Howard L. Wernow, Esq.
Joseph A. Sebolt, Esq.
SAND, SEBOLT & WERNOW CO., LPA
4940 Munson Street, N.W.
Canton, OH 44718-3615
Phone: 330-244-1174
Fax: 330-244-1173
Email:  howard.wernow@sswip.com
Email:  joe.sebolt@sswip.com

Richard B. Megley, Jr.
LEE SHEIKH MEGLEY & HAAN
111 W. Jackson Boulevard, Suite 2230
Chicago, Illinois 60604
Phone:  312-982-0070
Fax:  312-982-0071

***Attorneys for Defendants, ShieldMark, Inc.,***
***Advanced Plastics, Inc. and Crown***
***Equipment Corporation***

**<u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1(f)</u>**

Pursuant to Local Rule 7.1(f), the undersigned counsel hereby certifies that this memorandum of law is related to ShieldMark's dispositive motion for a standard track case and that this memorandum adheres to the 20-page limitation.


*/s/Howard L. Wernow*
Howard L. Wernow, Esq.

SAND, SEBOLT & WERNOW CO., LPA

***Attorneys for Defendants, ShieldMark, Inc.,
Advanced Plastics, Inc. and Crown
Equipment Corporation***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 19, 2021 the foregoing: **Defendants'**
**Memorandum In Support Of Their Motion For Summary Judgment Of Non-infringement**
**and Invalidity Of The Lowe Patent** was filed with the Clerk of Court using the CM/ECF system,
which will then send a notification of such filing to the following counsel of record:

Ray L. Weber (0006497)
Laura J. Gentilcore (0034702)
RENNER, KENNER, GREIVE, BOBAK, TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, OH 44308
Telephone: (330) 376-1242
Fax: (330) 376-9646
E-mail: rlweber@rennerkenner.com
E-mail: ljgentilcore@rennerkenner.com
*Attorneys for Plaintiffs*

/s/Howard L. Wernow
Howard L. Wernow, Esq.

SAND, SEBOLT & WERNOW CO., LPA

*Attorneys for Defendants, ShieldMark, Inc.,*
*Advanced Plastics, Inc. and Crown*
*Equipment Corporation*