```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
```
-------------------------------------------------------

| | |
|---|---|
| CLIFFORD A. LOWE, *et al.*, : | |
| : | Case No. 1:19-cv-748 |
| Plaintiff-Counterdefendants, : | |
| vs. : | OPINION & ORDER |
| : | [Resolving Doc. 71, 76, 77, 81, 98] |
| SHIELDMARK, INC., *et al.*, : | |
| : | |
| Defendants-Counterplaintiffs. : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The parties compete in the industrial floor marking tape field. Plaintiffs own U.S. Patent No. 10,214,664 ("the '664 Patent")[1] and sell their tape under the name "Superior Mark."[2] Defendants own U.S. Patent No. 10,738,220 ("the '220 Patent")[3] and sell their tape under the name "Mighty Line."[4]

On April 4, 2019, Plaintiffs sued Defendants, claiming that Defendants' sale of their "Mighty Line" floor marking tape infringes claims 1–6, 10–16, and 20–21 of Plaintiffs' '664 patent.[5] On July 8, 2019, Plaintiffs amended their complaint to add a Lanham Act claim based on arguably false statements Defendants made in their "Mighty Line" advertisements.[6] Defendants responded with non-infringement, unenforceability, and invalidity counterclaims.[7]

---

[1] Doc. 44.
[2] Doc. 42 at 31.
[3] Doc. 46.
[4] *Id.* at 3.
[5] Doc. 1; Doc. 77-2.
[6] Doc. 22 at 11.
[7] Doc. 13.

Case No. 1:19-cv-748
Gwin, J.

The case was then stayed for over a year while Defendant unsuccessfully sought Patent Trial and Appeal Board post-grant review of the '664 Patent.[8]

On October 13, 2020, after the litigation stay was lifted, Defendants amended their counterclaims, now arguing that Plaintiffs' "Superior Mark" tape infringes claims 1–3, 10, and 17–19 of Defendants' own '220 Patent, which claims an earlier effective date than Plaintiffs' '664 Patent.[9] Defendants also maintained their non-infringement, unenforceability, and invalidity counterclaims regarding Plaintiffs' claims under the '664 Patent.[10]

On May 10, 2021, the parties completed summary judgment briefing.[11] On May 19, 2021, the Court issued a *Markman* order resolving the parties' claim construction disputes.[12] With the Court's leave, the parties then filed supplemental summary judgment briefing with the benefit of the Court's *Markman* order.[13]

The Court now turns to the summary judgment briefing regarding Defendants' arguable infringement of Plaintiffs' '664 Patent, Defendants' '664 Patent Counterclaims, and Plaintiffs' Lanham Act false advertising claim. The Court leaves questions concerning Defendants' '220 Patent for later resolution.

I. LEGAL STANDARD

A. *Patent Infringement*

---

[8] Doc. 31; Doc. 35; Doc. 38.
[9] Doc. 42 at 31; Doc. 65-8.
[10] Doc. 42 at 31.
[11] Doc 83; Doc. 84.
[12] Doc. 87.
[13] Doc. 90; Doc. 95.

Case No. 1:19-cv-748
Gwin, J.

A party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] In this context, "[s]ummary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury."[15]

Patent infringement analysis has two steps.[16] The first is claim construction, a legal inquiry in which the Court determines the meaning of disputed patent claim terms.[17] The second is a factual inquiry were the Court compares the accused product to the construed patent claims to determine whether the accused product contains all the elements of the invention described in any one of the asserted patent's claims.[18]

"[A] patent is infringed if a single claim is infringed."[19] The Court accordingly performs the patent infringement analysis by "plac[ing] the accused device alongside each asserted claim for a complete comparison."[20] If a reasonable fact finder could conclude that the accused product has all the elements, or substantial equivalents, of any of the asserted patent's claims, the defendant is not entitled to summary judgment.[21]

## II. ANALYSIS

To recap, Plaintiffs claim that Defendants' sale of their "Mighty Line" floor marking tape infringes claims 1–6, 10–16, and 20–21 of Plaintiffs' '664 patent.[22] Claims 1 and 11

---

[14] *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1341 (Fed. Cir. 2014) (citing Fed. R. Civ. P. 56(c)).
[15] *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002).
[16] *Packet Intelligence LLC v. NetScout Sys.*, 965 F.3d 1299, 1306 (Fed. Cir. 2020).
[17] *Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1054 (Fed. Cir. 2009).
[18] *Packet Intelligence*, 965 F.3d at 1305–06.
[19] *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012).
[20] *Id.* (citing *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1292 (Fed. Cir. 2010)).
[21] *Id.*
[22] Doc. 1; Doc. 77-2.

Case No. 1:19-cv-748
Gwin, J.

are the '664 Patent's only independent claims.[23] Claims 2 through 10 are Claim 1 dependent claims, while Claims 12 through 21 are Claim 11 dependent claims.[24]

The '664 Patent's specifications describe a floor marking tape incorporating a "shoulder" structure intended to "prevent [tape] adhesive from flowing out past the lateral edges of [the] tape," causing the tape to become delaminated from the ground.[25] The tape's "shoulder" structure "defines a recess that holds the bulk of the adhesive."[26]

The Court finds the following '664 Patent specification images helpful:



---

[23] Doc. 53-2 at 5:25–26.
[24] *Id.* at 5:1–7:7.
[25] Doc. 53-2 at 2:31–32.
[26] *Id.* at 1:57.



