NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**CLIFFORD A. LOWE, INSITE SOLUTIONS, LLC,**
*Plaintiffs-Appellants*

**v.**

**SHIELDMARK, INC., ADVANCED PLASTICS, INC., CROWN EQUIPMENT CORPORATION,**
*Defendants-Appellees*

———————————

2021-2164

———————————

Appeal from the United States District Court for the Northern District of Ohio in No. 1:19-cv-00748-JG, Judge James S. Gwin.

———————————

Decided: March 4, 2022

———————————

RAY L. WEBER, Renner, Kenner, Greive, Bobak, Taylor & Weber, Akron, OH, argued for plaintiffs-appellants. Also represented by LAURA J. GENTILCORE.

RICHARD BURNS MEGLEY, JR., Lee Sheikh Megley & Haan LLC, Chicago, IL, argued for defendants-appellees. Also represented by DAVID J. SHEIKH; HOWARD WERNOW, Sand, Sebolt & Wernow Co., LPA, Canton, OH.

———————————

Before LOURIE, BRYSON, and CUNNINGHAM, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Clifford A. Lowe and InSite Solutions, LLC ("Lowe") appeal from the decisions of the United States District Court for the Northern District of Ohio (1) granting summary judgment following claim construction that Shield-Mark, Inc. et al. ("ShieldMark") does not infringe claims 1–6, 10–16, and 20–21 of U.S. Patent 10,214,664 ("the '664 patent"), (2) dismissing Lowe's claim for a declaratory judgment of invalidity and unenforceability of U.S. Patent 10,738,220 ("the '220 patent"), and (3) denying attorney fees. *Lowe v. ShieldMark, Inc.*, No. 1:19-CV-748, 2021 WL 2530219 (N.D. Ohio June 21, 2021) ("*Noninfringement Decision*"); *Lowe v. ShieldMark, Inc.*, No. 1:19-CV-748, ECF No. 87 (N.D. Ohio May 19, 2021) ("*Claim Construction Order*"), J.A. 1–18; *Lowe v. ShieldMark, Inc.*, No. 1:19-CV-748, ECF No. 104 (N.D. Ohio July 16, 2021) ("*Dismissal*"), J.A. 27–31.

Because the district court erred in its claim construction, we *vacate* its decision granting summary judgment of noninfringement and remand for further proceedings consistent with this opinion. We *affirm* the court's dismissal of Lowe's declaratory judgment claim and denial of attorney fees.

## BACKGROUND

Lowe and ShieldMark both sell floor marking tape, a product used to mark boundaries on a floor. Each party owns a patent that covers its tape product. Lowe owns the '664 patent and sells its tape under the name "Superior Mark." J.A. 99. ShieldMark owns the '220 patent and sells its tape under the name "Mighty Line." J.A. 383, 411. We begin with a brief overview of both patents.

LOWE v. SHIELDMARK, INC.                                    3

I

Lowe's '664 patent is directed to an improved floor marking tape. The specification explains that existing tape was "prone to being caught on floor cleaning devices or skids." '664 patent, col. 1 ll. 28–30. The patented invention purports to solve that problem by disclosing tape with features that prevent it from "unintentional lifting and delamination" from the floor. *Id.* Abstract. The "[t]ape 10 generally includes a body 20 having an upper surface 22 and a lower surface 24." *Id.* col. 2 ll. 19–24. The body has a "pair of lateral edges" that are "smoothly beveled," thus "prevent[ing] tape 10 from being unintentionally lifted." *Id.* col. 1 ll. 42–43; col. 2 ll. 23–27.

The specification further explains that "[i]n one embodiment," the tape has shoulders "that define[] a recess" to "hold[] the bulk of the adhesive." *Id.* col. 1 ll. 56–59; *see id.* Abstract. The shoulders "prevent[] the adhesive from flowing out to the outer edge of the tape." *Id.* col. 1 ll. 57–59. Figure 1, below, shows the tape (10) with shoulders (32), a recess (30), and a lower surface (24). *Id.* col. 2 ll. 28–33.



