UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Clifford A. Lowe, et al. ) | |
| ) | CASE NO. 1:19-CV-748-JG |
| Plaintiffs ) | |
| v. ) | JUDGE JAMES S. GWIN |
| ) | |
| ShieldMark, Inc., et al. ) | |
| ) | |
| Defendants ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION (DOC. #114) FOR THE SUBSTITUTION OF THEIR FED.R.CIV.P. 26(a)2(B) EXPERT**

Now come Plaintiffs, Clifford A. Lowe and InSite Solutions, LLC ("Plaintiffs"), in opposition to the motion (Doc. #114) of Defendants, ShieldMark, Inc., Advanced Plastics Inc., and Crown Equipment Corporation ("Defendants"), to substitute their Rule 26 (a)(2)(B) expert witness, and state as follows.

**I.    Relevant Facts.**

Substitution at this point will be highly prejudicial to Plaintiffs because:

1.    The existing Expert Report of Dr. Timothy B. Jensen (Doc. #67- #67-20) is 140 pages in length and contains 443 detailed paragraphs espousing his opinions. While Defendants state that their substitute expert, Christopher Haas, will be limited to the same topics, they critically do not state that he will be adopting the same opinions. Plaintiffs' counsel have spent 70+ hours reviewing Dr. Jensen's report (Doc. #67 - #67-20) and their prepared defense of Plaintiffs' counterclaims is dependent upon that preparation. Substitution of a new expert at this late date means that the majority of Plaintiffs' counsel's prior preparation may well be for naught, and numerous additional hours and attendant expense will need to be incurred.

1

2. The Court has now allowed Defendants to reassert their prior motion for summary judgment of invalidity (Doc. #121). Defendants had supported that motion with the opinions of Jensen. Accordingly, one set of opinions has been presented to the Court, with the possibility that a second and different set of opinions will be presented to a jury.

3. Defendants' proposed substitute expert Christopher Haas and previously designated expert Jensen do not share the same credentials. By way of example only, Jensen is the named inventor on a single patent, while Haas is the inventor of not less than 18 patents. Credentials are often critical to a fact finder's considerations.

4. Defendants state that their primary reason for requesting the substitution of a new expert is the physical health of Jensen, which affects his ability to travel. However, other less prejudicial alternatives exist, but are not offered, such as:

    a. Video deposition of Jensen. Counsel for the parties could travel to Jensen to conduct the deposition and the cross-examination; and

    b. Defendants can identify those portions of the Jensen report that they will present to the jury. The parties by stipulation, or the Court by order, can then determine to allow some or all to be read into the record.

5. Significantly, as to the purported state of Jensen's physical health, Defendants argue twice in support of their motion that "Dr. Jensen informed Defendants that he is suffering from serious, debilitating health problems and his health has deteriorated to the point that he cannot continue to participate in this lawsuit….On May 11, 2022, Defendants informed Plaintiffs that Dr. Jensen is of an advanced age, that he is suffering from serious, debilitating health problems, that his health has deteriorated, and that, for these reasons, Dr. Jensen had informed Defendants that he is unable to continue his participation in this lawsuit."

Yet, Plaintiffs are in possession of objective evidence obtained through an intermediary that Jensen's physical health is not as claimed in his Declaration (Doc. #114-1). Jensen has been seen out and about without a wheelchair, walker or cane, and most recently watering his lawn under his own power. He gets in and out of his car, drives it, and even retrieves items from it without restriction. See Joint Declaration of Timothy A. Dimoff and Jack Milam attached.

6. Defendants state the second reason for requesting substitution of a new expert is the mental health of Jensen, stated (Docs. #114, #114-1) to be caused by medications that he is taking. Of significance, no medications are identified nor doctor's certificate attached. Furthermore, the objective evidence obtained by Plaintiffs (Joint Declaration of Timothy A. Dimoff and Jack Milam) does not support Jensen being in physical pain or in less than normal mental health, e.g., driving a car, walking into a coffee shop, ordering food, reading a newspaper, engaging in lucid conversation, or watering his lawn.

