UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Clifford A. Lowe, et al. | ) |
|       Plaintiffs | ) CASE NO. 1:19-CV-748-JG |
| v. | ) JUDGE JAMES S. GWIN |
| ShieldMark, Inc., et al. | ) |
|       Defendants | ) |

**AFFIDAVIT OF LAURA J. GENTILCORE IN SUPPORT OF
MOTION TO RECUSE OR DISQUALIFY**

STATE OF OHIO    )
                        ) SS:
COUNTY OF SUMMIT  )

I, **LAURA J. GENTILCORE**, being first duly sworn, do hereby depose and say that:

1. I am over 18 years of age, of sound mind and otherwise competent to make this Affidavit;

2. The facts set out in the following Affidavit are based upon my personal knowledge;

3. I have practiced law for 36 years, 25 years of which I have been involved in the practice of intellectual property litigation;

4. I have never before requested the recusal of a judge or administrator;

5. I am an attorney of record for Plaintiffs in the captioned matter;

6. I was present in the room with Mr. Weber for the Zoom *Markman* Hearing before Judge Gwin:

7. At the outset of the *Markman* hearing, Mr. Weber was asked if he agreed that the claims in issue were means-plus-function claims. Counsel for Defendants, as did we

as counsel for Plaintiffs, stated early on in our respective parties' Initial Identification of Claim Terms for Construction Under L.P.R. 4.1(a) that neither party contended the construction of any claim term was governed by 35 U.S.C. § 112(6). Judge Gwin conceded that neither party had addressed "means-plus-function" in their *Markman* briefs. Mr. Weber stated that he did not see any of the claims in issue as means-plus-function claims. Notwithstanding their prior statement, Defendants' counsel stated that he could see that the claims were means-plus-function claims;

8. Next during the *Markman* Hearing, Mr. Weber was asked by Judge Gwin if Defendants' claim construction was correct. Mr. Weber answered that Defendants' claim construction was *not* correct, and it was classic and reversible error;

9. Judge Gwin stated words to the effect that "basically in some ways to threaten a judge by saying some Court of Appeals is going to see things differently," was the least persuasive argument;

10. At a subsequent status conference, we requested that the Court move the deadline for summary judgment motions until after the claim construction order issued as is provided under the Local Patent Rules;

11. Notwithstanding the purposeful organization of the Local Patent Rules, the Court issued its order requiring summary judgment motions to be filed whether or not the claim construction order had issued, instructing the parties to argue against each other's claim constructions in the summary judgment briefing;

12. Following the parties' filing of their respective summary judgment motions, the Court issued its claim construction order adopting Defendants' construction, and thereafter

Plaintiffs conceded to summary judgment of non-infringement so that the action could proceed to appeal;

13. With authorization from Mr. Lowe individually and on behalf of InSite Solutions, LLC, an appeal to the Court of Appeals for the Federal Circuit (CAFC) was filed;

14. On appeal, we argued that the claim constructions were erroneous and summary judgment of non-infringement should be reversed as it was based on such;

15. The Federal Circuit found the claim constructions to be erroneous, vacated the District Court's grant of summary judgment, and remanded with instructions to adopt our clients' claim constructions;

16. The mandate was filed on April 20, 2022;

17. A first status conference was set for May 25, 2022;

18. Judge Gwin began the status conference by stating that he was going to reverse the Federal Circuit. At first, I thought I must have misheard, but as he continued, I realized that is exactly what he had said;

19. Judge Gwin stated the first full paragraph of page 12 of the Federal Circuit Court opinion proves that his claim construction is the correct construction, stated that the Federal Circuit Court erred, and asked Mr. Weber if he agreed;

20. Mr. Weber stated that he disagreed;

21. Upon Mr. Weber's disagreement, Judge Gwin exploded stating words to the effect that he did not know how he was to instruct the jury since his claim construction was rejected;

22. Judge Gwin went on to say that he might have to hold a second claim construction (*Markman*) hearing;

23. Judge Gwin then proceeded to ask Defendants if they intended to refile their motion for invalidity and unenforceability of the patent-in-issue, going so far as to offer that "all flat marking tapes have edges." I interpreted this statement as forecasting Judge Gwin's intent to rule against our client regarding invalidity since a particular feature of the claimed tape of the patent-in-suit is the edges;

24. Judge Gwin then announced that he would grant Defendants' motion for leave to substitute its expert filed just two days prior to the status conference;

25. Consistent with his stated intention, Judge Gwin set a new scheduling order for identification of witnesses and exchange of their reports;

26. Within two hours of the status conference, Judge Gwin had issued two scheduling orders, neither of which considered Local Patent Rule 5.1, but rather tracked the Local Civil Rules;

27. Following that status conference, Mr. Weber and I discussed with our assistant what had happened and she simultaneously transcribed our recollections. Mr. Weber and I concluded that we may have to file a writ of prohibition. We therefore requested a copy of the transcript (i.e., the order setting the status conference stated that a court reporter would be in attendance) only to be told that no transcript of the conference had been made. This notwithstanding, it was stated in the order that a court reporter was to be assigned to cover the "status conference;"

28. After the conference, having been made aware by our client that the host of a Zoom conference may record the conference, we filed a request for any electronic recording the Court may have made. That request remains pending before the District Court;

29. The following day, we prepared and filed a motion for reconsideration of the second of the new scheduling orders, which, like that announced during the status conference and the first to arrive after the status conference, did not take into account Local Patent Rule 5.1. That Local Patent Rule 5.1 applies is important to our client's case. It takes into consideration that a patent is presumed to be valid and enforceable, and provides for an exchange of reports based upon the respective burdens of proof of infringement, invalidity and unenforceability;

30. In his order (Doc. #134) granting Defendants' motion for substitution of their expert (Doc. #114), before acknowledging the mandate of the Federal Circuit that he adopt Plaintiffs' claim constructions, which expressly appears in the Federal Circuit Court Opinion, Judge Gwin repeated in writing that the Federal Circuit had erred in finding his claim constructions to be erroneous;

31. Subsequently, we received an additional order (Doc. #142) from the District Court instructing the parties to file supplemental briefing including "whether the Federal Circuit's claim interpretation opinion" "impacted their invalidity arguments" and "whether any [preexisting product or publication or patent] incorporates the '664 Patent restrictions, elements or limitations literally or under the doctrine of equivalents;"

32. We relayed all the foregoing happenings to Mr. Lowe;

33. After further careful consideration of all of the foregoing, Mr. Lowe has now authorized us to proceed with the filing of Plaintiffs' motion for recusal or to disqualify, his affidavit, our certification that his affidavit is in good faith, Mr. Weber's affidavit, and my affidavit;

34. I share Mr. Lowe's good-faith belief that Judge Gwin's statements and actions reflect that he is no longer impartial;

35. I share Mr. Lowe's good-faith belief that, at a minimum, Judge Gwin's statements and actions exhibit the appearance of partiality; and

36. I share Mr. Lowe's good-faith belief that Judge Gwin has exhibited a deep-seated antagonism toward Mr. Lowe and a bias in favor of Defendants that will make fair adjudication going forward impossible.

**FURTHER AFFIANT SAYETH NAUGHT.**

*/s/ Laura J. Gentilcore*
Laura J. Gentilcore

**SWORN TO AND SUBSCRIBED** in my presence this 23 day of June 2022.

(SEAL)

*/s/ Rodney L. Skoglund*
Notary Public
RODNEY LEE SKOGLUND, Attorney at Law
Notary Public - State of Ohio
My Commission Has No Expiration Date
Section 147.03 R.C.