UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Clifford A. Lowe, et al. | ) | |
| | ) | CASE NO. 1:19-CV-748-JG |
| Plaintiffs | ) | |
| v. | ) | JUDGE JAMES S. GWIN |
| | ) | |
| ShieldMark, Inc., et al. | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFFS' SUPPLEMENTAL RESPONSE
TO DEFENDANT SHIELDMARK, INC.'S MOTION (DOC. #162)
TO SEAL EXPERT REPORT**

Now come Plaintiffs, Clifford A. Lowe and InSite Solutions, LLC ("Plaintiffs"), in supplementation of their Preliminary Response to Defendant ShieldMark, Inc.'s Motion (Doc. #162) To Seal The Expert Report Of Alex L. Constable.  While such expert report has been removed from the public docket and sealed, the issue of sanctions remains.  As will be presented below, ShieldMark's motion as to sanctions must be denied because it is:

1) unnecessary;

2) ill-based because the information claimed by ShieldMark to be so highly confidential as to require an "ATTORNEYS' EYES ONLY" designation was, in fact, previously made known as a matter of public record by ShieldMark itself. ShieldMark's sales volume was proudly touted by ShieldMark to the trade and interested public, and its 7.5% licensing arrangement was published on the public record over a decade ago in prior litigation between the parties to this present litigation; and

3) brought in bad faith and constitutes an abuse of the interim protective order, a process contemplated by the Local Patent Rules and, as such, supports a request for sanctions against ShieldMark for this proceeding.

1

## I.   ShieldMark's Motion Was Unnecessary

The Federal Rules of Civil Procedure contemplate cooperation between the parties before requesting the Court's intervention.  In its Motion (Doc. #162), Defendant ShieldMark solicited a protective order for the sealing of the Constable Expert Report.  Fed.R.Civ.P. 26(c)(1) requires that such a "motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without Court action."  That never occurred.  Nor does ShieldMark suggest that it did.  Instead, ShieldMark went directly to spending the time, effort and expense of preparing an unnecessary motion for which it now seeks compensation.

Notably, immediately following receipt of the subject ShieldMark motion, the undersigned counsel went to work on responding, and did so, with Plaintiffs' Preliminary Response to Defendant ShieldMark, Inc.'s Motion (#162) To Seal Expert Report (Doc. #164).  It will be appreciated that Plaintiffs' Preliminary Response (Doc. #164) was filed at 11:27 a.m. on July 14, 2022, a mere three minutes after the Court issued its Order (non-doc) sealing the Constable Report and deferring the issue of sanctions.

As noted in Plaintiffs' Preliminary Response (Doc. #164) at the fourth and sixth bullet points, "Plaintiffs [did] not object to the removal of the report from the docket and to remain under seal until such time as the information therein is necessarily presented at trial, or otherwise addressed by the Court."  Plaintiffs Lowe and InSite went on to state that "Had opposing counsel communicated its concern to Plaintiffs' counsel upon receipt of the expert report, Plaintiffs' counsel could and would have made this request jointly with Defendants immediately thereafter."  A simple phone call from opposing counsel, as required by the Rules, would have been ***all that was needed***.

2

II.    **ShieldMark's Motion Is Ill-Based**

ShieldMark complains that two pieces of sensitive business information were presented in the Constable Report, to wit:  sales volume and a license royalty rate.  There is no allegation that any of the documents marked as being under a protective order were attached to the Constable Report.  The complaint is that "on pages 4 and 5 of the report, Constable sets out ShieldMark's sales of the floor tape contained in the two [document] productions," and that "on page 7 of the report, Constable expressly provides the royalty terms of ShieldMark's highly confidential license agreement with Ergomat, LLC."  (Doc. #162, Page ID# 5986)

ShieldMark plays fast and loose with what and when to declare something confidential.  When talking to trade publications about its sales volumes and activities, ShieldMark is proud to attest to volumes of the very nature it now claims to be so highly confidential.  See the trade publication of Doc. #164-1.

