**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CLIFFORD A. LOWE, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 1:19CV00748 |
| ) | |
| ) | Judge James S. Gwin |
| **SHIELDMARK, INC., et al.,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' SUBMISSION OF ATTORNEY FEES AND EXPENSES
IN CONNECTION WITH THEIR MOTION FOR SANCTIONS**

Defendants ShieldMark, Inc., Advanced Plastics, Inc. and Crown Corp. (collectively "Defendants") submit their application for an award of attorney fees to sanction Plaintiffs Clifford Lowe and InSite Solutions, LLC for both withholding key documents which ultimately resulted in the dismissal of Plaintiffs' patent claims for lack of standing, and for wrongfully disclosing ShieldMark's confidential financial information on the Court's ECF website. Defendants previously moved the Court for the award of attorney fees (see Doc. #203) and Plaintiffs filed their opposition. See Doc. #208. This Court deferred submission of the fee application until after the resolution of Plaintiffs' appeal. See Doc. #211. Plaintiffs' appeal was dismissed. See Doc. #212.

    A.    <u>Defendants are entitled to an award of attorney fees and expenses incurred because of Plaintiffs' contumacy.</u>

Effective December 9, 2021, Plaintiff Clifford Lowe ("Lowe") sold, assigned, conveyed, and transferred to Plaintiff InSite Solutions, LLC, a North Carolina limited liability company, ("InSite

NC") his "entire right, title and interest in and throughout the world in and to" the inventions described and/or claimed in the '664 patent together with his "entire right, title and interest in and to" the '664 patent and such other patents as may issue thereon or claim priority under United States law or international convention (the "Assignment").

One week after Lowe relinquished all rights in and to the '664 patent, InSite NC entered into a Patent License Agreement (the "License") as part of a larger asset acquisition with InSite Solutions, LLC, a Delaware limited liability company ("InSite DE"). In the License, InSite NC granted to InSite DE a world-wide, fully transferable, fully sublicensable, royalty-free, fully paid-up, perpetual, irrevocable, and non-terminable license to practice any methods or inventions claimed in various patents, including the '664 patent. InSite NC also granted to InSite DE the exclusive option to acquire all right, title, and interest in and to the various patents, including the '664 patent.

With the execution of these two agreements, Plaintiffs fundamentally altered their rights in and to the '664 patent. But Plaintiffs still alleged in their Fourth Amended Complaint that Lowe owned all rights, title and interest in the patent. Clearly, Plaintiffs deliberately withheld this critical information from the Court and Defendants. As this Court has already found, "Defendants had requested discovery of all '664 Patent ownership materials. Despite its Rule 26 obligation to update discovery, Plaintiffs had not provided any amended discovery responses describing Lowe's ownership sale." (Doc. #191, PageID #6284).

After Defendants discovered the Assignment through public sources and requested details from Plaintiffs, Plaintiffs refused to voluntarily provide the details. Defendants were forced to file a motion to compel production of complete copies of the agreements. On July 7, 2022, the Court ordered: "'[F]ederal courts have an independent obligation to investigate and police the boundaries of their own jurisdiction.' Accordingly, within seven days, the Court ORDERS Plaintiffs to file under seal all available documents related to any ownership transfer of the '664 patent; all documents related to any licensing of the '664 patent; all documents related to Plaintiff Lowe's authority to

2

prosecute '664 patent claims; and an update regarding Plaintiff InSite's present corporate status." (Doc. #154). Finally, seven months after the transactions, including four months of continuing litigation, the truth was revealed. InSite NC had relinquished exclusionary rights in the '664 patent and lacked standing to continue this litigation.

Had Plaintiffs produced those records once the case was remanded from the Federal Circuit, Defendants would have immediately filed a motion to dismiss for lack of standing. Given the Court's ultimate ruling on standing, at least the patent portion of this lawsuit would have come to an end. Instead, Plaintiffs protracted this litigation, withholding the key documents from discovery. Consequently, Defendants incurred significant attorney fees and expenses that they should not have had to incur.

