UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
CLIFFORD A. LOWE, *et al.*,      :   OPINION & ORDER
                                 :   [Resolving Doc. 199, 203, 218, 223]
       Plaintiffs,       :
                                 :
vs.                              :
                                 :
SHIELDMARK, INC., *et al.*,      :
                                 :
       Defendants.       :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    This Court previously granted summary judgment for Defendants ShieldMark Inc., Advanced Plastics, Inc., and Crown Equipment Corporation on Plaintiffs Lowe and Spota LLC's patent infringement and Lanham Act false advertising claims.[1] Defendants counterclaim for attorneys' fees and costs under § 285 of the Patent Act, and alternatively move for fees and costs under both Fed. R. Civ. P. 37 for discovery sanctions and the Court's inherent power to impose sanctions.[2]

    Defendants seek fee awards on three grounds. First, Defendants say they should receive all fees and costs for litigating Plaintiffs' patent infringement claim because Plaintiff Lowe engaged in inequitable conduct before the Patent and Trademark Office ("PTO"). Second, in the alternative, Defendants seek costs and fees incurred in the patent infringement portion of this action from December 2021 onwards. In seeking costs and fees, Defendants argue that Plaintiffs prolonged litigation of the infringement claim by concealing that in December 2021, they transferred away their exclusionary rights in the patent and thereby relinquished their Article III standing. Third, Defendants ask for fees and costs incurred when

---
[1] Doc. 191, 219.
[2] Doc. 203, 218.

Case No. 19-cv-748
Gwin, J.

in July 2022, Defendants had to move to seal a Plaintiff expert report that contained information Defendants had marked as highly confidential.[3]

The Court finds that Plaintiffs acted in bad faith to hide their loss of standing, and that they violated their obligation to protect Defendants' confidential information. Accordingly, the Court will **GRANT IN PART** Defendants' motion as to fees and costs incurred after December 2021 for the patent litigation and for the motion to seal and will **DENY IN PART** Defendants' motion as to patent litigation fees incurred before December 2021.[4]

## I. BACKGROUND

The Court has already summarized the background of this case in other orders.[5] Briefly, Plaintiffs Lowe and Spota LLC compete with Defendants in the industrial floor-tape market. Plaintiffs sued Defendants alleging that Defendants' floor tape infringed on Plaintiffs' tape patent and that Defendants' tape did not conform to how Defendants described the tape in their advertising.

When this litigation commenced, Plaintiff Lowe owned the relevant '664 patent.[6] But in early December 2021, Lowe sold his patent to Plaintiff Spota LLC (then d/b/a Insite Solutions North Carolina).[7] Then, on December 16, 2021, Spota LLC granted nonparty Insite Delaware a permanent, irrevocable, non-exclusive and royalty-free license under the patent. Crucially, because the license was both "fully transferable" and "fully sub-licensable," it

---

[3] *Id.*
[4] After the Court granted summary judgment for Defendants on Plaintiffs' Lanham Act claim, Plaintiffs on April 14, 2023, filed a Notice of Appeal to the Federal Circuit. (Doc. 222). Then, on April 20, 2023, Plaintiffs asked the Court to clarify whether their appeal was premature or whether the Court's Lanham Act order, in combination with the Court's previous patent-infringement summary judgment order, created a final, appealable judgment. (Doc. 223). Because this order disposes of the final, outstanding counterclaim at issue in this case, the Court DENIES Plaintiffs' motion to clarify as moot.
[5] Doc. 191, 219.
[6] Doc. 191 at PageID #: 6282.
[7] *Id.* at PageID #: 6287.

Case No. 19-cv-748
Gwin, J.

eliminated Spota's power to exclude Defendants under the patent. Thus, by December 2021, both Lowe and Spota had relinquished their exclusionary power under the patent and their standing to enforce the patent.[8]

In discovery, Defendants had previously requested Plaintiffs produce all '664 patent ownership and licensing materials.[9] But despite Plaintiffs' Rule 26 obligation to supplement discovery, Plaintiffs did not amend their discovery responses or production to disclose the ownership and licensing changes.[10] In fact, Plaintiffs filed a Fourth Amended Complaint that specifically misrepresented the ownership and licensing status of the patent.[11] As a result, Plaintiffs' standing issue did not come to light until around seven months later, when Defendants independently discovered the ownership change.