FIG. 3

The '664 Patent's independent claims 1 and 11 require "a floor marking tape adhered to a floor."[27] Figure 1 above depicts the entire tape body, while Figure 3 depicts the mirror-image ends of the tape body. As depicted in the drawings above:

> Tape 10 is used to mark areas of a floor 12 such as the areas around machines or aisles from forklifts. Tape 10 generally includes a body 20 having an upper surface 22 and a lower surface 24. At least the lateral edges of upper surface 22 are smoothly beveled . . .[28]

> Lower surface 24 defines a recess 30 bounded by a pair of shoulders 32. Recess 30 may be centered with respect to body 20. Recess 30 is designed to receive the adhesive 34 that holds tape 10 to floor 12. Shoulders 32 prevent adhesive 34 from flowing out past the lateral edges of tape 10.[29]

The body 20 of the tape with upper surface 22 and lower surface 24 is called the "central body portion" of the tape. This "central body portion" is separate from the "lateral edge portion[s]" at the tape's respective ends, one of which is depicted in Figure 3. The demarcation points between the central body and lateral edge portions are the shoulders 32

---

[27] *Id.* at 5:2; 6:1.
[28] *Id.* at 2:21–25.
[29] *Id.* at 2:28–32.

Case No. 1:19-cv-748
Gwin, J.

on each end that also define the adhesive-holding recess **30** beneath the central body portion.

Consistent with this description, the Court's *Markman* findings indicated (1) that "lateral edge portion" means "the portion of the floor marking tape from the shoulder to the edge of the tape when viewed in cross section,"[30] and (2) that "central body portion" means "the portion of the tape body between the shoulders of the two lateral edge portions."[31]

With this context in mind, the Court turns to Plaintiffs' asserted '664 Patent claims.

A. *Claims 1 through 6 and 10*

Claim 1 of the '664 Patent describes "[a] floor marking tape adhered to a floor" where "the lower surface of each lateral edge portion [is] a flat coplanar extension of the lower surface of the body."[32]

Plaintiffs admit that that the lower surface of Defendants' Mighty Line tape is flat.[33] In the May 19, 2021 *Markman* order, the Court found that '664 Patent Claim 1 does not cover a product with a flat lower surface.[34] Accordingly, no reasonable jury could find Defendants' Mighty Line tape infringes '664 Patent Claim 1.

For similar reasons, Defendants' Mighty Line tape also cannot infringe '664 Patent Claims 2–6 or 10, as those claims incorporate Claim 1. Each of those claims therefore incorporate Claim 1's element that they do not have a flat lower surface.

B. *Claims 11 through 16, 20, and 21*

---

[30] Doc. 87 at 9.
[31] *Id.* at 10.
[32] Doc. 53-2 at 5:2, 25–26.
[33] Doc. 77-12 at 12.
[34] Doc. 87 at 10–11.

Case No. 1:19-cv-748
Gwin, J.

Similarly, Claim 11 describes "[a] floor marking tape adhered to a floor" where "the body of the floor marking tape [has] first and second lateral edge portions."[35] Claim 11 separately mentions that both the central body portion and lateral edge portions "[have] an upper and lower surface."[36]

Here again, Plaintiffs' admission that Defendants' Mighty Line tape has a flat lower surface without shoulders is dispositive.[37] As the Court explained in its *Markman* order, without a shoulder, there is no clear demarcation point between the lateral edge and central body portions described in the '664 Patent.[38]

The '664 Patent claim language, in light of the specifications and figures, shows that an accused invention that lacks this shoulder feature does not infringe the '664 Patent. Without a shoulder feature that demarcates the adhesive-containing recess, there is no recess between the floor and the lower surface of the tape and no mechanism that "prevent[s] adhesive **34** from flowing out past the lateral edges of tape **10**."[39] Defendant is therefore entitled to summary judgment on Claim 11.

Just as above, the remaining '664 Patent claims, 12–16, 20, and 21, each incorporate Claim 11. Because no reasonable jury could find that Defendants' product infringes Claim 11, the same follows for Claims 12–16, 20, and 21.

C. *Defendants' '664 Patent Invalidity Counterclaim*

---

[35] Doc. 53-2 at 6:2, 15–17.
[36] *Id.* at 6:7–8, 17–18.
[37] Doc. 77-12 at 12.
[38] Doc. 87 at 9.
[39] Doc. 53-2 at 2:31–32.

Case No. 1:19-cv-748
Gwin, J.

In their supplemental summary judgment briefing, Defendants state that, if they were granted summary judgment on Plaintiffs' '664 Patent infringement claims, they would withdraw their invalidity counterclaim without prejudice to Defendants' rights to reassert it if Plaintiffs prevail on appeal.[40] The Court accordingly dismisses Defendants' invalidity counterclaim without prejudice.

### D. Plaintiffs' Lanham Act False Advertising Claim

In a June 16, 2021 letter to the Court, the parties agreed that Plaintiffs would dismiss their false advertising claim without prejudice, to be potentially refiled after any appeal in this case is resolved. Should the claim be refiled, it will be treated for statute of limitations purposes as being filed on July 8, 2019, the date of Plaintiffs' second amended complaint.

The false advertising claim is accordingly dismissed without prejudice.

### III. CONCLUSION

For these reasons, the Court (1) **DENIES** Plaintiffs' motion to strike Defendants' supplemental summary judgment briefing, (2) **GRANTS** Defendants' summary judgment motion on Plaintiffs' patent infringement claim, (3) **DISMISSES WITHOUT PREJUDICE** Defendants' '664 Patent invalidity counterclaim and Plaintiffs' Lanham Act false advertising claim, and (4) **DISMISSES AS MOOT** Plaintiffs' motions to strike Dr. Timothy Jensen's expert report and declaration regarding the '664 Patent's arguable invalidity.

IT IS SO ORDERED

Dated: June 21, 2021            *s/ James S. Gwin*
                                                        JAMES S. GWIN
                                                        UNITED STATES DISTRICT JUDGE

---

[40] Doc. 95 at 4.