FIG. 1

Claims 1 and 11 are the only independent claims. Claim 1 reads as follows:

1. A floor marking tape adhered to a floor wherein the floor marking tape establishes a boundary on the floor; the combination comprising:

a floor having an uppermost surface; the uppermost surface of the floor configured to support personnel and equipment thereupon;

a floor marking tape having a body that has an upper surface and a lower surface; the lower surface facing the uppermost surface of the floor to which the floor marking tape is adhered such that the body of the floor marking tape is disposed above the uppermost surface of the floor;

the body of the floor marking tape having a longitudinal direction;

the body of the floor marking tape having first and second ***lateral edge portions*** disposed in the longitudinal direction; each of the first and second ***lateral edge portions*** having an upper surface and a lower surface;

each of the first and second ***lateral edge portions*** having a width defined in a direction perpendicular to the longitudinal direction;

the upper surface of each ***lateral edge portion*** comprising an extension of the upper surface of the body;

the lower surface of each ***lateral edge portion being a flat coplanar extension*** of the lower surface of the body;

the entire body of each ***lateral edge portion*** being tapered with the upper surface of the first ***lateral edge portion*** extending to the lower surface of the first ***lateral edge portion*** and the upper surface of the second ***lateral edge portion*** extending to the lower surface of the second ***lateral edge portion***;

each of the first and second ***lateral edge portions*** having a maximum height that is less than its width; and

an adhesive securing the lower surface of the body to the uppermost surface of the floor to establish a boundary.

*Id.* col. 5 ll. 2–36 (emphases added).

Claim 11 similarly recites a "a floor marking tape adhered to a floor" with a "body" and tapered "***lateral edge portions***." *Id.* col. 6 ll. 1–36 (emphasis added).

Claims 10 and 20 depend from claims 1 and 11, respectively. They each recite that the tape has "a ***central body portion*** disposed between the first and second lateral edge portions." *Id.* col. 5 ll. 61–67 (emphasis added); col. 6 ll. 61–67 (emphasis added).

All of the remaining asserted claims depend from one of the above noted independent claims.

This appeal concerns one aspect of the claims: whether they require the tape to have "shoulders" and a "recess" such that it does not lie flat.

## II

ShieldMark's '220 patent is directed to "a polymeric adhesive tape" with features that purport to prevent "wearing, tearing, cracking and breakage from heavy and repeated traffic." '220 patent, col. 1 ll. 21–39.

The tape "usually comprises a layer of polymeric material and at least one layer of adhesive material." *Id.* col. 1 ll. 58–60. It "may optionally have an additional layer, such as a laminating substrate on an outermost side of the above adhesive layer." *Id.* col. 1 ll. 63–65. The tape's composition allegedly provides "superior ductility, strength, tear resistance[,] and abrasion resistance." *Id.* col. 1 ll. 35–38.

Claim 1 of the '220 patent is representative and reads as follows:

> 1. A roll of an adhesive tape aisle marking system comprising:
>
> a layer of polyvinyl chloride having a Shore A Hardness between 92 and 100 and a thickness between 20 mil and 65 mil;
>
> a layer of adhesive physically contacting the layer of polyvinyl chloride, where the layer of adhesive has a thickness less than the thickness of the polymer layer; and
>
> a laminating substrate contacting the layer of adhesive, where the adhesive tape aisle marking system comprises a peel adhesion greater than 2.0 pounds per inch width when the laminating substrate is removed and a sample of the adhesive tape aisle marking system is adhered, the peel adhesion measured under a test method including peeling the sample of the adhesive tape aisle marking system at a 90 degree angle after application to a stainless steel panel.

*Id.* col. 4, ll. 34–52.

## III

On April 4, 2019, Lowe sued ShieldMark, alleging that ShieldMark's Mighty Line tape infringes claims 1–6, 10–16, and 20–21 of the '664 patent.  J.A. 70–80.  In response, ShieldMark raised a defense of noninfringement.  J.A. 137. According to ShieldMark, the '664 patent claims require the tape to have shoulders and a recess and thus cannot

cover its Mighty Line tape, which has a single, flat lower surface without shoulders.[1]

On August 11, 2020, ShieldMark's own floor marking tape patent issued—the '220 patent.  Accordingly, Shield-Mark amended its answer to Lowe's complaint, adding a counterclaim against Lowe for infringing "at least claims 1–3, 9, 10 and 17–19" of the '220 patent through sale of Superior Mark tape.  J.A. 362, 425.  In response, Lowe amended its complaint to include a declaratory judgment claim for invalidity and unenforceability of the '220 patent. J.A. 662.