7. Defendants are painfully aware that Jensen gave opinions as to claim construction which this Court previously adopted and which the Court of Appeals for the Federal Circuit on appeal rejected (see Doc. #110). Such is hardly an appropriate reason for substitution of expert witnesses at this late stage of the litigation. To the extent that Defendants fear the jury will hear Jensen's erroneous conclusions, a motion in *limine* is the appropriate course of action—not a motion for substitution.

II. **Law and Argument.**

Courts have looked to Rule 16(b)(4) and Rule 37(c) of the Federal Rules of Civil Procedure when deciding whether to allow a party to substitute an expert witness when the first expert becomes unavailable. *Carlson v. Fewins*, 2016 WL 7971764, at *1 (W.D. Mich. Oct. 19, 2016). Under both standards, which are different, the moving party bears the burden of proving

3

that the requested substitution should be permitted. *Gaines v. County of Wayne,* 2021 WL 5997980 at *1 (E.D. Mich. December 20, 2021).

Courts have considered a motion to substitute an expert witness to be essentially a motion to amend the scheduling order. *Hoffman v. Tonnemacher*, 362 Fed. App'x 839, 840 (9th Cir. 2010) and *Miesen v. Hendersen,* 2022 WL 392931 at *1 (D.Idaho February 9, 2022). The standard for amending a scheduling order under Federal Rule of Civil Procedure 16(b)(4) is "good cause." *Carlson,* 2016 WL 7971764, at *1. "Good cause" requires "diligence." *Id.* Diligence is defined as the "constant and earnest effort to accomplish what is undertaken." (www.Dictionary.com) Absent diligence, there can be no "good cause." While diligence is the primary consideration, prejudice is an additional consideration. *Id.* At the heart of the inquiry are "the moving party's reasons for seeking modification." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Rule 37(c) prohibits a party from using a witness who has not been timely identified unless the failure was "substantially justified or is harmless." *Carlson,* 2016 WL 7971764, at *1. As to Rule 37(c), the burden is on the potentially sanctioned party to prove substantial justification or harmlessness. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.* 325 F.3d 776, 782 (6th Cir. 2003). Notably, in *Galen,* the Court imposed a significant safeguard: The substitute expert was held to the same opinions as the original expert, not merely the same "topics."

Rule 37(c)(1) requires absolute compliance with Rule 26(a), mandating that a court punish a party for discovery violations in connection with the rule unless the violation was harmless or is substantially justified. *Vance v. United States,* 1999 WL 455435 at *3 (6th Cir. June 25, 1999). The sanction of exclusion is automatic and mandatory unless the sanctioned

4

party can show that its violation of Rule 26(a) was either justified or harmless. *Salgado v. General Motors Corp.,* 150 F.3d. 735, 742 (7th Cir. 1998).

In the event a motion to substitute is brought after the time has passed to disclose expert witnesses, courts have also applied Rule 6(b)(1) of the Federal Rules of Civil Procedure, which adds that not only must there be "good cause" to modify a scheduling order, but also there must be "excusable neglect." See *accord Harrison v. United States*, 2021 WL 1269119, at *8 (D. Alaska April 6, 2021) (applying Rule 16(b) and Rule 6(b) to a motion for substitution of an expert).

An excusable neglect determination "is an equitable one that depends on at least four factors:

(1) the danger of prejudice to the opposing party;

(2) the length of the delay and its potential impact on the proceedings;

(3) the reason for the delay; and

(4) whether the movant acted in good faith." *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223–24 (9th Cir. 2000).

When determining whether excusable neglect exists, courts should consider "all pertinent circumstances, including the danger of prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Harris Corp. v. Ruckus Wireless, Inc.,* No. 6:11–CV–618–ORL–41, 2015 WL 3883948, at *6 (M.D.Fla. June 24, 2015).