As to the 7.5% royalty rate that is now considered so highly confidential in this case, it is well to note that it was not accorded any confidentiality in prior litigation between the parties a dozen years ago in this Federal Court, to wit: Case No. 1:12-cv-00223-DCN ("the '223 case").  In that litigation, where ShieldMark was the Plaintiff and InSite was the Defendant, note that:

1)  Thomas Goecke, a principal of ShieldMark, Inc., testified extensively regarding patent licensing royalty rates.  That testimony is available on the public record (Doc. #76-1, Page ID# 1563-1567, the '223 case).  Moreover, ShieldMark's damages expert in that case, Jeffrey D. Firestone, testified extensively about royalty rates.  (See **EXHIBIT 1**, attached.)  Firestone testified on page 2 of his report that a "reasonable range of royalty rates…would be approximately 10-15 percent."  He even testified on page 3 of his report quite specifically about a royalty rate that ShieldMark had granted at a 7.5 percent rate.

Quite notably, neither the report of Jeffrey D. Firestone nor the cover letter by which it was sent bear any notification or markings indicating that it was protected (see **EXHIBIT 1**).  Even if it were, it is now more than 12 years old and hardly of the value ShieldMark suggests.

2) In this earlier '223 case, Alex L. Constable also testified on behalf of InSite (defendant in the '223 case) noting in his report the 7.5% royalty rate stated by Firestone.  The Expert Report of Constable is Doc. #82 in the '223 case.  No objection was ever made by ShieldMark with regard to the Constable report being on the public record.  That report states:  "ShieldMark has **one** existing patent agreement on the '480 patent at 7.5% of gross sales…" (emphasis added)  (Doc. #82, Page ID# 1655, the '223 case).  That one existing patent agreement was clearly the Ergomat, LLC "highly confidential license agreement" of "concern" to ShieldMark at Doc. #162, Page ID# 5986.

It is difficult to imagine that sales figures once proudly shared with the trade through trade publications are now considered of a highly confidential nature, or that a license agreement, which is over 12 years old, is more confidential now than it was when it was entered into and allowed on the public record.

### III.    ShieldMark's Motion Is Brought In Bad Faith And Is An Abuse Of The Interim Protective Order of Local Patent Rule 2.2

ShieldMark's failure to contact undersigned counsel in order to resolve the issue concerning publication of the Constable Report, coupled with the fact that the very information ShieldMark characterizes as having been wrongfully published, was indeed ***earlier published by ShieldMark itself,*** speaks volumes as to ShieldMark's bad faith.  ShieldMark's declarations to the trade of its sales information and its posting of the royalty rate of its then-only patent license

4

agreement in its unrestricted expert report further demonstrate ShieldMark's abuse.  The absence of a marking of confidentiality, and ShieldMark's failure to object to the subsequent publication of that same information on the public record of the Court's docket in the '223 case signals that this information is not of the highly sensitive business confidential nature intended for protective orders.  Indeed, it is not confidential at all.  It is simply another sideshow of ShieldMark to protract this case and frustrate its resolution.

### IV.  To The Extent Sanctions Are Appropriate, They Should Be Granted Against ShieldMark

For the reasons presented above, and particularly ShieldMark's failure to attempt to resolve this matter between counsel, but instead to fashion a motion claiming a breach of confidentiality with regard to publicly available information, speaks volumes of ShieldMark's bad faith in pursuing this matter.  An award of attorneys' fees regarding Plaintiffs' earlier response (Doc. #164) and this supplemental response is in order.

An action in accordance with the foregoing is most earnestly and respectfully solicited.

Dated:  July 27, 2022                    Respectfully submitted,

*/s/ Ray L. Weber*
Ray L. Weber          (0006497)
Laura J. Gentilcore     (0034702)
RENNER, KENNER, GREIVE, BOBAK,
TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, OH 44308
Telephone:  (330) 376-1242
Fax:  (330) 376-9646
E-mail: rlweber@rennerkenner.com
E-mail: ljgentilcore@rennerkenner.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing

**PLAINTIFFS' SUPPLEMENTAL RESPONSE
TO DEFENDANT SHIELDMARK, INC.'S MOTION (DOC. #162)
TO SEAL EXPERT REPORT**

has been filed electronically on July 27, 2022, with the United States District Court for the

Northern District of Ohio.  Notice of the filing will be sent to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Ray L. Weber*
Ray L. Weber