      B.    <u>Defendants' fee application for failure to produce the standing documents</u>.

In accordance with the Court's November 23, 2022 order (Doc. #211), Defendants submit their application for the award of attorney fees for the work that was incurred as a result of Plaintiffs' failure to promptly disclose the documents that deprived them of standing to assert the '664 patent against Defendants. Defendants have separated those fees and expenses into two categories. The first category consists of the attorney fees incurred for all services between the remand of the case from the Federal Circuit and the final production of all pertinent documents. (Exhibit A to the Declaration of Howard Wernow, attached hereto as Exhibit 1). This category does not include all fees incurred during that period. Defendants' attorneys have exercised reasonable billing judgment and have excluded time for the Lanham Act claim; time for the inequitable conduct claim; and time deemed duplicative. The fee amounts to $213,765. Defendants also request an award of expenses related to the services in the first category. (Exhibit D to the Declaration of Howard Wernow). The second category consists of only the attorney fees incurred to conduct the investigation into the transfer of the '664 patent and the

3

subsequent efforts to secure production of those records. (Exhibit B to the Declaration of Howard Wernow). This second category is a subset of the first category. The fee amounts to $17,365. Defendants submit both categories and defer to the Court for the award of those fees the Court considers appropriate to reimburse Defendants as well as sanctioning Plaintiffs. Defendants submit both categories for the Court's consideration.

      C.    <u>Defendants are entitled to an award of attorney fees and expenses incurred because of Plaintiffs' disclosure of ShieldMark's confidential financial information</u>.

On July 11, 2022, Plaintiffs' counsel filed the expert report of Alex L. Constable in the ECF system. The report sets forth Constables "expert analysis, opinion and testimony on behalf of Clifford Lowe and InSite Solutions, LLC … relating to commercial damages that may have been sustained by Plaintiffs …." In his report, Constable quoted the Sales of Bevel-Edged Floor Tape from 2019 to June 16, 2021(DEF01234) and Sales of Beveled-Edged Floor Tape from February 27, 2019 to May 19, 2022 (DEF010270). On pages 4 and 5 of the report, Constable set out ShieldMark's sales of the floor tape contained in the two productions which had been designated "confidential attorneys' eyes only." Further, on page 7 of the report, Constable expressly provides the royalty terms of a highly confidential license agreement. (DEF008709-8717). Nowhere in his report does Constable designate or even acknowledge the information as "confidential" or "attorneys' eyes only." Consequently, financial information that ShieldMark had designated confidential consistent with L.P.R. 2.2 was wrongfully placed in the public record. Consequently, ShieldMark had to prepare and file a motion to have its confidential financial information sealed.

D.   <u>Defendants' fee application for the disclosure of its confidential information</u>.

Defendants submit their application for the award of attorney fees for the work that was incurred as a result of Plaintiffs' disclosure of ShieldMark's confidential proprietary information. (Exhibit C to the Declaration of Howard Wernow). The fee amount is $4,750.

E.   <u>Defendants' experienced counsel and their rates</u>.

The initial estimate of reasonable attorney fees is calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This amount is referred to as the "lodestar." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). "Generally, a 'strong presumption' favors the prevailing lawyer's entitlement to his lodestar fee." *Id.* at 349-50 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). Thus, modifications to the lodestar are proper only in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the district court. *Del. Valley Citizens' Council*, 478 U.S. at 565.

Defendants' counsel consists of experienced attorneys with expertise specific to complex civil litigation and patent law. They have extensive experience in patent litigation both in the district courts and before the Federal Circuit. The billing rates for Defendants' counsel is $400 per hour. "When determining a reasonable hourly rate, courts use as a guideline the prevailing market rate… that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Michel v. WM Health Care Solutions, Inc.*,

5

214 U.S. Dist. LEXIS 15606 at *56 (S.D. Ohio 2014). As the United States Court of Appeals for the Sixth Circuit has explained,

> the appropriate rate is not necessarily the exact rate of a particular firm, but the market rate in the venue sufficient to encourage competent lawyers in the relevant community to undertake legal representation. *** A district court may look to "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *** Furthermore, while the district court may take into consideration an attorney's skill level in identifying the market rate, this Circuit holds that "reasonable" fees need not be "liberal" fees, and that such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region.

*The Ne. Ohio Coal. For the Homeless v. Husted*, 831 F.3d 686, 715–16 (6th Cir. 2016) (citations and internal quotations omitted). Given the knowledge, skill and ability of Defendants' counsel, the rates are within a reasonable range given the nature of the litigation and the complexity of the issues.

The Sixth Circuit has approved of $400 requested hourly rates. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) ($400 per hour rate an appropriate award for experienced attorney in Western District of Michigan). Counsel's rates are consistent with the rates partners with similar experience at similarly-situated law firms charged for patent litigation services. The hourly rates are below the average rates that the American Intellectual Property Law Association ("AIPLA") indicates as the average for attorneys in the Midwestern United States with similar experience. (Exhibit E to the Declaration of Howard Wernow).