When Defendants discovered the sale and confronted Plaintiffs about it, Plaintiffs initially refused to produce the new ownership and licensing agreements. Defendants were forced to move to compel production, and in July 2022, the Court ordered Plaintiffs to file *inter alia* all available documents related to any ownership transfer of the '664 patent; all documents related to any licensing of the '664 patent; and all documents related to Plaintiff Lowe's authority to prosecute '664 patent claims.[12] These productions culminated in Defendants moving for and the Court granting summary judgment on Plaintiffs' patent infringement claim. Because they had transferred the '664 patent right to exclude, the Court found they lost standing.

Separately, in July 2022, Plaintiffs publicly filed an expert report that cited to

---

[8] *Id.* at PageID #: 6285.
[9] *Id.* at PageID #: 6284.
[10] *Id.*
[11] Doc. 127 at PageID #: 5259.
[12] Doc. 154.

-3-

Case No. 19-cv-748
Gwin, J.

information from documents that Defendants had marked as highly confidential and for Attorneys' Eyes Only. Defendants moved to seal the expert report and to implement a protective order,[13] and on July 27, 2022, the Court granted the protective order motion.[14]

## II. DISCUSSION

### A. Jurisdiction

As a preliminary matter, the Court notes that it has subject matter jurisdiction to decide Defendants' fees counterclaim.

Plaintiffs argue to the contrary, contending that the Court lost jurisdiction over Defendants' § 285 counterclaim when it dismissed Plaintiffs' patent infringement claim.

But a § 285 counterclaim confers subject matter jurisdiction independent of an initial patent infringement claim. Indeed, in *H.R. Technologies, Inc. v. Astechnologies, Inc.*, the Federal Circuit held that a district court that dismissed a plaintiff's patent infringement suit for lack of standing had erred in also dismissing the defendant's counterclaims for § 285 attorneys' fees.[15]

The panel in *Astechnologies* wrote:

> The standing defect, however, had no effect on the remaining counterclaims. Regardless of patent ownership, it was not improper for [defendant] to assert the counterclaims of unfair competition, tortious interference with business relations, and section 285 attorney fees against [plaintiff].[16]

---

[13] Doc. 162, 172.
[14] Doc. 174.
[15] 275 F.3d 1378, 1386 (Fed. Cir. 2002).
[16] *Id.* Several district courts have found that they cannot award fees under § 285 to a party who obtains a dismissal *without* prejudice, because dismissal without prejudice is not final and does not render the moving party a "prevailing party." *See, e.g.*, *Waterblasting Techs., Inc. v. Blasters, Inc.*, 2018 WL 791263 (M.D. Fla. Feb. 7, 2018); *Polyzen, Inc. v. RadiaDyne, LLC*, 2017 WL 5005990 (E.D.N.C. Nov. 2, 2017). These cases are not relevant here because the Court's patent summary judgment order dismissed Plaintiffs' patent infringement claim *with* prejudice after finding their standing issue incurable.

-4-

Case No. 19-cv-748
Gwin, J.

Thus, the Court keeps jurisdiction to hear Defendants' fees counterclaim.[17]

## B. Timeliness

The Court also finds that Defendants' fees motion was timely filed.

Fed. R. Civ. P. 54(d)(2)(B) directs parties to file motions for attorneys' fees no later than 14 days after entry of judgment. Plaintiffs argue that Defendants' motion is untimely because Defendants should have moved for fees within 14 days of the Court granting partial summary judgment for Defendants on Plaintiffs' patent claim on August 23, 2022.

But unless a court has severed its order under Rule 54(b), an order granting only partial summary judgment is not a final judgment that triggers the 14-day window.[18] Plaintiffs repeat an argument that this Court and the Federal Circuit have both already rejected, namely that the Court severed the patent issue and that its summary judgment order was a final order. Because this was not the case, Defendants' motion is not untimely.