Subsequently, Lowe decided to alter the design of its Superior Mark tape such that "it arguably no longer infringes" the '220 patent claims.  *Dismissal*, slip. op. at 2; J.A. 1413–14.  In turn, ShieldMark provided Lowe with a covenant not to sue.  The signed covenant provided that:

> ShieldMark . . . hereby ***unconditionally covenants not to file or maintain any lawsuit*** anywhere in the world against Clifford A. Lowe or Insite Solutions, LLC for the infringement or alleged infringement of the '220 patent for any past or present manufacture, use, sale, offer for sale, or importation by Clifford A. Lowe or Insite Solutions, LLC of floor marking tape currently marketed as Superior Mark floor marking tape.

J.A. 1409 (emphasis added).

On March 8, 2021, in view of the covenant, ShieldMark moved to (1) voluntarily dismiss with prejudice its '220 patent infringement suit against Lowe under Federal Rule of Civil Procedure 41(a), and (2) dismiss Lowe's corresponding declaratory judgment claim for lack of subject matter

---

[1]    Neither party disputes that ShieldMark's Mighty Line tape has a flat lower surface.

jurisdiction.  *Dismissal*, slip. op. at 2.  Lowe, however, opposed both motions.  It also continued to pursue its declaratory judgment claim, filing a motion for summary judgment of invalidity and unenforceability of the '220 patent.  J.A. 1762.

The district court reviewed the parties' motions and issued two decisions.  The first decision addressed the '664 patent claims and the second addressed the '220 patent claims.

With respect to the first decision, the district court granted summary judgment that ShieldMark does not infringe the '664 patent claims.  The court's judgment was based on its construction of the terms "lateral edge portion," "coplanar extension," and "central body portion."

The district court construed the term "lateral edge portion" to mean "the portion of the floor marking tape from the *shoulder* to the edge of the tape when viewed in cross section."  *Claim Construction Order*, slip. op. at 9 (emphasis added).  The court acknowledged that "the term 'shoulder' is not present in the '664 [p]atent[] claims," but explained that it "appears repeatedly in the patent [s]pecification[]."  *Id.*, slip. op. at 8.

The district court construed the limitation "the lower surface of each lateral edge portion being a flat coplanar extension of the lower surface of the body" to mean "a planar relationship exists between two or more things [that] *does not allow the entire lower surface of the tape body to be one flat or planar surface*."  *Id.*, slip. op. at 10 (emphasis added) (internal quotation marks omitted).  Again, in support of its construction, the court pointed out that the tape cannot have a flat lower surface because the specification repeatedly describes "a [l]ower surface 24 [that] defines a recess 30 bounded by a pair of shoulders 32."  *Id.*, slip. op. at 11.

Finally, the district court construed "central body portion" to mean "the portion of the tape body between the *shoulders* of the two lateral edge portions." *Id.*, slip. op. at 10 (emphasis added).

In view of its claim construction, the district court granted summary judgment of noninfringement. *Noninfringement Decision*, 2021 WL 2530219, at *4. The court explained that, because the claims require the tape to have shoulders and a recess, they cannot encompass Shield-Mark's Mighty Line tape, which has a completely "flat lower surface" and no shoulders. *Id.* at *3–4. For the same reasons, the district court also held that ShieldMark's Mighty Line tape does not infringe the remaining asserted dependent claims. *Id.*

With respect to the second decision, the district court dismissed all claims concerning the '220 patent.