Relevant here to the issue of "good faith," is the holding of the district court in *Crandall v. Hartford Cas. Ins. Co.,* No. CV 10–00127–REB, 2012 WL 6086598, at *3 (D.Idaho Dec. 6,

5

2012). In *Crandall*, the district court denied a motion to substitute an expert witness when the impetus for the motion was plaintiff's fear that the current expert's opinions would not withstand summary judgment. Similarly, in *Taylor v. Dean,* No. 5:05–CV–397–OC–10GRJ, 2007 WL 7622152, at *4 (M.D.Fla. Jan. 19, 2007), the district court held, "[W]here a party attempts to substitute testimony from a new expert 'as makeup for initially inadequate or incomplete preparation' it does not constitute 'good cause' under Rule 16 for violating the deadlines in the Court's scheduling order." Likewise is the holding in *U.S. ex rel. Agate Steel, Inc. v. Jaynes Corp.*, 2015 WL 1546717, at *2 (D. Nev. April 6, 2015), to wit **"The purpose of allowing substitution of an expert ... is not an opportunity to designate a better expert."** (Emphasis added)

Considering the issues of delay and prejudice, the district court in *Carson Harbor Village, Ltd. v. Unocal Corp.,* No. CV 96–3281 MMM (RCX), 2003 WL 22038700, at *3 (C.D.Cal. Aug.8, 2003), disallowed an untimely expert witness designation where the opposing party "would incur significant expense and suffer further prolonged proceedings if [the summary judgment] motions were continued in order to permit discovery and the preparation of appropriate expert rebuttal at this point"). Considering whether substitution would be allowed after the filing of summary judgment motions in *Lopez v. I-Flow, Inc.*, 2011 WL 7424141 (D. Arizona, May 12, 2011), the district court held that the plaintiffs had not shown how the cost and delay resulting from their disclosure of a new expert witness *after* the summary judgment motions have been filed will be avoided, and therefore had not met their burden of showing that their conduct is harmless.

As in the cases cited above, Defendants have failed to meet their burden to show:

6

1) Diligence. As stated above, diligence is defined as the "constant and earnest effort to accomplish what has been undertaken." Defendants offered the report of Jensen; offering Haas in substitution of Jensen does not represent an earnest effort to advance Jensen's opinions, which have been a bedrock of Defendants' case on both infringement and invalidity. "Diligence" would have been offering a video deposition—not requesting substitution upon receipt of an adverse Decision in which Jensen's opinion played a role, just as his opinion continues to play a role in the pending summary judgment motion for invalidity; and

2) The absence of prejudice and harm. Prejudice and harm are evident in:

(a) the impact on Plaintiffs' preparation of its case, both for summary judgment and trial;

(b) further delay and cost to Plaintiffs;

(c) the absence of any valid reason for the substitution given less prejudicial alternatives such as a video deposition of Jensen or the reading of selections from Jensen's report into the record; and

d) the absence of good faith given the apparent objective evidence as to the physical and mental condition of Jensen.

Defendants motion seeks instead, at this very late stage, to put forth "a better expert" than the expert they have relied upon.

**WHEREFORE,** the Court is requested to deny Defendants' motion (Doc. #114) and cancel the new schedule (Doc. #118) for the identification of expert witnesses and presentation of reports issued prior to the timely filing of this opposition brief by Plaintiffs.

Dated: June 1, 2022

Respectfully submitted,

_____
Ray L. Weber          (0006497)
Laura J. Gentilcore   (0034702)
RENNER, KENNER, GREIVE, BOBAK,
TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, OH 44308
Telephone: (330) 376-1242
Fax: (330) 376-9646
E-mail: rlweber@rennerkenner.com
E-mail: ljgentilcore@rennerkenner.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION (DOC. #114) FOR THE SUBSTITUTION OF THEIR FED.R.CIV.P. 26(A)2(B) EXPERT**

has been filed electronically on June 1, 2022, with the United States District Court for the Northern District of Ohio. Notice of the filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____
Ray L. Weber          (0006497)

8