    F.    <u>Experienced counsel's reasonable hours</u>.

"The next step in the lodestar method is to determine the number of compensable hours claimed by Plaintiffs' counsel. *See Satgunam v. Basson*, No. 1:12-CV-220, 2017 WL 3634014, at *4 (W.D. Mich. Aug. 24, 2017). Although courts are required to exclude from the lodestar calculation hours that were not reasonably expended, "[c]ourts are not required to act as 'green-

eyeshade accountants' and 'achieve auditing perfection.'" *Szeinbach [v The Ohio State University,* No. 2:08-cv-00822], 2017 WL 2821706, at *2 [(S.D. Ohio June 30, 2017] (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011) (citing Hensley, 461 U.S. at 433)). Rather, courts must simply do 'rough justice.' *Id.* (quoting *Fox*, 563 U.S. at 838.)." *Morse v. Specialized Loan Servicing, LLC*, No. 2:16-CV-689, 2018 WL 549372, at *3 (S.D. Ohio Jan. 25, 2018), *report and recommendation adopted,* No. 2:16-CV-689, 2018 WL 1725693 (S.D. Ohio Apr. 10, 2018).

"[C]ounsel must make a good faith effort to exclude hours that are "excessive, redundant, or otherwise unnecessary. They must also submit documentation "of sufficient detail and probative value to enable the Court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Hurt v. Com. Energy, Inc.*, No. 1:12-CV-758, 2018 WL 4658734, at *2 (N.D. Ohio Sept. 28, 2018) (citations and quotations omitted) (Gwin, J).

Defendants' counsel has submitted detailed billing entries that eliminate any time for work on the Lanham Act claim, the inequitable conduct claim, and any duplicative or redundant work. Counsel have also submitted time entries of sufficient detail and probative value to enable the Court to determine with a high degree of certainty that the hours were actually and reasonably expended in this case. The following are samples of those time entries:

> Review draft of memorandum refiling answers and counterclaims; telephone call with Joe Sebolt regarding responding to Judge Gwin order.
>
> Telephone call with Howard Wernow regarding memorandum refiling answers and counterclaims; telephone call with Chris Haas regarding order of Judge Gwin; draft agenda for meeting with clients.
>
> Review and revise reply memorandum in support of the motion to substitute expert witness.

"[I]t would waste judicial resources to review those entries line-by-line. But after reviewing the parties' briefs, …[Defendants'] submitted affidavits, ***, and certain portions of the hourly

7

entries *** the Court … [can be] satisfied that the … reported hours are reasonable." *Hurt v. Com. Energy, Inc.*, No. 1:12-CV-758, 2018 WL 4658734, at *3 (N.D. Ohio Sept. 28, 2018) (Gwin, J). Counsel have also submitted their Declarations that the fees were reasonable (Exhibit F to the Declaration of Howard Wernow).

      G.    Conclusion.

Defendants have submitted detailed billing entries documenting the work necessitated by the deliberate and sanctionable withholding of key documents and the wrongful publication of confidential financial information. Those entries demonstrate both a reasonable hourly rate and that the hours were reasonable for the work required. Defendants therefore request the Court to award them their fees in the amount the Court deems reasonable under the circumstances.

Dated: March 15, 2023                          Respectfully submitted,

                                                           */s/ Howard L. Wernow*
                                                           Howard L. Wernow (SBN 0089019)
                                                           Joseph A. Sebolt (SBN 0059140)
                                                           James F. McCarthy III (SBN 0002245)
                                                           SAND, SEBOLT & WERNOW CO., LPA
                                                           Aegis Tower – Suite 1100
                                                           4940 Munson Street NW
                                                           Canton, Ohio 44718-3615
                                                           Telephone: (330) 244-1174
                                                           Facsimile: (330) 244-1173
                                                           Email:  howard.wernow@sswip.com
                                                           Email:  joe.sebolt@sswip.com
                                                           Email:  james.mccarthy@sswip.com

>David J. Sheikh (*Pro hac vice*)
>LEE SHEIKH & HAAN
>111 W. Jackson Boulevard, Suite 2230
>Chicago, Illinois 60604
>Phone: 312-982-0070
>Fax: 312-982-0071
>Email: dsheikh@leesheikh.com
>
>***Attorneys for Defendants, ShieldMark, Inc., Advanced Plastics, Inc. and Crown Equipment Corporation***

## CERTIFICATE OF SERVICE

This is to confirm that a copy of the foregoing was electronically filed on March 15, 2023. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and the filing may be accessed through that system.

>*/s/ Howard L. Wernow*
>Howard L. Wernow