## C. Defendants' § 285 Counterclaim

### 1. Legal Standard

"An award of attorneys' fees under § 285 is intended to compensate the prevailing party for costs that it would not have incurred but for the conduct of the losing party and is within the sound discretion of the district court."[19] Awarding fees is a two-step inquiry: the district court must determine "whether there is clear and convincing evidence that a case is

---

[17] Plaintiffs bafflingly have repeatedly cited to *Astechnologies* to support their argument that the Court lacks jurisdiction over Defendants' fees claim. (Doc. 208 at PageID #: 6704; Doc. 223 at PageID #: 7012, n. 1). As demonstrated above, *Astechnologies* directly contradicts Plaintiffs' position. *See also Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1032–33 (Fed. Cir. 2006) ("Highway Equipment first argues that the district court erred in retaining jurisdiction over FECO's request for attorney fees under 35 U.S.C. § 285 because, once Highway Equipment gave FECO a pre-verdict covenant not to sue on the patent infringement issues, the court lost Article III subject matter jurisdiction over the patent-based fee request. We disagree. Under our precedent, the district court correctly retained jurisdiction over FECO's claim for attorney fees under 35 U.S.C. § 285.").
[18] *DeShiro v. Branch*, 183 F.R.D. 281, 284 (M.D. Fla. 1998).
[19] *Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 251 (6th Cir. 1979).

Case No. 19-cv-748
Gwin, J.

exceptional," and if so, "whether an award of attorney fees is justified."[20]

A prevailing party may prove that a case is exceptional "by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement."[21]

### 2. Inequitable Conduct

Defendants argue that from the outset, Plaintiff Lowe's inequitable conduct before the PTO tainted this litigation.

"Inequitable conduct occurs when a patent applicant intentionally does not disclose to the PTO information that is material to their patent application."[22] Material information includes "any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent."[23] At the summary judgment stage, courts evaluate inequitable conduct based on whether a patent applicant (1) knew of highly material information, (2) knew or should have known that the information was material, and (3) has not credibly explained why they withheld that information from the PTO.[24]

Here, Defendants argue that Plaintiff Lowe knew and did not disclose to the PTO that Defendant ShieldMark used to make a patented, prior art floor tape called DuraStripe. DuraStripe, like the '664 tape, is an industrial floor tape with unique beveled edges.[25] Lowe was indisputably familiar with DuraStripe when he applied for the '664 patent in 2015: he

---

[20] *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1372–73 (Fed. Cir. 2009).
[21] *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001).
[22] *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1339 (Fed. Cir. 2006).
[23] *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001).
[24] *Ferring B.V. v. Barr Lab'ys, Inc.*, 437 F.3d 1181, 1191 (Fed. Cir. 2006).
[25] Doc. 203 at PageID #: 6502.

Case No. 19-cv-748
Gwin, J.

worked as a DuraStripe distributor from 2004–2011.[26]

Despite his familiarity with DuraStripe, Lowe submitted minimal information about the tape to the PTO. He provided a photograph depicting DuraStripe and Defendant ShieldMark's current floor-tape product, Mighty Line, sitting side by side, and he provided a description of that photograph which read: "Photograph showing profiles of two floor-tapes; the left-hand tape was on sale in the United States prior to April 2004; the right-hand tape is on sale in 2018."[27] Nothing he submitted identified DuraStripe by name or patent number.

Lowe argues that he satisfied his obligation to disclose DuraStripe when he submitted the photograph, and that he was not required to "interpret" the photograph for the examiner. He cites to cases finding that a "patent examiner is capable of independently evaluating the material before him, so the representations as to how to interpret that material cannot be the basis for a finding of inequitable conduct."[28] The Court is skeptical of the extent to which these cases apply, as they all appear to involve scenarios where the Patent Office had enough information to identify the prior art at issue.

Although a close question, the Court nevertheless does not find that Lowe engaged in inequitable conduct rising to a level that merits a fee award. Lowe did not hide the existence of DuraStripe or the possibility of prior art entirely—he noted to the patent office that the photograph contained a tape on sale since 2004. Because there was some limited effort to disclose, Defendants have not established by clear and convincing evidence that Lowe intended to and did withhold material information.