First, the district court granted ShieldMark's motion to dismiss its '220 patent infringement suit pursuant to Federal Rule of Civil Procedure 41. *Dismissal*, slip. op. at 5. The court conditioned its dismissal on ShieldMark's continuing consent to abide by the covenant. *Id.* The court also dismissed Lowe's declaratory judgment claim for invalidity and unenforceability of the '220 patent. The court did not expressly state on what ground it was dismissing the declaratory judgment claim. *Id.*

Second, the court denied as moot ShieldMark's motion to dismiss Lowe's '220 patent declaratory judgment claim for lack of subject matter jurisdiction. The court also held that each party should bear its own attorney fees. *Id.*

Lowe appealed the district court's decisions concerning the '664 and '220 patents. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

Lowe raises three arguments on appeal. Specifically, Lowe argues that the district court erred (1) in granting summary judgment that ShieldMark does not infringe the '664 patent, (2) in dismissing Lowe's declaratory judgment claim for invalidity and unenforceability of the '220 patent, and (3) in denying attorney fees. We address each argument in turn.

I

We turn first to Lowe's argument that the district court erred in granting summary judgment of noninfringement. According to Lowe, the court's judgment stemmed directly from its erroneous construction of the terms "lateral edge portion" (claims 1 and 11), "coplanar extension" (claim 1), and "central body portion" (claims 10 and 20). We thus focus our analysis on the court's construction of those three terms.

We review a district court's grant of summary judgment according to the law of the regional circuit. *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020) (citing *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1303 (Fed. Cir. 2015)). The Sixth Circuit reviews a grant of summary judgment de novo. *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 919 (6th Cir. 2003).

Claim construction is ultimately an issue of law, which we review *de novo*. *Shire Dev., LLC v. Watson Pharm., Inc.*, 787 F.3d 1359, 1364 (Fed. Cir. 2015). We review *de novo* the district court's findings of fact on evidence "intrinsic to the patent," and review for clear error all other subsidiary findings of fact. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). Although infringement is a question of fact, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009), we review *de novo* the district court's grant of summary judgment of

noninfringement, *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1356 (Fed. Cir. 2016).

A

Lowe first asserts that the district court erred in construing the term "lateral edge portion" to mean "the portion of the floor marking tape from the *shoulder* to the edge of the tape when viewed in cross section." *Claim Construction Order*, slip. op. at 9 (emphasis added). Lowe contends that the court erroneously imported the term "shoulder" from the specification into the claim language. According to Lowe, the claimed invention does not *require* the tape to have shoulders. Rather, the shoulders are merely part of one embodiment. Thus, Lowe argues, the lateral edge portions are simply "a portion of the tapered edges of the tape body." Appellants' Br. 19. ShieldMark responds that the court correctly construed the term "lateral edge portion." According to ShieldMark, because the specification uniformly describes the claimed invention as requiring a tape with shoulders, the court correctly included the term "shoulders" in its construction.

We agree with Lowe that the district court erred in construing the term "lateral edge portions." We have repeatedly "cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1328 (Fed. Cir. 2002) (quoting *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998)). Here, the court did just that. Specifically, it determined that, because the term "shoulders" "appears repeatedly in the patent specification[]," the claimed invention must include shoulders. *Claim Construction Order*, slip. op. at 8. But, as is clear from the claim language and the specification, the asserted claims are not so limited.

Starting with the claim language, neither claim 1 nor claim 11 recites that the tape has shoulders demarcating a recess. In fact, neither claim even mentions the word

"shoulders." Moreover, claim 7, which depends from claim 1, *does* recite that the tape has a recess and (by implication) shoulders that demarcate the recess. '664 patent, col. 5 ll. 50–52. Thus, if we were to construe the claims as Shield-Mark proposes, claim 7 would be superfluous. *See Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1391 (Fed. Cir. 2016) ("A construction that would cause two differently worded claims to cover exactly the same claim scope would render one of the claims superfluous, so we apply a presumption against such constructions.").

The specification provides further evidence that the asserted claims are not as narrow as ShieldMark contends. For example, it states that tape with shoulders and a recess is just "*one embodiment*" of the claimed invention. '664 patent, Abstract; col. 1 ll. 56–59 (emphasis added). It further explains that "[o]*ther structures* combined with body 20 may also be used in place of . . . shoulders 32." *Id.* col. 2 ll. 33–36 (emphasis added). The specification goes on to describe additional "embodiments" or "configurations" of tape, several without shoulders. *Id.* col. 1 ll. 38–46; col. 1 ll. 60–64; col. 2 ll. 64–67; *see Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016) ("[T]he standard for disavowal is exacting, requiring clear and unequivocal evidence that the claimed invention includes or does not include a particular feature." (citing *Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 513–14 (Fed. Cir. 2015))).