---

[26] *Id.*
[27] *Id.* at PageID #: 6501. Although Lowe first applied for the '664 patent in 2015, it was not issued until 2019—hence Lowe's submission of a photograph noting that there was a floor tape on sale as late as 2018.
[28] *See, e.g.*, *Exergen Corp. v. Brooklands Inc.*, 290 F. Supp. 3d 113, 124 (D. Mass. 2018) (cleaned up).

Case No. 19-cv-748
Gwin, J.

### 3. Litigation Misconduct

Even if the Court declines to award Defendants fees based on inequitable conduct, the Court still has discretion under § 285 to award Defendants fees based on other litigation misconduct that the Court finds to be "exceptional."

The Court will not repeat the entirety of its previous summary judgment order. Suffice to say that by December 16, 2021, the day that Plaintiff Spota LLC licensed the '664 patent to Insite Delaware, Plaintiffs knew that Defendants had previously requested production of any documents relating to ownership and licensing of the '664 patent.[29] They knew that back in July 2019, their only responses to Defendants' requests for production on ownership had been that there were "no responsive documents."[30] Plaintiffs knew that there now were, in fact, responsive documents. Finally, Plaintiffs knew that under Fed. R. Civ. P. 26(e)(1)(A), they had a duty to supplement their prior discovery responses in a "timely manner."

Instead, Plaintiffs (1) took no initiative to supplement their productions; (2) refused to produce the ownership and license documents when confronted by Defendants; and (3) filed a Fourth Amended Complaint in which Plaintiffs explicitly misrepresented to Defendants and to this Court the status of the patent.

Indeed, the Fourth Amended Complaint, filed six months after the ownership and licensing transfers occurred, blatantly misrepresented that "Lowe is the owner of all rights, title, and interest in and to the '664 patent. InSite is an exclusive licensee under the '664 patent [...]. Lowe and InSite share rights of enforcement and recovery under the '664 patent."[31]

---

[29] Doc. 169-3 at PageID #: 6089.
[30] *Id.*
[31] Doc. 127 at PageID #: 5259.

-8-

Case No. 19-cv-748
Gwin, J.

Plaintiffs argue that they did not "hide" Lowe's sale of the patent to Spota LLC because the agreement was publicly available, as evidenced by the fact that Defendants eventually discovered it.[32]

To quote a fellow district court:

> How absurd! The Federal Rules do not shield publicly available documents from discovery merely because of their accessibility. A limitation of this nature would lead to patently absurd consequences. Indeed, it would require litigants to scour the public domain for nuggets of information […]—a task that is as Herculean as it is nonsensical.[33]

And Plaintiffs' argument is particularly unconvincing considering Plaintiffs' explicit misrepresentations. Plaintiffs not only failed to disclose information that they had a duty to disclose, but actively misrepresented to Defendants and to the Court the '664 patent's status.

Finally, Plaintiffs argue that it should not have mattered whether they disclosed the ownership and licensing transfers because the transfers would have had no impact on the litigation had this Court not erroneously determined that Plaintiffs now lack standing.[34] In other words, Plaintiffs lament that the transfers would have been irrelevant if only the Court had not found them dispositive. But the transfers did prove dispositive, and Plaintiffs' failure to timely disclose those transfers prevented Defendants from moving for summary judgment sooner.

Thus, Plaintiffs' actions strongly support an inference of bad faith and a finding of

---

[32] Doc. 220 at PageID #: 6992.
[33] *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 223–24 (D.D.C. 2015). *See also Martino v. Kiewit New Mexico Corp.*, 600 F. App'x 908, 911 (5th Cir. 2015) ("[E]ven if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses.").
[34] Doc. 220 at PageID #: 6993.

Case No. 19-cv-748
Gwin, J.

litigation misconduct. The Court finds that there is a direct "causal connection" [35] between Plaintiffs' conduct and the fees and costs that Defendants incurred in litigating Plaintiffs' patent claim from December 2021 onwards, and it will award those expenses to Defendants.