The parent of the '664 patent, U.S. Patent 8,883,290, also supports our determination. Both the '664 and '290 patents share a specification and recite claims directed to floor marking tape. Importantly, however, unlike the '664 patent claims, the '290 patent claims expressly recite that the tape has "shoulders" and "a recess." '290 patent, col. 4 l. 62–col. 5 l. 15. Accordingly, the patentee knew how to claim tape with shoulders and a recess when specifically intended. Thus, as is clear from the evidence, the claimed invention is not as narrow as ShieldMark asserts.

ShieldMark makes several additional arguments, all unpersuasive.

First ShieldMark contends that, because every figure of the '664 patent shows an embodiment of tape with shoulders, the claimed invention must have shoulders.

We disagree. ShieldMark is correct that every figure in the specification depicts tape with shoulders. Importantly, however, that does not necessarily require us to narrowly limit the claimed invention to those figures. As explained above, the specification *describes* various embodiments of the tape, several without shoulders.

Second, ShieldMark asserts that Lowe's proposed construction, which omits the word "shoulders," would violate 35 U.S.C. § 112. Specifically, ShieldMark contends that, without the word "shoulders" in the construction, it is unclear "where the lateral edge portions begin and other parts of the tape end." Appellees' Br. 28.

We disagree with ShieldMark that construing the claims without reference to the word shoulders would render them invalid. The claim language itself details the position of the lateral edge portions: they are at the *tapered* edges of the floor marking tape, without reference to shoulders. More specifically, claim 1 recites that the lateral edge portions (1) are tapered[2]; (2) are disposed in the longitudinal direction; (3) have an "upper surface" "comprising an

---

[2]    We decline to consider Lowe's argument that the district court erroneously construed the term "tapered." Lowe fails to explain how the court's construction would affect our infringement analysis. *See Jang v. Bos. Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008) (resolving claim construction issues "that do not actually affect the infringement controversy between the parties" would result in an impermissible advisory opinion).

extension of the upper surface of the body;" and (4) have a "maximum height that is less than [their] width." '664 patent, col. 5 ll. 2–36.  That description speaks for itself.  We thus reject ShieldMark's argument.

## B

Lowe next asserts that the district court erred in construing the limitation "lower surface of each lateral edge portion being a flat coplanar extension of the lower surface of the body" to mean "a planar relationship exists between two or more things [that] does not allow the entire lower surface of the tape body to be one flat or planar surface." *Claim Construction Order*, slip. op. at 10 (internal quotation marks omitted).  First, Lowe argues that the court should have construed the limitation to mean "the bottom surfaces of the lateral edge portions are flat, lie in the same plane, and define an extension of the lower surface of the body."  Appellants' Br. 20.  In other words, Lowe contends that "coplanar" refers to the relationship between the two lateral edge portions.  Second, Lowe argues that the court again limited the claimed invention to one embodiment in the specification: tape with shoulders and a recess.  Specifically, Lowe points out that if the tape cannot lie flat, then by implication, it must have shoulders and a recess.  *Id.* at 23.

ShieldMark responds that the court's construction was correct.  It first asserts that, "'coplanar extension' necessarily implies a reference to two distinct points that a continuous flat line does not have." Appellees' Br. 29.  It also asserts that, because the claimed invention is limited to tape with shoulders and a recess, the tape cannot have one flat lower surface.  Moreover, according to ShieldMark, in an earlier decision denying institution of post-grant review for the '664 patent, the U.S. Patent and Trademark Office Patent Trial and Appeal Board (the "Board") allegedly determined that the term "coplanar extension" cannot encompass a single, flat lower surface.