### D. The Court's Inherent Power to Sanction

The Court notes that its inherent power to craft sanctions also serves as an alternative basis to award Defendants the above patent litigation fees. The "assessment of attorney's fees is undoubtedly within a court's inherent power," particularly "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[36] These inherent powers are not displaced by a statute's sanctions scheme, and likewise "can be invoked even if procedural rules exist which sanction the same conduct."[37]

### E. Fees for Defendants' Motion to Seal

Defendants ask for the fees and costs they incurred when they needed to seek the sealing of an expert report that they say Plaintiffs should have filed under seal in the first instance. At the time that Plaintiffs filed the report, there was no protective order in place. But the parties were subject to—and Defendants say Plaintiffs violated—the confidentiality-designation and disclosure provisions in this district's Local Patent Rule 2.2.

Ordinarily, Fed. R. Civ. P. 37(b) governs discovery sanctions. But Rule 37(b)(2)(C) only addresses awarding attorneys' fees when a party violates a "discovery order." The plain language of Rule 37 does not appear to encompass sanctions for violations of local discovery rules. Nevertheless, the Court's inherent power to craft sanctions "extends to a full range of litigation abuses," in part because that power exists to "fill in the interstices" that sanctions

---

[35] *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1280 (Fed. Cir. 2018).
[36] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).
[37] *Id.* at 46–48.

-10-

Case No. 19-cv-748
Gwin, J.

statutes and rules do not cover.[38] Thus, the Court will consider whether sanctions under that inherent power are merited here.

Local Patent Rule 2.2 instructs:

> Pending entry of a protective order, discovery and disclosures deemed confidential by a party shall be produced to the adverse party for the eyes of outside counsel of record only, marked "Attorney's Eyes Only Subject to Protective Order." The discovery and disclosures so marked shall be used solely for purposes of the pending case and shall not be disclosed to the client or any other person.

Despite L.P.R. 2.2's restrictions on disclosure, Plaintiffs publicly filed an expert report that disclosed information Defendants had marked as Attorney's Eyes Only.[39]

Plaintiffs argue that filing the report did not violate L.P.R. 2.2 because the information disclosed was already in the public domain. Plaintiffs are correct that some—but not all—of the information disclosed could be found in public records.[40]

But parties are not automatically free to disclose information marked confidential simply because that information can also be found in the public domain.[41] And the plain language of L.P.R. 2.2 makes no such exception.

So, the Court will award Defendants fees and costs arising from litigating Plaintiffs' disclosure.

### F. Reasonableness of Fee Awards

Once a court determines that a party is entitled to a fee award, it must determine a

---

[38] *Id.* at 46.
[39] Doc. 218 at PageID #: 6911–6912.
[40] The Court agrees that a previous litigation had already disclosed certain of Defendant ShieldMark's royalty rate terms. But that earlier filing did not identify the specific licensee who had agreed to those rates. And, contrary to Plaintiffs' assertions, ShieldMark does not appear to have publicly disclosed its exact sales figures.
[41] *See e.g.*, *Doherty v. State Farm Gen. Ins. Co.*, 2020 WL 2510642, at *4 (C.D. Cal. Mar. 4, 2020) (Defendant violated protective order because the order did not explicitly permit Defendant to disclose information marked Highly Confidential when that information "might be available in some form on the Internet.").

Case No. 19-cv-748
Gwin, J.

reasonable amount to award.[42] The court starts with a strong presumption that the proper amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[43] But the "product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward,"[44] including the attorneys' "customary fee[s]"; "the amount involved and the results obtained"; and "the experience, reputation, and ability of the attorneys."[45]

Here, Defendants are entitled to reasonable fees and costs incurred in defending against Plaintiffs' patent infringement claim from December 2021 onwards. Likewise, the Court awards Defendants the reasonable fees and costs incurred in seeking redress for Plaintiffs' improper disclosures. So, the Court will examine whether Defendants' requested amounts are based on a reasonable number of hours and reasonable rates.

Based on the fee tables Defendants submitted, they seek:

1. $213,765 for litigating Plaintiffs' patent infringement claim.[46]
2. $4,750 for the disclosure issue.