We agree with Lowe that the district court's construction was incorrect.  Claim 1 simply recites that the lateral edge portions are (1) flat, (2) coplanar with each other, and (3) extensions of the lower surface of the body.  Contrary to ShieldMark's assertion, claim 1 does not "necessarily impl[y] a reference to two distinct points that a continuous flat line does not have."  Appellees' Br. 29 (internal quotations marks omitted).  Moreover, in construing the term "coplanar extension," the district court erroneously imported limitations from the specification into the claims.  For example, it observed that "the specification language" "weighs heavily against [Lowe's] proposed construction" because it "describe[s] 'a [l]ower surface 24 [that] defines a recess 30 bounded by a pair of shoulders 32.'"  *Claim Construction Order*, slip. op. at 11.  But for the reasons explained above, the asserted claims are not so limited.

Nor are we persuaded by ShieldMark's argument regarding the post-grant review.  ShieldMark misreads the Board's decision.  The Board did not, as ShieldMark argues, construe the claims to exclude a single, flat lower surface.  Rather, it simply held that the claims do not *require* "the lower surface of the lateral edge portions to be coplanar with the lower surface of the tape body defined by recess 30."  J.A. 1109.  The Board further explained that the lower surfaces of the first and second lateral edge portions "1) are flat, 2) are coplanar with each other, and 3) define an 'extension of the lower surface of the body.'"  *Id.*  Thus, the Board's construction did not speak to whether the tape must have shoulders with a recess.

C

Finally, Lowe asserts that the district court erred in construing the term "central body portion" to mean "the portion of the tape body between the *shoulders* of the two lateral edge portions."  *Claim Construction Order*, slip. op. at 10 (emphasis added).  According to Lowe, the court should have construed the term "central body portion" to

mean the "portion of the tape that extends along and on each side of the body's centerline." Appellants' Br. 22. ShieldMark responds, as it did before, that the court's construction was correct because the claimed invention requires shoulders.

We agree with Lowe. Again, the court's construction improperly imported the term "shoulders" into the claims. For the reasons explained above, that construction was erroneous. Except for claims 7 and 17 and the claims that depend from them, the claims are not so limited.

In summary, because the district court erred in construing "lateral edge portion," "coplanar extension," and "central body portion," we vacate its claim construction order and adopt Lowe's construction of those terms. Additionally, because the court granted summary judgment of noninfringement based on its claim construction, we vacate its summary judgment decision involving all of the asserted claims of the '664 patent and remand for further proceedings consistent with this opinion.

## II

We turn next to Lowe's argument that the district court erred in dismissing the declaratory judgment claim for invalidity and unenforceability of the '220 patent.

As an initial matter, the district court did not expressly state on what ground it dismissed the declaratory judgment claim. *Dismissal*, slip. op. at 5. However, "an appellate court may affirm a judgment of a district court on any ground the law and the record will support [as] long as that ground would not expand the relief granted." *Glaxo Grp. Ltd. v. TorPharm, Inc.*, 153 F.3d 1366, 1371 (Fed. Cir. 1998). Because the record shows that the district court lacked subject matter jurisdiction over Lowe's declaratory judgment claim, we affirm on that ground.

"Subject matter jurisdiction in a declaratory judgment suit depends upon the existence of 'a substantial

controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1345 (Fed. Cir. 2010) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). Whether the district court had subject matter jurisdiction is a question we review de novo. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008).

Here, Lowe fails to show that there remains a substantial controversy between the parties.

First, ShieldMark voluntarily dismissed its infringement suit against Lowe *with prejudice*. It did so after learning that Lowe had sold few Superior Mark products and then created a noninfringing redesign.

Second, there was (and still is) only a speculative possibility that ShieldMark will sue Lowe again for infringing the '220 patent claims through sale of Superior Mark tape; ShieldMark provided Lowe with a covenant not to sue for past and present infringement of the '220 patent claims. J.A. 1409. And the district court conditioned its dismissal on ShieldMark's continuing consent to the covenant. *Dismissal*, slip. op. at 5. *See Dow Jones*, 606 F.3d at 1348 ("In the case at bar, [patentee's] covenant not to sue avowed that" it would not sue "for any acts of infringement . . . . The covenant therefore extinguished any current or future case or controversy between the parties and divested the district court of subject matter jurisdiction.").