The Court finds that Defendants have provided sufficient detail in their fee tables to establish reasonable hours. The entries identify specific tasks, specific people with whom

---

[42] *Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995).
[43] *Id*.
[44] *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).
[45] *Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002). *See id*. for additional factors generally considered.
[46] Defendants' fee tables only list patent litigation fees for May 2022, rather than December 2021, onwards. This is because in June 2021, this Court granted summary judgment for Defendants. Plaintiffs still had standing at that time, and they appealed the summary judgment decision. The case remained inactive at the district-court level until April 2022, when the Federal Circuit reversed that initial summary judgment decision and remanded the case to this Court.

-12-

Case No. 19-cv-748
Gwin, J.

Defendants' attorneys conferred (such as co-counsel) and their topics of conversation, etc.[47] Defendants have also removed from the tables time deemed duplicative and time spent on other claims, such as Plaintiffs' Lanham Act claim and Defendants' inequitable conduct counterclaim.

As to the reasonableness of Defendants' attorneys' rates, Defendants have submitted a report from the American Intellectual Property Law Association to establish that their attorneys' $400/hour rate is below the average for intellectual property lawyers in the Midwest with similar levels of experience.[48] Of the four lawyers claiming fees, one has 10 years of experience in intellectual property, while the other three each have between 23 – 29 years of experience.[49]

Looking at the report, Defendants correctly identify $421/hour as the mean billing rate for IP lawyers in the Midwest across all experience levels.[50] But the median is only $390.[51] On the other hand, if the Court looks at billing rates based on years of practice, the proposed $400/hour rate is well below the national median ($500) for attorneys with 25–34 years of experience, and nearly identical to the national median ($398) for attorneys with 10–14 years of experience.[52] Reasonable billing rates in this case thus fall within a range from $390–$500. Accordingly, the Court finds Defendants' $400/hour rate reasonable.

Finally, Plaintiffs did not object to Defendants' proposed rates, and the only objection that they raised to the reasonableness of Defendants' hours calculation was that Defendants

---

[47] *See, e.g.*, Doc. 218-1 at PageID #: 6932 (6/17/22 entry for 2.8 hours describing attorney's work reading court order, conferring with co-counsel by phone, reading and drafting emails, researching possible experts, etc.)
[48] *Id.* at PageID #: 6922, 6971. Defendants rely on the rates for the "Other Central" category, which provides rates for the Midwest excluding the Chicago and Minneapolis-St. Paul metro areas.
[49] *Id.* at PageID #: 6922–25.
[50] The Court uses the term Midwest here to refer to the "Other Central" category.
[51] *Id.* at PageID #: 6971.
[52] *Id.*

-13-

Case No. 19-cv-748
Gwin, J.

also protracted this action by staying it for over a year while the parties proceeded before the PTO's Patent Trial and Appeal Board.[53] Since Defendants have not sought to recover fees for those proceedings, the Court finds this objection beside the point.

### III. CONCLUSION

The Court **GRANTS IN PART** Defendants' motion as to fees and costs incurred after December 2021 for the patent litigation and for the motion to seal and **DENIES IN PART** Defendants' motion as to patent litigation fees incurred before December 2021. Defendants are awarded $213,765 for litigating Plaintiffs' patent infringement claim and $4,750 for fees and costs arising from Plaintiffs' violation of L.P.R. 2.2.[54]

IT IS SO ORDERED.

Dated: April 21, 2023          *s/ James S. Gwin*
                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE

---

[53] Doc. 220 at PageID #: 6998–7000.
[54] Unrelatedly, the Court also **DENIES** as moot Plaintiffs' motion to strike Defendants' response to the Court's August 26, 2022 Opinion and Order. (Doc. 199). Plaintiffs moved to strike Defendants' response on the grounds that the Court's partial summary judgment order deprived it of jurisdiction to order Defendants to file a response. This argument was rejected by the Federal Circuit when it dismissed Plaintiffs' appeal. (*See* Doc. 212). As previously stated above, the Court also **DENIES** as moot Plaintiffs' recent motion to clarify. (Doc. 223).