Still, Lowe emphasizes that, because the covenant covers only past and present acts, if Lowe decides to keep selling or manufacturing its original Superior Mark tape in the future, ShieldMark will likely sue again for infringement of the '220 patent claims. Lowe also points out that "ShieldMark has yet another continuation application pending," and that it is "more probable than not" that

ShieldMark will sue Lowe for infringement once that patent issues.  Appellants' Br. 33.

Lowe's arguments are unpersuasive.  With respect to the '220 patent, ShieldMark has expressly stated that it will not sue Lowe for future manufacture, sale, or use of the original Superior Mark tape design.  *Oral Argument*, at 23:06–26:40.  With respect to the continuation application, other than mere speculation, Lowe fails to point to any evidence that ShieldMark intends to sue Lowe for infringement if and when the patent issues.  Accordingly, Lowe does not satisfy the "sufficient immediacy" requirement of *MedImmune*.  At best, Lowe has shown only that there is a "a *hypothetical* 'prospect of a second lawsuit.'"  *See Dismissal*, slip. op. at 4 (emphasis added).  That is insufficient.  A "case or controversy must be based on a real and immediate injury or threat of future injury . . . an objective standard that cannot be met by a purely subjective or speculative fear of future harm."  *Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1253 (Fed. Cir. 2016) (quoting *Prasco*, 537 F.3d at 1339).  Because the record shows that there was no remaining live controversy, we affirm the district court's dismissal of Lowe's declaratory judgment claim on the ground of lack of subject matter jurisdiction.[3]

### III

Finally, we address Lowe's third argument that the district court abused its discretion in denying attorney fees following dismissal of the '220 patent infringement suit.

---

[3]     Because we affirm the district court's dismissal of Lowe's declaratory judgment claim for invalidity and unenforceability of the '220 patent, we need not address Lowe's request that we reverse the district court's decision and remand with an instruction to grant summary judgment of invalidity and unenforceability of the '220 patent.

We review a district court's denial of attorney fees under 35 U.S.C. § 285 for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014). "Abuse of discretion is a highly deferential standard of appellate review." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017). "Because the district court lives with the case over a prolonged period of time, it is in a better position to determine whether a case is exceptional, and it has discretion to evaluate the facts on a case-by-case basis." *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1308–09 (Fed. Cir. 2018) (quoting *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1351 (Fed. Cir 2015)).

Lowe asserts that it was entitled to attorney fees because ShieldMark engaged in a variety of allegedly exceptional behavior. Specifically, Lowe contends that ShieldMark voluntarily dismissed its '220 patent infringement suit "only after being confronted with significant invalidity and unenforceability contentions." Appellants' Br. 55. In other words, according to Lowe, ShieldMark "ran from the fight." *Id.* at 36. ShieldMark responds that it acted reasonably throughout the litigation and that Lowe's allegations are factually unsupported.

We agree with ShieldMark that the district court did not abuse its discretion in denying attorney fees. Here, the court considered the record and the parties' conduct and reasonably concluded that ShieldMark's behavior did not warrant attorney fees. As the court explained, ShieldMark had a "compelling" reason to voluntarily dismiss its infringement suit: it learned that Lowe altered the design of its Superior Mark tape so that it "arguably no longer infringes" ShieldMark's '220 patent. *Dismissal*, slip. op. at 2, 4. The court further explained that ShieldMark did not delay seeking a dismissal. *Id.*, slip. op. at 4. Accordingly, Lowe fails to persuade us that the court abused its discretion in denying attorney fees.

20                           LOWE v. SHIELDMARK, INC.

CONCLUSION

We have considered the parties' remaining arguments but find them unpersuasive.  For the foregoing reasons, we *vacate* the district court's decision granting summary judgment of noninfringement and remand for further proceedings consistent with this opinion.  We *affirm* the court's dismissal of Lowe's declaratory judgment claim and denial of attorney fees.

**VACATED-IN-PART, REMANDED-IN-PART, AND AFFIRMED-IN-PART**

COSTS

No costs.